UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | |
| THIS DOCUMENT RELATES TO:<br><br>ALL DIRECT PURCHASER ACTIONS | Master File No. 19-md-02878-NMG |

**NON-PARTY NOVARTIS PHARMACEUTICALS CORPORATION'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL (ECF No. 201)**

Non-party Novartis Pharmaceuticals Corporation ("NPC") submits this supplemental memorandum in opposition to Plaintiffs' Motion (ECF No. 201) and pursuant to the Court's instructions during the oral argument held on July 8, 2020 (ECF No. 239).

1.  **Plaintiffs' Request for NPC's Margin Data Ignores That Ranbaxy's Conduct, Not NPC's Alleged Market Power, Is the Alleged Cause of Any Harm to Competition**

The Court asked during oral argument whether or not Plaintiffs need to prove NPC's market power in order to prevail in their case. Either way, NPC's margin data is not relevant or necessary to establish Ranbaxy's market power that it allegedly obtained through fraud, because it is Ranbaxy's unlawful exercise of market power that Plaintiffs allege harmed competition. It is undisputed that Plaintiffs will need to prove Ranbaxy's market power at the time it launched in 2014. If, as Plaintiffs argue, margin data is essential to proving Ranbaxy's market power (which is subject to substantial question in the case law), Opp. at 13–14, then Plaintiffs can use *Ranbaxy's* margin data from the time it launched in 2014. If Plaintiffs can establish Ranbaxy's market power in 2014 through Ranbaxy's margins, Plaintiffs will not need NPC's margins to evaluate either NPC's market power, or whether NPC allegedly charged supracompetitive prices (which is simply

1

another way of asking about market power),[1] during the period from 2012–2014. Rather, as Plaintiffs themselves have argued, Plaintiffs would calculate the harm to competition from Ranbaxy's conduct by calculating the difference between the prices they paid for Diovan and the prices they would have paid for the lower cost generic versions of Diovan. Transcript of August 9, 2019 Hearing (ECF No. 127), at 9:21–10:5.

During oral argument on July 8, 2020 (ECF No. 239), the Court questioned whether the holding in *In re Chocolate Confectionary Antitrust Litigation* 2013 U.S. Dist. LEXIS 189309 (M.D. Pa. May 10, 2013) ("*In re Chocolate Confectionary*") would allow Plaintiffs to infer NPC's alleged market power during the period from 2012–2014 from evidence that Ranbaxy had market power during the 180-day period after Ranbaxy launched in 2014. Regardless of whether such an inference is permissible, the Court need not infer or evaluate NPC's market power at all because it is not at issue. Market power of a defendant is relevant in an antitrust case because, when unlawfully maintained, it can cause harm to competition and result in higher prices to consumers. Opp. at 8–9. But Plaintiffs do not allege that NPC unlawfully maintained market power, so whether NPC's pricing was a product of market power is entirely irrelevant to Plaintiffs' claims that consumers paid higher prices because Ranbaxy unlawfully maintained monopoly power by preventing other generics from entering the market and driving prices down. Consol. Compl. ¶¶ 260–62, ECF No. 20 (basing Plaintiffs' market power allegations on Ranbaxy's 180-day exclusivity, not NPC's alleged market power or pricing).

Nonetheless, if the Court accepts the premise that NPC's market power is relevant for the period from 2012–2014, then *In re Chocolate Confectionary* would not apply. In that case, the court rejected Plaintiffs' attempt to infer *the defendant's* market power from a co-defendant's

---

[1] When courts evaluate whether a defendant was able to charge "supracompetitive" prices, it is in the context of evaluating so-called direct evidence of market power. *See* Opp. at 9, n.4 (citing cases).

contemporaneous market power. *In re Chocolate Confectionary*, at *80. Here, if Plaintiffs attempted to prove supracompetitive pricing during the period from 2012–2014 using Ranbaxy's margin information from 2014, then *In re Chocolate Confectionary* would not prevent Plaintiffs from attempting to do so because Plaintiffs would not be attempting to prove *the defendant's* market power using another entity's margin information.

Because NPC's margin data is irrelevant to Ranbaxy's market power (which is the element of Plaintiffs' antitrust claims that is at issue), NPC should not be required to produce it.

### 2. Plaintiffs' Last-Minute Request for NPC's Forecasting Documents to "Cross-Check" Their Model of Generic Entry Should be Denied

During oral argument, Plaintiffs explained that they seek to use NPC's forecasting documents to "cross check" their economic model for the sequence of generic entry in the but-for world. But it is highly unlikely that NPC forecasted exactly the same number of generic entrants at exactly the times set forth in Plaintiffs' model. Only generic manufacturers who Plaintiffs argue could have launched earlier had Ranbaxy forfeited exclusivity would know whether they were ready, willing, and able to launch in September 2012, and were in the best position to evaluate the impact of their own launch. NPC does not have any information on those generic manufacturers' ability to launch in September 2012. Opp. at 16. If Plaintiffs were serious about cross-checking their model, they should have sought forecasts from those generic entrants with actual knowledge of their launch plans, rather than make this last-minute request of NPC.

### CONCLUSION[2]

NPC respectfully requests that the Court deny Plaintiffs' Motion in in its entirety.

---

[2] NPC's burden of producing margin data and forecasts is laid out in detail in its opposition brief and a declaration submitted from in-house counsel at NPC. Opp. at 17–19; ECF No. 223, at ¶¶ 3–8 (Declaration of Peter Waibel). Plaintiffs have not met their burden of showing that the requested discovery is proportional to NPC's burden, and failed to establish that obtaining margin data (which is a trade secret) is essential to proving their case.

Dated: July 15, 2020                                Respectfully submitted,

/s/ Ross E. Elfand
Ross E. Elfand
**White & Case LLP**
1221 Avenue of the Americas
New York, New York 10021
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
relfand@whitecase.com

Kevin Adam (BBO#684955)
**White & Case LLP**
75 State Street
Boston, MA 02109
Telephone: (671) 979-9329
kevin.adam@whitecase.com

*Attorneys for Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I, Ross E. Elfand, Esq., hereby certify that a correct copy of the foregoing supplemental memorandum in opposition to Plaintiffs' motion to compel was filed electronically on July 15, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: July 15, 2020                                         /s/ Ross E. Elfand
                                                             Ross E. Elfand