# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION,<br><br>THIS DOCUMENT RELATES TO:<br><br>All Cases | MDL No. 19-md-02878-NMG<br><br>Hon. Nathaniel M. Gorton |

**DEFENDANTS RANBAXY, INC. AND SUN PHARMACEUTICAL INDUSTRIES LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY <u>ASTRAZENECA PHARMACEUTICALS L.P.'S MOTION FOR RECONSIDERATION</u>**

KE 72853696.5

## BACKGROUND

On September 23, 2020, Defendants Ranbaxy Inc. and Sun Pharmaceutical Industries Ltd. (together, "Ranbaxy") filed a motion to compel non-party AstraZeneca Pharmaceuticals L.P. ("AstraZeneca") to produce documents and information showing AstraZeneca's transaction-level sales data, including information on discounts, returns, rebates, and chargebacks (the "sales data"). The sales data was requested by a subpoena issued by Ranbaxy on July 23, 2019 (the "Subpoena"), but had not been produced despite nearly a year of negotiations. During much of those negotiations, AstraZeneca refused to produce the requested sales data, claiming that it was not within its possession, custody, or control. (*See* Defs.' Mot. to Compel at 6-7, Doc. No. 257; Jackson Decl. Ex. D, Doc. No. 258-4.) It was only after Ranbaxy filed its motion that AstraZeneca disclosed that the requested data was indeed in its possession, but claimed that it would be burdensome to produce. (*See* AstraZeneca Opp. at 4-5, Doc. No. 266.)

The Court held a hearing on Ranbaxy's motion on October 7, 2020, following which the parties were directed to meet and confer to discuss whether Ranbaxy could "narrow its request," and "whether Ranbaxy can bear 50% of the cost to produce the data on an expedited basis." (Oct. 7, 2020 Minute Entry, Doc. No. 270.) During the weeks that followed, the parties conferred on several occasions and submitted four status reports to the Court detailing the outcome of those discussions. (*See* Doc. Nos. 271, 273, 278, 293.) In response to the Court's directive, Ranbaxy narrowed its request by (1) accepting invoice, rather than transaction-level data[1] and (2) shortening the time period requested by seven years, originally from 2005-2019, to 2012-2019. Both of these modifications meant that Ranbaxy would not receive certain data that were unquestionably

---

[1] Because invoice data typically combines data from multiple transactions, it requires fewer lines of data to be produced.

relevant to its defenses, but, consistent with the Court's Order, these concessions also significantly reduced AstraZeneca's burden in complying with the Subpoena. Also in line with the Court's directive, Ranbaxy requested information about AstraZeneca's process for collecting the data, including what vendor it intended to use, expected costs, and what efforts, if any, could be applied to reduce those expenses. (*See* Joint Status Report at 3, Doc. No. 293.) AstraZeneca did not provide any substantive response to those requests. (*Id.*)

Despite the parties' lengthy negotiations, AstraZeneca delayed disclosing what responsive categories of data it had in its possession, and only confirmed the existence of two additional categories of data during the week of November 2: (1) data containing the administrative fees paid to group purchaser organizations and wholesalers in connection with their distribution of Nexium, and (2) rebates paid in connection with Medicaid. (*See* Joint Status Report at 1-2, Doc. No. 293.) This delayed disclosure limited the parties' ability to discuss the scope and timing of the production, as Ranbaxy had previously explained that its experts needed the data to be produced by November 30, 2020. (*See id.*) On November 12, 2020, after the parties indicated they had reached an impasse in their discussions, the Court held a second hearing. During this hearing, the Court ordered AstraZeneca to produce the data relating to administrative fees and the Medicaid rebates by December 10, 2020. (*See* Doc. No. 298.) On November 30, 2020, AstraZeneca filed its motion for reconsideration of the Court's November 12th Order, reasserting that the production of the Medicaid rebate data would be unduly burdensome and that the data is not relevant to any of the claims or defenses in the case. (*See* Mot. for Reconsideration, Doc. Nos. 299, 300.)

Ranbaxy has complied with both of the Court's requests, making substantial efforts to reduce any burden associated with production of the sales data and attempting to obtain information on the feasibility of cost sharing. AstraZeneca should now produce the materials as

ordered. Instead, AstraZeneca seeks to impose further delay, indicating it will be unable to produce the data requested data by December 10. This delay, and AstraZeneca's claim that the production is unfairly rushed such that AstraZeneca "cannot practicably comply," is a matter of AstraZeneca's own doing. (Mot. for Reconsideration at 5, Doc. No. 300.) Had the data been produced a year ago when it was first requested, Ranbaxy's request would not be time sensitive. AstraZeneca cannot now claim this production will unfairly create an undue burden. Any burden, if at all, has been created as a result of AstraZeneca's intentional and deliberate efforts to avoid compliance with the Subpoena.

Furthermore, AstraZeneca's request that Ranbaxy pay for any associated cost of production in light of the "significant expense from compliance" is nonsensical. (*Id.* at 2, 4-5.) As a threshold matter, the exact nature of AstraZeneca's claimed costs remains unclear, even months after it first made the request. (*See* AstraZeneca Opp. at 5, Doc. No. 266.) AstraZeneca has refused to meaningfully engage in discussions regarding cost sharing and has made no effort to substantiate its purported costs. AstraZeneca has not made any submission on its expected costs to the Court, nor has it provided any invoice or details of expected costs to Ranbaxy. To the extent the claimed expense is associated with the "expedited" nature of the request, that argument too fails. AstraZeneca can no longer claim any production is unfairly expedited. Ranbaxy filed its motion more than two months ago. AstraZeneca has known since at least that time it would need to produce this data and has had sufficient time to obtain adequate resources to eliminate any undue burden. On the contrary, Ranbaxy has had to devote significant resources to enforcement of the Subpoena. After incurring significant expense negotiating with AstraZeneca, Ranbaxy had to incur additional expenses briefing its motion to compel and opposition to the instant motion, and will now have to expedite its work to utilize the data for its expert reports. Because these costs are

directly tied to AstraZeneca's deliberate efforts to avoid compliance, this Court should order AstraZeneca to pay Ranbaxy for any expenses it has incurred in litigating its motion to compel and AstraZeneca's motion for reconsideration.

## ARGUMENT

1. **ASTRAZENECA SHOULD BE COMPELLED TO PRODUCE THE MEDICAID REBATE DATA.**

    (a) **Legal Standard.**

    Under Rule 26, a party may seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts will allow a discovery request if there is *any* possibility that the information may be relevant to the general subject matter of the action. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (emphasis added). Subpoenas issued to nonparties pursuant to Rule 45 are subject to the same relevance requirement. *See EEOC v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.").

    Before quashing or modifying a challenged subpoena, the party subject to the subpoena must demonstrate that compliance would impose an undue burden. *Tex. Roadhouse, Inc.*, 303 F.R.D. at 2. To determine if such a burden has been shown, the court must "engage[ ] in a balancing test, weighing the defendants' need for this information, the availability of other means of obtaining it, and the burden placed on the claimants by the subpoenas." *Id.*

      (b)      **The Medicaid Rebate Data Are Relevant and Ranbaxy's Need for This Information Outweighs the Potential Burden to AstraZeneca Associated with Production.**

            (i)      **The Sales Data Are Relevant to the Claims and Defenses in this Case.**

Plaintiffs in this case have argued that "if generic versions of [Diovan, Valcyte, and Nexium]" had "been available for purchase sooner," it would have "result[ed] in savings to plaintiffs and others similarly situated amounting to hundreds of millions, if not billions of dollars." DPP Compl. ¶ 344. Ranbaxy now seeks Medicaid rebate data that will show the final prices paid by state entities that purchased Nexium. AstraZeneca contends in its motion that this data "is not relevant to the prices paid by members of the putative classes in this action." (Mot. for Reconsideration at 2.) AstraZeneca, however, has an overly limited view of what data is relevant to this action. The Medicaid rebate data that Ranbaxy seeks is directly relevant to these claims. At issue in this case is which pharmaceutical manufacturers exercised market power in connection with Nexium and its generic equivalent. In connection with that, Ranbaxy seeks to assess what ability AstraZeneca had to control prices, which requires determining the final price paid by purchasers of Nexium. The Medicaid rebate data is the only data that will provide Ranbaxy with detailed information regarding final prices paid by state-entity purchasers. It is not relevant that the entities that received the rebates are not members of the class. The rebates provide key information on the final net price received by AstraZeneca for its Nexium products. These prices also likely influenced the prices paid by other purchasers and the total volume of products sold. Putative class members in this action, who distributed Nexium products and were paid to do so, would have been directly impacted by an increased volume of product sold as a result of these lower prices.

AstraZeneca's halfhearted argument that the data is not relevant and will be "captured" in the data already produced or to be produced (Mot. for Reconsideration at 8), ignores that final

prices for these purchases can only be ascertained through the actual Medicaid rebate data. The relevance of the Medicaid rebate data to the claims and defenses asserted in this action is an inquiry that was already conducted by the Court when it made its order on November 12 and properly granted Ranbaxy's motion. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4700367, at *7 (S.D.N.Y. Oct. 19, 2017) (granting motion to compel third party's production of transactional sales information, stating that "[t]here is little question that the transactional sales information sought by the plaintiffs is relevant"); *In re Celebrex Antitrust Litig.*, 2017 WL 4230124, at *3-5 (S.D. Fla. May 15, 2017) (granting motion to compel third party's production of transactional data where the plaintiff intended to use the transactional data to determine the damages at issue); *Meijer, Inc. v Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 31–35 (D.D.C. 2007) (granting defendants' motion to compel pricing and sales data where defendant had demonstrated that such information "[wa]s relevant to the claims and defenses at issue"). AstraZeneca has not put forth any valid argument as to relevance that should disturb the Court's decision.

        (ii) **AstraZeneca Has Failed to Establish Undue Burden Outweighing Ranbaxy's Need for the Information.**

AstraZeneca has claimed that "AstraZeneca cannot practicably comply with the Court's order to produce Medicaid rebate data for the period 2012 through 2019 by December 10." (Mot. for Reconsideration at 3.) However, AstraZeneca's claim of undue burden has not been substantiated. AstraZeneca contends that compliance with the Subpoena would place "competing priorities" on its personnel, but cites no legal authority that would support its claim that compliance should be fully excused on that basis alone. (Mot. for Reconsideration at 7.) And for good reason. As Ranbaxy explained in its Motion to Compel, data of a similar nature is routinely produced in cases such as this one and a dozen other manufacturers produced sales data, including Medicaid

6

rebate data, in this action in a shorter period of time than AstraZeneca without the necessity of a motion to compel. (*See* Defs.' Mot. to Compel at 2 & n.1.)

Under Rule 45, a party seeking discovery "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. Fed. R. Civ. P. 45(c)(1). In assessing whether a request imposes an undue burden, a court will assess factors such as "the relevance of the documents sought, the necessity of the documents sought, the breadth of the request . . . [and the] expenses and inconvenience." *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass.). The default rule is that "absent an order compelling document production, a non-party bears its own production cost." *Id*. In assessing whether cost reallocation is appropriate, "courts consider three factors: (1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance." *Id.* Not only has AstraZeneca failed to demonstrate that the requested information presents any undue burden, it has failed to demonstrate that any reallocation of costs is appropriate.

As a threshold matter, under the principles set forth in *Behrend*, Ranbaxy has demonstrated the relevance of the requested information. *See* supra at 5. Ranbaxy has also already modified its request on several occasions to reduce "the breadth of the request" and spare AstraZeneca any undue burden or expense, a fact that AstraZeneca ignores. AstraZeneca's supporting affidavit makes no reference to the number of employees or personnel-hours needed to complete the request, or any specific expense that will be incurred. In short, AstraZeneca makes no effort to explain how production of the Medicaid rebate data imposes an undue burden under the test applied in this Circuit. With respect to cost reallocation, these factors weigh in favor of AstraZeneca fully bearing any associated expenses. AstraZeneca has made no showing that Ranbaxy can better bear the

expense of production. On the contrary, it has maintained that *only* its employees are capable of completing the production. (*See generally*, Fidel Decl., Doc. No. 300-1); *see also Behrend*, 248 F.R.D. at 87 (noting respective size of parties should also be considered when considering which party should bear costs). Further, antitrust claims involving potentially "billions of dollars" of overcharges, as claimed by Plaintiffs, for a product sold by AstraZeneca are of great importance to consumers of the pharmaceutical industry. *See Behrend*, 248 F.R.D at 86. And while AstraZeneca is not directly interested in this matter, the outcome of this litigation is likely to have a significant impact on it, as well as many other manufacturers. Finally, cost-shifting is not appropriate where the alleged additional expense is the result of AstraZeneca's intentional efforts to avoid compliance. AstraZeneca should not be rewarded for shirking its legal obligations to provide relevant discovery in this case, nor should Ranbaxy be unfairly burdened with the expense of enforcing compliance. AstraZeneca's request for unsubstantiated costs should be denied.

      (iii)    **This Court Should Award Ranbaxy Its Fees and Expenses in Connection with Its Successful Motion to Compel.**

AstraZeneca should be ordered to pay Ranbaxy's expenses, including reasonable attorneys' fees, associated with Ranbaxy's Motion to Compel enforcement of the Subpoena. "[A] court may award the prevailing party its attorney's fees if it determines that the losing party has 'acted in bad faith, vexatiously, or for oppressive reasons.'" *Local 285, Serv. Empl. Int'l Union, AFL-CIO v. Nonotuck Resource Assocs., Inc.*, 63 F.3d 735, 737 (1st Cir. 1995). "[T]he term 'vexatious' means that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Id.* (confirming that "subjective bad faith is not a prerequisite to a fee award") (citation omitted).

On November 12, 2020, more than a year after the Subpoena was first issued, after many hours spent participating in meet and confer sessions, and Ranbaxy's filing of a motion to compel,

8

this Court granted Ranbaxy's Motion to Compel AstraZeneca to produce the sales data. (Doc. No. 298.) The award of fees to the prevailing party, Ranbaxy, is appropriate here. Ranbaxy made every good faith effort to negotiate with AstraZeneca, however, its efforts to narrow the scope and reduce AstraZeneca's claimed burden were routinely ignored. (*See* Defs.' Mot. to Compel at 5-8, Doc. No. 257; K. Jackson Decl. and Exs. A-D, Doc. Nos. 258-1-5.) AstraZeneca largely refused to produce any of the requested data, informing Ranbaxy that the data was not in its "possession, custody, or control," and only confirmed the existence of the data *after* Ranbaxy filed its motion. AstraZeneca's unnecessary delay in this respect is plain evidence of its refusal to act in good faith. (*See id.*, Ex. D.) Finally, there are no circumstances that would make such an award unfair or unjust. An award of fees is entirely appropriate, where, as here, Ranbaxy has unnecessarily been prejudiced by having to expend significant time and fees associated with moving to compel discovery that it should have received months ago.

## CONCLUSION

For the foregoing reasons, the Court should deny AstraZeneca's Motion for Reconsideration and AstraZeneca should be ordered to produce the administrative fees and Medicaid rebate data no later than December 17, 2020. The Court should further order AstraZeneca to pay Ranbaxy's expenses and reasonable attorneys' fees incurred in connection with Ranbaxy's Motion to Compel.

Dated: December 8, 2020										Respectfully submitted,

/s/ Kyla A. Jackson
Devora W. Allon, P.C. (*admitted pro hac vice*)
Robert Allen, P.C. (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue,
New York, NY 10022
(212) 446-4800
(212) 446-4900 (fax)
bob.allen@kirkland.com
devora.allon@kirkland.com

*Counsel for Ranbaxy, Inc., and Sun Pharmaceutical Industries Ltd*

## **CERTIFICATE OF SERVICE**

      I, Kyla A. Jackson, hereby certify that on December 8, 2020, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated:  December 8, 2020                    */s/ Kyla A. Jackson*
                                                           Kyla A. Jackson