# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>All Direct Purchaser Actions | Master File No.<br>19-md-02878-NMG |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE, APPOINTMENT OF SETTLEMENT ADMINISTRATOR AND ESCROW AGENT, AND SETTING THE FINAL SETTLEMENT SCHEDULE AND DATE FOR FAIRNESS HEARING**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. PROCEDURAL BACKGROUND ........................................................................................ 2

    A. The Direct Purchasers allege Ranbaxy violated federal antitrust and racketeering laws and imposed overcharges on the Direct Purchaser Classes. ..... 2

    B. The parties engage in investigation and discovery ........................................................ 4

    C. The Court certifies the Direct Purchaser Classes. ...................................................... 4

    D. The parties file *Daubert* motions and motions for summary judgment. ................... 5

    E. The parties engage in arm's length settlement negotiations. ................................... 6

    F. The parties prepare for trial. ......................................................................................... 6

    G. The Direct Purchasers and Ranbaxy settle the case for $340 million. ................... 6

III. ARGUMENT ......................................................................................................................... 7

    A. The proposed settlement meets the standard for preliminary approval. ................ 7

        1. The proposed settlement is the product of good faith, informed, arm's-length negotiations. ................................................................................................ 8

        2. Counsel for the Direct Purchaser Classes engaged in detailed investigation and discovery. ........................................................................... 9

        3. The proponents of the settlement are highly experienced in antitrust litigation alleging delayed generic entry. ....................................................... 10

        4. The Settlement has no obvious deficiencies, is fair, reasonable and adequate, and represents an excellent result for the class. ......................... 11

    B. The proposed plan to allocate the settlement *pro rata* to Class Members is fair, reasonable, and adequate. ................................................................................. 12

    C. The proposed form and manner of notice are appropriate. ................................... 15

        1. An additional opt-out period is unnecessary .............................................. 17

    D. The Court should appoint Rust Consulting, Inc. as settlement administrator. .... 18

    E. The Court should appoint the Huntington National Bank as escrow agent. ....... 18

IV. CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.,*
    No. 14–md-2516 (D. Conn. Dec. 19, 2017), ECF Nos. 733-1, 740 ...............................14

*In re Aggrenox Antitrust Litig.,*
    No. 14–md-2516 (D. Conn. Mar. 6, 2018), ECF No. 766 .............................................11

*American Sales Company, LLC v. Pfizer, Inc. et al. (Celebrex),*
    No. 14–361 (E.D. Va.), ECF Nos. 609-4, 630 (approved Apr. 18, 2018)....................14

*In re Asacol Antitrust Litig.,*
    No. 15-cv-12730 (D. Mass.), ECF Nos. 419-9, 648 (approved Dec. 7, 2017)...........14

*Bezdek v. Vibram USA, Inc.,*
    79 F. Supp. 3d 324 (D. Mass. 2015) ..........................................................................10

*Bussie v. Allmerica Fin. Corp.,*
    50 F. Supp. 2d 59 (D. Mass. 1999)..............................................................................10

*In re Carbon Black Antitrust Litig.,*
    No. 03-10191 (D. Mass. Nov. 29, 2006), ECF No. 297 ...............................................17

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    216 F.R.D. 197 (D. Me. 2003) .....................................................................................15

*Dallas v. Alcatel-Lucent USA, Inc.,*
    No. 09-14596, 2013 U.S. Dist. LEXIS 71204 (E.D. Mich. May 20, 2013) .................10

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ........................................................................................17

*Fid. & Guar. Ins. Co. v. Star Equip. Corp.,*
    541 F.3d 1 (1st Cir. 2008)...............................................................................................7

*In re Flonase Antitrust Litig,*
    951 F. Supp. 2d 739 (E.D. Pa. 2013) ....................................................................11, 17

*Giusti-Bravo v. U.S. Veterans Admin.,*
    853 F. Supp. 34 (D.P.R. 1993) ....................................................................................12

*In re Glumetza Antitrust Litig.,*
    No. 19-5822, 2022 U.S. Dist. LEXIS 20157 (N.D. Cal. Feb. 3, 2022) .......................11

*Hill v. State St. Corp.,*
    No. 09-12146, 2014 U.S. Dist. LEXIS 179702 (D. Mass. Nov. 26, 2014)...........8, 12, 13

*Hill v. State St. Corp.,*
No. 09-12146, 2015 U.S. Dist. LEXIS 2166 (D. Mass. Jan. 8, 2015) ........................................16

*Hochstadt v. Boston Scientific Corp.,*
708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................................................12

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.,*
296 F.R.D. 351 (E.D. Pa. 2013) ...............................................................................................12

*King Drug Co. of Florence, Inc. v. Cephalon, Inc. (Provigil),*
No. 06-cv-1797 (E.D. Pa.), ECF Nos. 864-17, 870 (approved Oct. 15, 2015) ........................14

*Klein v. O'Neal, Inc.,*
705 F. Supp. 2d 632 (N.D. Tex. 2010).......................................................................................17

*In re Lidoderm Antitrust Litig.,*
No. 14-md-2521, 2017 U.S. Dist. LEXIS 24097 (N.D. Cal. Feb. 21, 2017)................ 11, 14, 17

*In re Loestrin 24 Fe Antitrust Litig.,*
No. 13-md-2472, 2020 U.S. Dist. LEXIS 125746 (D.R.I. July 17, 2020)...........................11, 14

*In re Lupron Mktg. & Sales Pracs. Litig.,*
345 F. Supp. 2d 135 (D. Mass. 2004) .........................................................................................8

*In re Lupron Mktg. & Sales Practices Litig.,*
228 F.R.D. 75 (D. Mass. 2005) ..............................................................................................7, 9

*In re M3Power Razor Sys. Mktg. & Sales Prac. Litig.,*
270 F.R.D. 45 (D. Mass. 2010) ..............................................................................................7, 8

*Meijer Inc. v. Ranbaxy Inc.,*
245 F. Supp. 3d 312 (D. Mass. 2017) .........................................................................................3

*Meijer Inc. v. Ranbaxy Inc.,*
No. 15-cv-11828, 2017 WL 2643974 (D. Mass. June 15, 2017)..................................................3

*Meijer Inc. v. Ranbaxy Inc.,*
No. 15-cv-11828 (Sept. 7, 2016), ECF No. 80 ...........................................................................3

*Meijer, Inc. v. Ranbaxy Inc.,*
No. 17-8008 (1st Cir. Dec. 28, 2018)..........................................................................................3

*In re Namenda Direct Purchaser Antitrust Litig.,*
No. 15-7488 (S.D.N.Y. Jan. 6, 2020), ECF No. 920...................................................................17

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.,*
602 F. Supp. 2d 277 (D. Mass. 2009) .........................................................................................9

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   No. 12-md-2409 (D. Mass., June 12, 2015), ECF No. 1536 ....................................................17

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of San Francisco*,
   688 F.2d 615 (9th Cir. 1982)......................................................................................................17

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)....................................................................................................................16

*Pro v. Hertz Equip. Rental Corp.*,
   No. 06-3830, 2013 WL 12157826 (D.N.J. Mar. 18, 2013)..........................................................17

*In re Prograf Antitrust Litig.*,
   No. 11-10344, 2013 U.S. Dist. LEXIS 62043 (D. Mass. Apr. 23, 2013)...................................11

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   338 F.R.D. 294 (D. Mass. 2021)..................................................................................................5

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   MDL No. 2878, 2021 WL 5493675 (D. Mass. Nov. 22, 2021) ...................................................5

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   MDL No. 2878, 2019 WL 6341298 (D. Mass. Nov. 27, 2019).....................................................3

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005)....................................................................................................9

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   No. 18-md-2819 (E.D.N.Y.), ECF Nos. 490-7, 562 (approved Oct. 7, 2020) ...........................14

*Rolland v. Celluci*,
   191 F.R.D. 3 (D. Mass. 2000) ....................................................................................................12

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
   No. 11-md-2308, 2012 U.S. Dist. LEXIS 113641 (W.D. Ky. Aug. 13, 2012) ............................9

*Smith v. Ajax Magnethermic Corp.*,
   No. 02-0980, 2007 U.S. Dist. LEXIS 85551 (N.D. Ohio Nov. 6, 2007).....................................10

*In re Solodyn Antitrust Litig.*,
   No. 14-md-2503, 2018 U.S. Dist. LEXIS 244677 (D. Mass. July 18, 2018).............................11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. 14-md-2503, (D. Mass.), ECF Nos. 1163-4, 1179 ..............................................................14

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. 14-md-2503 (D. Mass. Mar. 12, 2018), ECF No. 1095......................................................17

*In re Southeastern Milk Antitrust Litig.*,
No. 08-md-1000, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013)..........................12

*Staley v. Gilead Sciences, Inc.*,
No. 19-2573 (N.D. Cal. Sep. 9, 2019), ECF No. 163 ......................................................11

*In re Suboxone Antitrust Litig.*,
No. 13-md-2445 (E.D. Pa. Aug. 7, 2013), ECF No. 44......................................................11

*Thompson v. Midwest Found. Indep. Physicians Ass'n*,
124 F.R.D. 154 (S.D. Ohio 1988) .................................................................................16

*In re Titanium Dioxide Antitrust Litig.*,
No. 10-318, 2013 U.S. Dist. LEXIS 130288 (D. Md. Sept. 11, 2013).................................17

*In re Wellbutrin XL Antitrust Litig.*,
No. 08-2431, 2011 U.S. Dist. LEXIS 90075 (E.D. Pa. Aug. 11, 2011)................................11

**Other Authorities**

Fed. R. Civ. P. 23...............................................................................................11, 15, 16

*Manual for Complex Litigation, Fourth* § 21.632 (4th ed. 2004) .......................................7, 8

4 William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:25 (4th ed. 2002)................................................................................................7

# I.      INTRODUCTION

Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. ("Plaintiffs"), individually and on behalf of the previously-certified classes of direct purchasers defined below (the "Direct Purchaser Classes"), have entered into a proposed settlement with defendants Ranbaxy, Inc. and Sun Pharmaceutical Industries Limited (collectively, "Defendants" or "Ranbaxy").[1] The proposed settlement provides for $340 million in cash to be paid to the Direct Purchaser Classes in exchange for the dismissal of the direct purchaser actions with prejudice, and the provision of releases from the Direct Purchaser Classes, as set forth in the parties' Settlement Agreement.[2]

Plaintiffs and the Direct Purchaser Classes (collectively, the "Direct Purchasers") respectfully request—and Ranbaxy does not oppose—that the Court preliminarily approve the proposed settlement. Co-lead class counsel for the Direct Purchasers, Hagens Berman Sobol Shapiro LLP and Hilliard & Shadowen LLP (together, "Lead Counsel") submit that the proposed settlement is fair, reasonable, and adequate, and represents an excellent result for the Direct Purchasers. The settlement was negotiated in good faith and at arm's length by counsel experienced in pharmaceutical antitrust matters, under the auspices of an independent mediator, Kenneth Feinberg, following more than six years of litigation and on the eve of trial. As Ranbaxy denies any allegations of unlawful or wrongful conduct (and believes it has meritorious defenses to this litigation), the settlement ensures that the Direct Purchaser Classes will receive substantial benefits while avoiding the risk and delays of continued litigation.

---

[1] Sun acquired Ranbaxy in 2015 and thereby became responsible for Ranbaxy's liabilities.

[2] *See* Exhibit 1 to the Declaration of Thomas M. Sobol ("Sobol Decl. Ex."), Settlement Agreement.

## II.    PROCEDURAL BACKGROUND

**A.    The Direct Purchasers allege Ranbaxy violated federal antitrust and racketeering laws and imposed overcharges on the Direct Purchaser Classes.**

This case has a long and complex procedural history. Following substantial independent factual investigation and legal analysis conducted by the firms that came to be appointed co-lead class counsel, the first direct purchaser complaint was filed in this Court on May 12, 2015.[3] This first-filed complaint treaded new legal ground, asserting novel claims against Ranbaxy under both the Sherman Act and federal racketeering statute; it sought damages relating to purchases of two drugs: Diovan and Valcyte.[4] A subsequent direct purchaser action brought by the same counsel asserted claims related to Nexium sales,[5] and another direct purchaser complaint followed.[6]

These direct purchaser complaints alleged that Ranbaxy engaged in a scheme in violation of federal antitrust and racketeering laws to unlawfully delay entry of generic substitutes for brand Diovan, Nexium, and Valcyte, thereby injuring the direct purchasers' businesses or property and imposing antitrust overcharges on members of the Direct Purchaser Classes ("Class Members"). Ranbaxy has not conceded or admitted liability and has asserted a number of defenses to these allegations.

On June 16, 2016, Magistrate Judge M. Page Kelley issued a Report and Recommendation recommending the denial of Ranbaxy's motion to dismiss the first-filed direct purchaser complaint.[7] Judge Kelley's Report and Recommendation was adopted by this Court

---

[3] Compl., *Meijer, Inc. v. Ranbaxy Inc.*, No. 15-11828 (D. Mass. May 12, 2015) ("*Meijer I*"), ECF No. 1.

[4] *Id.*

[5] Compl., *Meijer, Inc. v. Ranbaxy Inc.*., No. 18-12129 (D. Mass. Oct. 11, 2018), ECF No. 1.

[6] Compl., *Cesar Castillo, Inc. v. Ranbaxy Inc.*, No. 18-6126 (E.D.N.Y. Nov. 1, 2018), ECF No. 1 (the "*CCI Action*").

[7] R&R on Defs.' Mot. to Dismiss, *Meijer I* (June 16, 2016), ECF No. 52.

on September 7, 2016.[8] Thereafter, this Court certified its order for interlocutory appeal and the case was stayed.[9] The First Circuit Court of Appeals ultimately declined to hear Ranbaxy's interlocutory appeal,[10] and the stay was lifted.

As mentioned, another direct purchaser lawsuit was filed in the Eastern District of New York.[11] On February 13, 2019, the United States Judicial Panel on Multidistrict Litigation determined that the direct purchaser lawsuits (along with others filed on behalf of a second proposed class, the end payors[12]) involved common questions of fact, and centralized the actions in this Court for pretrial proceedings.[13] Upon centralization, the case was divided into two putative groups of classes: direct and indirect purchasers.[14] Each group of putative classes filed an amended consolidated complaint.[15] Ranbaxy then moved to dismiss both complaints.[16] The Court denied Ranbaxy's motions to dismiss on November 27, 2019.[17]

---

[8] Order, *Meijer Inc. v. Ranbaxy Inc.*, No. 15-cv-11828 (Sept. 7, 2016), ECF No. 80.

[9] *Meijer Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312 (D. Mass. 2017); *Meijer Inc. v. Ranbaxy Inc.*, No. 15-cv-11828, 2017 WL 2643974 (D. Mass. June 15, 2017).

[10] *Meijer, Inc. v. Ranbaxy Inc.*, No. 17-8008 (1st Cir. Dec. 28, 2018).

[11] *CCI Action, supra* note 6. The *CCI Action* was dismissed on May 14, 2020. *See* Stip. of Dismissal Without Prejudice, No. 19-md-2878 (D. Mass.), ECF No. 216.

[12] *See* Compl., *Louisiana Health Servs. & Indemnity Co. v. Ranbaxy Inc.*, No. 19-10274 (D. Mass. Feb. 13, 2019), ECF No. 1; Compl., *United Food & Comm. Workers Health & Welfare Fund of Northeastern Penn. v. Ranbaxy Inc.*, No. 18-4807 (E.D. Pa. Nov. 6, 2018), ECF No. 1.

[13] Transfer Order (Feb. 13, 2019), ECF No. 2.

[14] MDL Order No. 2 (Apr. 16, 2019), ECF No. 16.

[15] Consol. Direct Purchaser Compl. (Apr. 18, 2019), ECF No. 20; Consol. End-Payor Compl. (Apr. 19, 2019), ECF No. 22.

[16] Mot. to Dismiss Consol. End-Payor Compl. (May 31, 2019), ECF No. 63; Mot. to Dismiss Consol. Direct Purchaser Compl. (May 31, 2019), ECF No. 65.

[17] *In re Ranbaxy Generic Drug Application Antitrust Litig.*, MDL No. 2878, 2019 WL 6341298 (D. Mass. Nov. 27, 2019).

**B.      The parties engage in investigation and discovery.**

The parties engaged in substantial discovery, both formal and informal. The Court ordered the production of documents to be substantially complete by December 18, 2019,[18] and set the close of fact discovery for September 25, 2020.[19] The defendants produced over 269,012 documents totaling nearly 2.8 million pages. Between March 3, 2020 and September 22, 2020, the parties took 17 fact depositions of the parties' current and former employees, as well as non-parties. The parties exchanged a total of 34 expert reports between November 2, 2020 and March 22, 2021 on every aspect of the case, including class certification, market power, unique causation issues presented by the factual background in which the case arose, and damages.

The Direct Purchasers filed another amended complaint (the "Second Amended Complaint") on March 2, 2021.[20]

**C.      The Court certifies the Direct Purchaser Classes.**

On May 14, 2021, the Court certified the following Direct Purchaser Classes:

> All persons or entities in the United States and its territories who purchased Diovan and/or AB-rated generic versions of Diovan directly from any of the Defendants or any brand or generic manufacturer at any time during the period September 21, 2012, through and until the anticompetitive effects of the Defendants' conduct cease (the "Diovan Class Period");

> All persons or entities in the United States and its territories who purchased Valcyte and/or AB-rated generic versions of Valcyte directly from any of the Defendants or any brand or generic manufacturer, but excluding those purchasers who only purchased branded Valcyte, at any time during the period August 1, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Valcyte Class Period"); and

> All persons or entities in the United States and its territories who purchased Nexium and/or AB-rated generic versions of Nexium

---

[18] Revised Case Management Order No. 4 (Nov. 18, 2019), ECF No. 144.

[19] Revised Case Management Order No. 4 (June 3, 2020), ECF No. 230.

[20] Second Consol. Direct Purchaser Compl., ECF No. 338.

> directly from any of the Defendants or any brand or generic
> manufacturer at any time during the period May 27, 2014,
> through and until the anticompetitive effects of the Defendants'
> conduct cease (the "Nexium Class Period").
>
> Excluded from each of the direct purchaser classes are the
> defendants and their officers, directors, management, employees,
> subsidiaries, or affiliates, and all governmental entities.[21]

On September 24, 2021, the Court entered an order approving the form and manner of notice, appointing a notice administrator, and formally appointing class representatives and co-lead class counsel.[22] Thereafter, on October 4, 2021, the claims administrator for the Direct Purchaser Classes sent notice to the Class Members advising them of the Court's class certification order and providing a procedure for opting out of the class.[23] No entities opted out of any of the Direct Purchaser Classes.[24]

**D.    The parties file *Daubert* motions and motions for summary judgment.**

On May 17, 2021, the parties filed *Daubert* motions[25] and cross motions for summary judgment.[26] The Court heard oral argument on the motions on October 22, 2021.[27] On November 22, 2021, the Court denied all summary judgment motions.[28]

---

[21] *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294 (D. Mass. 2021).

[22] Order, *In re Ranbaxy Generic Drug Application Antitrust Litig.*, MDL No. 2878 (D. Mass, filed Sept. 24, 2021), ECF No. 469.

[23] Decl. of Jessica Jenkins and Direct Purchasers' Class Notice, ECF No. 506-1.

[24] *Id.* at 4.

[25] *Daubert* Mots., ECF Nos. 390-413, 421-3.

[26] Ranbaxy's Mot. for Summ. J. as to Direct Purchasers, ECF No. 414; Ranbaxy's Mot. for Summ. J. as to End Payors, ECF No 415; Direct Purchasers' & End Payors' Mot. for Partial Summ. J. on *Burwell* Findings, ECF No. 417.

[27] ECF Nos. 486 and 488.

[28] *In re Ranbaxy Generic Drug Application Antitrust Litig.*, MDL No. 2878, 2021 WL 5493675 (D. Mass. Nov. 22, 2021).

**E.      The parties engage in arm's length settlement negotiations.**

Settlement negotiations between Lead Counsel and attorneys for Ranbaxy were hard fought, at arm's length, and spanned multiple years. The parties' first formal attempt to mediate their dispute occurred at a mediation session on November 15-16, 2021, with mediator Kenneth Feinberg presiding. The Direct Purchasers and Ranbaxy both submitted detailed mediation briefs with exhibits prior to the mediation. Settlement talks were unsuccessful at that time, and the parties continued to litigate.

**F.      The parties prepare for trial.**

With trial scheduled to begin January 10, 2022, the parties submitted motions in *limine* on November 18, 2021.[29] On December 21, 2021, the Court issued an oral order on the parties' *Daubert* motions and heard argument on the motions in *limine.*[30] On January 12, 2022, the Court rescheduled trial to begin April 5, 2022.[31]

**G.      The Direct Purchasers and Ranbaxy settle the case for $340 million.**

The Direct Purchasers and Ranbaxy began to explore the possibility of settlement in earnest during the Fall of 2021. On November 15 and 16, 2021, in-person mediation sessions were held at the office of Kirkland & Ellis, LLP in New York City, overseen by mediator Kenneth Feinberg. Talks continued thereafter, picking up again in the early weeks of 2022.

On March 22, 2022, with trial set to begin on April 5, 2022, the parties entered into a binding settlement term sheet (the "Memorandum of Understanding"). Subsequently, the parties negotiated the terms of a full settlement agreement, consistent with and incorporating

---

[29] Ranbaxy's Mots. in *Limine*, ECF Nos. 495-499; Purchasers' Mots. in *Limine*, ECF No. 502.

[30] Hearing Tr., ECF No. 572-2.

[31] Mem. & Order, ECF No. 536.

the terms of the Memorandum of Understanding, agreeing to settle all direct purchaser claims for a total cash payment of $340 million (the "Settlement Agreement").[32]

## III.    ARGUMENT

The proposed settlement provides for payment by Ranbaxy of $340 million into an interest-bearing escrow account to settle the Direct Purchasers' claims.[33] In exchange for the cash payment, the Direct Purchasers will dismiss their claims against Ranbaxy with prejudice and, consistent with the terms of the Settlement Agreement, release all claims that the Direct Purchasers have asserted or could have asserted in the actions relating to the conduct alleged.[34]

### A.    The proposed settlement meets the standard for preliminary approval.

"Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation."[35] Approval of a class action settlement under Rule 23(e) involves a two-step process: First, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation.[36] In this preliminary evaluation, the court determines only whether the settlement has "obvious deficiencies" or whether "it is in the range of fair, reasonable, and adequate."[37] Second, "the more fully informed examination required for final approval will occur in connection with the Final Fairness Hearing, where arguments for

---

[32] Sobol Decl. Ex. 1, Settlement Agreement, ¶ 6.

[33] *Id.* ¶ 6.

[34] *Id.* ¶ 8.

[35] *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (internal quotations and citations omitted); *accord In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements." (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996))).

[36] *See Manual for Complex Litigation, Fourth* § 21.632 (4th ed. 2004); *see also* 4 William Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:25 at 38–39 (4th ed. 2002) (endorsing two-step process).

[37] *In re M3Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (citing *Manual for Complex Litigation, supra*, § 21.632).

and against the proposed settlement will be presented after notice and an opportunity to consider any response provided by the potential class members."[38]

The First Circuit looks to four factors to determine whether a settlement is entitled to a presumption of fairness: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[39] The fourth factor is more often relevant for purposes of final approval, after notice has issued and class members have been given an opportunity to object to a settlement.[40]

Preliminary approval does not require a hearing (though Lead Counsel will make themselves available should the Court desire one at this stage). As explained in the Manual for Complex Litigation (Fourth), "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."[41] Given the Court's knowledge of Lead Counsel and the case, supplemented by the pleadings and exhibits submitted herewith, this Court can and should grant the Direct Purchasers' unopposed motion and preliminarily approve the settlement.

1.    **The proposed settlement is the product of good faith, informed, arm's-length negotiations.**

Negotiation leading to settlement is a key factor in deciding whether to grant preliminary approval. Where "a settlement is untainted by collusion and is fair, adequate, and reasonable . . . and the parties have bargained at arms-length, there is a presumption in favor of

---

[38] *Id.*

[39] *In re Lupron Mktg. & Sales Pracs. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004).

[40] *Id.*; *see also Hill v. State St. Corp.*, No. 09-12146, 2014 U.S. Dist. LEXIS 179702, at *21 (D. Mass. Nov. 26, 2014) ("The 'favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval[.]'" (quoting *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999)) (alteration in original)).

[41] *Manual for Complex Litigation*, *supra*, § 21.632 at 382.

the settlement."[42] These kinds of negotiations guard against any "obvious deficiencies" in a settlement.[43]

    As recounted above, Lead Counsel for the Direct Purchasers and counsel for Ranbaxy engaged in multiple rounds of arm's-length, hard-fought settlement discussions over the course of years. These discussions were based upon the extensive record in this case, including two rounds of motions to dismiss, millions of pages of documents produced, 17 fact depositions, 34 expert reports, two full rounds of summary judgment proceedings with full-day evidentiary hearings, and Lead Counsel's extensive experience in prosecuting delayed generic entry cases. The final settlement was brokered by a neutral mediator, Kenneth Feinberg, and accepted by the parties.

    **2.    Counsel for the Direct Purchaser Classes engaged in detailed investigation and discovery.**

    The settlement was reached at a very mature stage of the case. Having closely supervised the case for six years, the Court is familiar with the parties' litigation activities. The parties engaged in numerous rounds of motion to dismiss briefing. Summary judgment, *Daubert*, and motions *in limine* were fully briefed and heard before the settlement was consummated. Trial was less than a month away at the time the Direct Purchasers and Ranbaxy reached a binding agreement to settle.

    Discovery in this case was substantial and hard-fought. Several discovery disputes were overseen by Magistrate Judge Kelley. The defendants produced more than 269,012 documents totaling nearly 2.8 million pages. Almost ten thousand additional documents, spanning tens of thousands more pages, were also produced by non-parties. Lead Counsel (and other counsel for

---

[42] *Lupron*, 228 F.R.D. at 93; *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 76-77 (D. Mass. 2005); *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 282 (D. Mass. 2009).

[43] *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 11-md-2308, 2012 U.S. Dist. LEXIS 113641, at *21 (W.D. Ky. Aug. 13, 2012).

the Direct Purchaser Classes, together, "Class Counsel") deposed nearly 20 defense witnesses, including numerous high-level Ranbaxy executives, attorneys, and consultants. Ranbaxy's counsel deposed representatives for the Direct Purchasers as well. All parties consulted with economic, scientific, patent, and regulatory experts, each of whom submitted substantial expert reports and rebuttal reports regarding legal, medical, and economic issues. As a result of this intensive litigation experience, issues relating to liability, causation, and damages were fully developed, enabling Lead Counsel to make an informed decision regarding the strengths and weaknesses of the Direct Purchasers' case and the merits of the proposed settlement.

### 3. The proponents of the settlement are highly experienced in antitrust litigation alleging delayed generic entry.

In approving class action settlements, courts have repeatedly and explicitly deferred to the judgment of experienced counsel who have engaged in arm's-length negotiations.[44] The presumption in favor of such settlements reflects the understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Rule 23(e).

Lead Counsel have a great deal of experience in pharmaceutical antitrust litigation generally and delayed generic entry cases in particular.[45] This experience should be given weight in making a determination of preliminary approval. Courts have recognized Lead Counsel's expertise in this field and have repeatedly adjudged Lead Counsel adequate under

---

[44] *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass. 2015) (finding that the parties had a sufficient understanding of the merits of the case to engage in informed negotiations, "particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation, including class actions involving alleged misrepresentation of the relative risks and benefits of footwear"); *Bussie*, 50 F. Supp. 2d at 77 ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate."); *see also Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 U.S. Dist. LEXIS 71204, at *25 (E.D. Mich. May 20, 2013) ("Plaintiffs' counsel's informed and reasoned judgment and their weighing of the merits of protracted litigation are entitled to deference."); *Smith v. Ajax Magnethermic Corp.*, No. 02-0980, 2007 U.S. Dist. LEXIS 85551, at *17 (N.D. Ohio Nov. 6, 2007) (judgment of experienced class counsel "should thus be given substantial weight.").

[45] The firm resumes of Lead Counsel are attached as Exhibits 11 and 12 to the Sobol Declaration.

Rule 23(a)(4) and 23(g).[46] Lead Counsel have demonstrated throughout this litigation that they understand this area of antitrust law, have prosecuted this case with vigor and commitment, and believe this is a fair settlement and in the best interests of the Direct Purchaser Classes.

> **4.    The Settlement has no obvious deficiencies, is fair, reasonable and adequate, and represents an excellent result for the class.**

There are no clear omissions or deficiencies in the proposed settlement. To the contrary, the settlement fund created by the proposed settlement provides members of the Direct Purchaser Classes with a cash recovery that is substantial, immediate, and certain, and the releases granted to Ranbaxy are narrowly tailored to the allegations at issue in the litigation.

There are no red flags associated with the proposed settlement. It does not contain any agreement regarding attorneys' fees, leaving the issue to the Court's discretion, and it does not expand the Classes beyond those previously certified.

---

[46] *See, e.g.*, *In re Glumetza Antitrust Litig.*, No. 19-5822, 2022 U.S. Dist. LEXIS 20157, at *38 (N.D. Cal. Feb. 3, 2022) (noting "counsel [including co-leads Hagens Berman and Hilliard Shadowen] provided strong representation for the class"); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 U.S. Dist. LEXIS 244677, at *9 (D. Mass. July 18, 2018) ("The Court finds that Co-Lead Counsel [Hagens Berman] . . . along with other Class Counsel, have fairly and adequately represented the interests of the Class and satisfied the requirements of Fed. R. Civ. P. 23(g) . . . ."); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 U.S. Dist. LEXIS 24097, at *60 n.14 (N.D. Cal. Feb. 21, 2017) (appointing Hagens Berman co-lead counsel based on experience and adequacy and because "[that] firm[] ha[s] ably and vigorously litigated this case"); Order at 3, *In re Suboxone Antitrust Litig.*, No. 13-md-2445 (E.D. Pa. Aug. 7, 2013), ECF No. 44 (appointing Hagens Berman and Hilliard Shadowen co-lead counsel); *In re Prograf Antitrust Litig.*, No. 11-10344, 2013 U.S. Dist. LEXIS 62043, at *8 (D. Mass. Apr. 23, 2013) (finding class counsel Hagens Berman "well-qualified"); *In re Flonase Antitrust Litig*, 951 F. Supp. 2d 739, 747 (E.D. Pa. 2013) (counsel including Hagens Berman were "knowledgeable, tenacious, and highly skillful"); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431, 2011 U.S. Dist. LEXIS 90075, at *16 (E.D. Pa. Aug. 11, 2011) (class counsel Hagens Berman were "well-qualified to represent the proposed class in this case. They have extensive experience in similar class actions involving delayed generic competition. The plaintiff's counsel also have vigorously and capably prosecuted this action"); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472, 2020 U.S. Dist. LEXIS 125746, at *48 (D.R.I. July 17, 2020) (finding counsel, including co-lead Hilliard Shadowen, "have demonstrated that they are skillful and well-experienced and that they have effectively and efficiently prosecuted this complex and protracted litigation to the benefit of the" class); *see also In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn. Mar. 6, 2018), ECF No. 766 (appointing Hilliard Shadowen as co-lead counsel); *Staley v. Gilead Sciences, Inc.*, No. 19-2573 (N.D. Cal. Sep. 9, 2019), ECF No. 163 (appointing Hilliard & Shadowen and Hagens Berman as interim co-lead counsel).

Indeed, the $340 million settlement amount secures an excellent result for the Direct Purchaser Classes. Although Class Counsel have always been (and remain) confident in the strength of the Direct Purchasers' claims, there was no guarantee that a jury would have found in favor of the Direct Purchaser Classes. Given the risk of no recovery or a substantially reduced recovery—a risk that would persist even after a lengthy and costly trial (and despite already-certified classes)—the Classes' recovery through settlement is substantial, and well within the range of possible approval.

Courts often give significant weight when evaluating the reasonableness of a proposed class action settlement to the judgment of experienced counsel.[47] Even more so where, as here, Class Counsel investigated the facts and initiated the litigation, and then oversaw every aspect of the case, including significant discovery and motion practice, so as to fully appreciate the pros and cons of proceeding with litigation.[48] In light of Class Counsel's appraisal of the strengths and weaknesses of the Direct Purchasers' claims, the damages claimed in this action, and Class Counsel's experience in other pharmaceutical antitrust cases, Class Counsel believes this to be an excellent result for the Classes within the range of possible approval.

## B.  The proposed plan to allocate the settlement *pro rata* to Class Members is fair, reasonable, and adequate.

"A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate."[49] A plan of allocation is fair and reasonable as long as it

---

[47] *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *accord In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 296 F.R.D. 351, 364 (E.D. Pa. 2013); *In re Southeastern Milk Antitrust Litig.*, No. 08-md-1000, 2013 U.S. Dist. LEXIS 70167, at *21-22 (E.D. Tenn. May 17, 2013).

[48] *See, e.g.*, *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) (weight of counsel's recommendation depends on "various factors among them the length of their involvement in the litigation, their competence, and their experience in this particular type of litigation.").

[49] *Hill*, 2014 U.S. Dist. LEXIS 179702, at *27 (D. Mass. Nov. 26, 2014); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010) (same).

has a "reasonable, rational basis."[50] "A reasonable plan of allocation need not necessarily treat all class members equally" and "may allocate funds based on the extent of class members' injuries and consider the relative strength and values of different categories of claims."[51]

The proposed plan of allocation here meets this standard. As set forth in the Direct Purchasers' proposed Allocation Plan[52] (and the supporting declaration of Dr. Meredith Rosenthal[53]), the Allocation Plan (i) apportions the Net Settlement Fund among the Direct Purchaser Classes to create three drug-specific Net Settlement Funds (the "Drug-Specific Net Settlement Funds");[54] (ii) calculates each Class Member's *pro rata* weighted share of each Drug-Specific Net Settlement Fund based on the combined net unit purchases of (a) brand and generic Diovan made directly from any brand or generic manufacturer, (b) brand and generic Nexium made directly from any brand or generic manufacturer, and/or (c) brand and generic Valcyte made directly from any brand or generic manufacturer, but excluding from the calculation all brand units attributable to persons or entities that purchased only branded Valcyte; and (iii) allocates the Net Settlement Fund among Class Members in proportion to the

---

[50] *Hill*, 2014 U.S. Dist. LEXIS 179702, at *27 (quoting *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012)).

[51] *Id.* (internal citations and quotations omitted).

[52] Sobol Decl. Ex. 5, Allocation Plan.

[53] Sobol Decl. Ex. 9, Rosenthal Declaration.

[54] To ensure that each Direct Purchaser Class receives an equitable share of the Net Settlement Fund, Lead Counsel previously appointed separate counsel ("Allocation Counsel") to advocate on behalf of each Direct Purchaser Class in the event of a successful resolution of the case. Allocation Counsel engaged in vigorous, arms-length negotiations over the percentage of funds that each Direct Purchaser Class would receive from any future settlement with Ranbaxy based on the particular facts and circumstances surrounding each drug, including issues related to establishing Ranbaxy's liability to each Direct Purchaser Class, causation issues presented by the circumstances of each drug's alternate entry scenarios, and the comparison of potential damages owed to each Direct Purchaser Class. Allocation Counsel determined that an equitable allocation of the Net Settlement Fund would allocate fifty percent (50%) of the Net Settlement Fund to the Diovan Class, forty-five percent (45%) of the Net Settlement Fund to the Nexium Class, and five percent (5%) of the Net Settlement Fund to the Valcyte Class. *See* Declaration of Joseph Meltzer on behalf of the Diovan Class (Sobol Decl. Ex. 6); Declaration of Linda Nussbaum on behalf of the Nexium Class (Sobol Decl. Ex. 7); and Declaration of Kenneth A. Wexler on behalf of the Valcyte Class (Sobol Decl. Ex. 8).

sum of the Class Member's *pro rata* weighted share of each Drug-Specific Net Settlement Fund.[55]

The Allocation Plan is similar to other court-approved *pro rata* allocation plans in cases brought by direct purchasers to recover overcharges arising from delayed generic competition and can be implemented with a high degree of efficiency.[56] In addition, in Dr. Rosenthal's opinion:

> [T]his allocation method is practical and efficient. . . Since this method relies on actual transactional sales data showing Claimants' actual purchases of these drugs, it represents a reasonable method for reimbursing Claimants based on the type (brand purchases or generic purchases) and extent (unit pill volume purchased) of their injuries.[57]

The Allocation Plan proposes to send a separate, individualized Claim Form to each Class Member, pre-populated with that Class Member's total qualifying brand and generic direct purchases, as calculated by Dr. Rosenthal based on transactional sales data produced in this case. The Claim Form will (a) request that each Class Member verify the accuracy of the information contained in the Claim Form, and (b) provide instructions for challenging any of the figures or computations contained in the Claim Form. If a Class Member agrees that the information contained in the Claim Form is accurate, it will be asked to sign the Claim Form verifying its accuracy and timely mail it to the proposed Settlement Administrator. If a Class

---

[55] Sobol Decl. Ex. 5, Allocation Plan, at 2.

[56] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-2819 (E.D.N.Y.), ECF Nos. 490-7, 562 (approved Oct. 7, 2020); *In re Loestrin*, No. 13-md-2472 (D.R.I.), ECF Nos. 1396-8, 1462 (approved Sept. 1, 2020); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.), ECF Nos. 1004-5, 1054 (approved Sept. 20, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018); *American Sales Company, LLC v. Pfizer, Inc. et al. (Celebrex)*, No. 14-361 (E.D. Va.), ECF Nos. 609-4, 630 (approved Apr. 18, 2018); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn. Dec. 19, 2017), ECF Nos. 733-1, 740; *In re Asacol Antitrust Litig.*, No. 15-cv-12730 (D. Mass.), ECF Nos. 419-9, 648 (approved Dec. 7, 2017); *King Drug Co. of Florence, Inc. v. Cephalon, Inc. (Provigil)*, No. 06-cv-1797 (E.D. Pa.), ECF Nos. 864-17, 870 (approved Oct. 15, 2015).

[57] Sobol Decl. Ex. 9, Rosenthal Declaration at 5.

Member believes that the information contained in its Claim Form is not accurate, that Class Member may submit its own purchase records pursuant to the procedures described in the Allocation Plan.[58]

Each Claimant will be required to execute and return the Claim Form to receive any distribution from the Net Settlement Fund. The Settlement Administrator shall follow-up, by phone, email, and/or mail, with any Class Member that does not timely return a Claim Form to attempt to confirm that the decision not to submit a Claim Form was intentional and to address any questions the Class Member may have.[59]

The proposed Allocation Plan fairly and appropriately reimburses Class Members on a *pro rata* weighted basis, based on the extent of their injuries. The Plan is also easy to implement, allowing Dr. Rosenthal to use existing data to determine the volume of relevant purchases for each Class Member, subject to possible adjustment based on purchase data submitted by Class Members should they choose to submit their own data.[60]

**C.    The proposed form and manner of notice are appropriate.**

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."[61] The proposed forms of notice and notice program here fully comply with due process and Rule 23.

"The notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class."[62] The proposed notice,

---

[58] Sobol Decl. Ex. 5, Allocation Plan at 5-6.

[59] *Id.* at 6-7.

[60] *Id.* at 4, 9-10.

[61] Fed. R. Civ. P. 23(e)(1)(B).

[62] *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003).

attached as Exhibit 2 to the Sobol Declaration, describes the classes, procedural status of the litigation, significant terms of the proposed settlement, including the amount of money the Defendants have agreed to pay, the releases the Defendants will receive, and the plan for allocation of the funds among the members of the classes. The notice also outlines the court approval process and advises class members of their rights under Rule 23, including the right to object to, and be heard as to, the reasonableness and fairness of the proposed settlement. The notice is substantially similar, in both form and substance, to notices used in other direct purchaser generic delay cases and satisfies the notice requirements of Rule 23(e) and the due process requirements that must be met to bind each member of the class.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[63] Here, because the direct purchaser classes represent a finite group of businesses consisting of approximately 62, 91, and 48 members in the Diovan, Nexium, and Valcyte classes (respectively), identified from the business records of Defendants and third parties, individual direct mail notice is sufficient and practicable.[64] Lead Counsel will also post the notice and key litigation documents on a specially-designated website.[65]

---

[63] Fed. R. Civ. P. 23(c)(2)(B).

[64] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 n.22 (1978); *Hill v. State St. Corp.*, No. 09-12146, 2015 U.S. Dist. LEXIS 2166, at *9 (D. Mass. Jan. 8, 2015) (finding sufficient direct mail notice even when some class members received notice past the deadline for objection); *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) ("Because the names and last known addresses of all class members were available from [defendant's] business records, the mailing of the notice of the proposed settlement agreement and the fairness hearing . . . was the best notice practicable under the circumstances.").

[65] IN RE: RANBAXY ANTITRUST LITIGATION DIRECT PURCHASERS, www.RanbaxyAntitrustLitigation.com (last visited Apr. 18, 2022). A declaration from Amy Fringer of Rust Consulting, Inc., in support of the notice and notice program is attached as Exhibit 10 to the Sobol Declaration.

### 1.   An additional opt-out period is unnecessary.

Rule 23 does not require the Court to authorize a second opt-out period,[66] and the Court should not allow one here. Foregoing a settlement-stage opt-out period is common practice in direct purchaser pharmaceutical antitrust class actions, both in this Circuit and in others.[67] As in other direct purchaser actions, the class members in this case are sophisticated businesses, many of which have in-house counsel or have retained outside counsel for purposes of this litigation. Class Members were informed about class certification on or around October 7, 2021 pursuant to a Court-approved mailed individual notice, and were given the opportunity to opt out of the certified classes. None chose to do so. There is no reason to believe that these same Class Members would elect to opt out now, less than a year later. The settlement, moreover, allows them to object to the terms of the settlement and/or Class Counsel's request for attorneys' fees, expenses, and service awards to the class representatives. For these reasons, the Direct Purchasers respectfully submit that no second opt-out period is necessary here.

---

[66] *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270-71 (2d Cir. 2006) (courts are under "no obligation" to afford class members second opportunity for exclusion); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) ("[T]o hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law."); *In re Titanium Dioxide Antitrust Litig.*, No. 10-318, 2013 U.S. Dist. LEXIS 130288, at *17 n.8 (D. Md. Sept. 11, 2013) ("[T]his Court concludes, in exercising its discretion, that no second opt-out period will be required in order to approve the Settlements."); *Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2013 WL 12157826, at *4 (D.N.J. Mar. 18, 2013) (class members "not entitled to a second opportunity to exclude themselves from the Class pursuant to Rule 23(e)(4)."); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 663-64 (N.D. Tex. 2010) ("The court declines in its discretion to refuse approval of the proposed settlement on the ground that it does not permit a second opt out by class members.").

[67] Prelim. Approval Order at 4, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503 (D. Mass. Mar. 12, 2018), ECF No. 1095 (holding there is "no need for an additional opt-out period"); Prelim. Approval Order at 2, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-2409 (D. Mass., June 12, 2015), ECF No. 1536 ("[T]he Court finds that a discretionary second opt-out period pursuant to recently-amended Rule 23(e)(3) is unnecessary."); Prelim. Approval Order at 1, *In re Carbon Black Antitrust Litig.*, No. 03-10191 (D. Mass. Nov. 29, 2006), ECF No. 297 (same); *see also* Prelim. Approval Order at 3-4, *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-7488 (S.D.N.Y. Jan. 6, 2020), ECF No. 920 (same); Am. Prelim. Approval Order at 3-4, *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal. May 3, 2018), ECF No. 1018 (same); *Flonase*, 951 F. Supp. 2d at 745 ("[T]he absence of a second opt-out right was of no consequence here.").

**D.      The Court should appoint Rust Consulting, Inc. as settlement administrator.**

The Direct Purchasers request that the Court appoint Rust Consulting, Inc. ("Rust") to serve as claims administrator for the Direct Purchaser Classes and oversee the administration of the settlement, including disseminating settlement notice to the classes and, following final approval of the settlement, sending claim forms, processing and validating responses, and distributing each class member's share of settlement funds. Rust will layout, print, and mail the settlement notice package and claim forms in hard copy by direct mail and, where available, by email. Rust will also maintain a settlement website and conduct calls and correspondence to respond to any class member inquiries.

Rust "provides consulting and administration services to clients including law firms, companies across all industries, and governmental agencies at all levels," and has "a deep history in legal settlement administration."[68] Rust was previously appointed by this Court to provide notice to class members of the pendency of this litigation,[69] and has provided an estimate for the cost of dissemination of the settlement notice and administration and distribution of the settlement. Based on Class Counsel's experience, Rust's estimate is competitive and reasonable.[70]

**E.      The Court should appoint the Huntington National Bank as escrow agent.**

The direct purchasers request that the Court approve the service of The Huntington National Bank as escrow agent for the settlement funds.[71] The Huntington National Bank, established in 1866, is among the largest 1% of banks in the United States based on size, holds

---

[68] ABOUT – RUST CONSULTING, INC., https://www.rustconsulting.com/about (last visited Apr. 18, 2022).

[69] Order (Sept. 24, 2021), ECF No. 469-1, at 4.

[70] Pursuant to the proposed settlement agreement, the expenses associated with the notice and claims administration process will be deducted from the settlement funds, as is standard practice.

[71] Sobol Decl. Ex. 4, Escrow Agreement.

over $57 billion in assets, and includes 700 offices nationwide. The Huntington National Bank's National Settlement Team has handled more than 1,000 settlements for law firms, claims administrators, and regulatory agencies. Lead Counsel have utilized the services of The Huntington National Bank as escrow agent in multiple class action settlements previously, both securely and successfully. The parties have agreed upon the form of escrow agreement to govern the escrow account to hold the settlement proceeds while the settlement approval process plays out.[72]

### E. The proposed schedule is fair and should be approved.

The direct purchasers propose the following schedule for completing the approval process:[73]

| Event | Deadline |
|---|---|
| Dissemination of notices to the classes in the form and manner proposed. | Within 15 days of the Court's entry of the Order preliminarily approving the settlement. |
| Submission of Class Counsel's application for attorneys' fees, costs and expenses and application for service awards to the class representatives. | Within 60 days of entry of the Order preliminarily approving the settlement. |
| Filing of Direct Purchasers' motion for final approval of the settlement. | Within 60 days of entry of the Order preliminarily approving the settlement. |
| Deadline for Class Members to object to the settlement and/or attorneys' fees, expenses, and service awards. | Within 81 days of the Order preliminarily approving the settlement. |
| Reply briefs. | Seven (7) days before the date set for the fairness hearing. |
| Fairness hearing. | To be determined by the Court (no earlier than 120 days after entry of the preliminary approval order). |

---

[72] *Id.*

[73] Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), the defendants shall serve notices as required under CAFA within ten (10) days from the date the direct purchasers file for preliminary approval of the proposed settlement.

This proposal provides for sufficient time (at least 66 days) for class members to object to the settlement after receipt of the notice of the settlement. Class Counsel will also file their motion for attorney's fees and reimbursement of expenses prior to the deadline for class members to object and timely post that motion on the settlement website for access by interested class members. Any class member who timely objects to the settlement may be heard at the fairness hearing.

## IV.  CONCLUSION

The settlement negotiated at arm's length by the parties is fair, reasonable, and adequate. Accordingly, the Direct Purchasers request that the Court preliminarily approve the proposed settlement, enter the proposed Preliminary Approval Order,[74] approve the proposed form and manner of notice, approve the proposed final settlement schedule, and set a date for a fairness hearing at the Court's convenience.

Dated:  April 22, 2022                                                Respectfully Submitted,

*/s/ Thomas M. Sobol*

Thomas M. Sobol (BBO# 471770)
Gregory T. Arnold (BBO #632738)
Kristen A. Johnson (BBO #667261)
Kristie A. LaSalle (BBO #692891)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
grega@hbsslaw.com
kristenj@hbsslaw.com
kristiel@hbsslaw.com

---

[74] Sobol Decl. Ex. 3.

Steve D. Shadowen (admitted *pro hac vice*)
**HILLIARD SHADOWEN LLP**
1135 W. 6th St., Ste. 125
Austin, Texas 78703
Tel: (855) 344-3928
steve@hilliardshadowenlaw.com

*Lead Class Counsel for the Direct Purchaser
Classes*

John D. Radice (admitted *pro hac vice*)
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com

Paul E. Slater (admitted *pro hac vice*)
Joseph M. Vanek (admitted *pro hac vice*)
David P. Germaine (admitted *pro hac vice*)
John Bjork (admitted *pro hac vice*)
**SPERLING & SLATER, P.C.**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Tel: (312) 641-3200
pes@sperling-law.com
jvanek@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com
mslater@sperling-law.com

Joseph H. Meltzer (admitted *pro hac vice*)
Terence S. Ziegler (admitted *pro hac vice*)
Ethan J. Barlieb (admitted *pro hac vice*)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
tziegler@ktmc.com
ebarlieb@ktmc.com

Kenneth A. Wexler (admitted *pro hac vice*)
Justin Boley (admitted *pro hac vice*)
Tyler Story (admitted *pro hac vice*)
**WEXLER BOLEY & ELGERSMA LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com

Sharon K. Robertson (admitted *pro hac vice*)
Donna M. Evans (BBO #554613)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
srobertson@cohenmilstein.com
devans@cohenmilstein.com

*Counsel for Plaintiffs Meijer, Inc., Meijer Distribution, Inc., and the Direct Purchaser Classes*

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com

*Counsel for the Direct Purchaser Classes*

22

## **CERTIFICATE OF SERVICE**

I, Thomas M. Sobol, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: April 22, 2022

**_/s/ Thomas M. Sobol_**
Thomas M. Sobol