# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>All Direct-Payor Actions | Master File No.<br>19-md-02878-NMG |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on April 8, 2022 by and between plaintiffs Meijer, Inc. and Meijer Distribution, Inc. ("Plaintiffs"), individually and on behalf of the direct purchaser classes defined below (who, together with Plaintiffs are referred to collectively as the "Direct Purchaser Classes"), by and through Hagens Berman Sobol Shapiro LLP attorneys Thomas M. Sobol and Kristen A. Johnson, and Hilliard & Shadowen LLP attorney Steve Shadowen, in their capacity as attorneys and lead class counsel ("Lead Class Counsel") for the Direct Purchaser Classes in *In re Ranbaxy Generic Drug Application Antitrust Litigation*, No. 19-md-02878-NMG (the "Action"), and defendants Ranbaxy, Inc. and Sun Pharmaceutical Industries Limited (collectively, "Ranbaxy")[1] by and through Kirkland & Ellis LLP attorneys Jay P. Lefkowitz and Devora W. Allon.  This Settlement Agreement is intended to, and upon occurrence of the Effective Date will, fully, finally, and forever resolve, compromise, discharge, and settle the claims of the Direct Purchaser Classes in this Action as to Ranbaxy, subject to the terms and conditions set forth herein. The Settlement Agreement resolves those claims brought on behalf of the Direct Purchaser Classes against Ranbaxy only

---

[1] Sun acquired Ranbaxy in 2015 and thereby became responsible for Ranbaxy's liabilities.

(including all of Ranbaxy's related and/or affiliated individuals and entities, past, present, and future, as defined in ¶8 below), and does not resolve, compromise, discharge, or settle any claims of Plaintiffs or the Direct Purchasers Classes against any other entity.

## RECITATIONS

WHEREAS, on May 12, 2015, this Action was commenced on behalf of a class of businesses that purchased the drugs valsartan, esomeprazole magnesium, and valganciclovir hydrochloride (sold under the brand names Diovan, Nexium, and Valcyte, respectively) directly from defendants or any brand or generic manufacturer, alleging Ranbaxy engaged in a scheme in violation of the federal antitrust and racketeering laws to unlawfully delay entry of generic substitutes for brand Diovan, Nexium, and Valcyte, thereby imposing antitrust overcharges on members of the Direct Purchaser Classes ("Class Members");[2]

WHEREAS, on June 16, 2016, Magistrate Judge Kelley issued a Report and Recommendation recommending the denial of Ranbaxy's motion to dismiss the complaint filed on behalf of the Direct Purchaser Classes, *see Meijer, Inc. v. Ranbaxy, Inc.*, No. 15-cv-11828-NMG (D. Mass. June 16 2016), ECF No. 52, which was adopted by this Court on September 7, 2016, *see Meijer, Inc. v. Ranbaxy, Inc.*, No. 15-cv-11828-NMG D. Mass. Sept, 7, 2016), ECF No. 80;

WHEREAS, on March 2, 2021, a Second Consolidated Direct Purchaser Complaint and Jury Demand (the "Second Amended Class Complaint") was filed on behalf of the Direct

---

[2] The original direct purchaser complaint asserted claims arising from Diovan and Valcyte sales only. *See Meijer, Inc. et al. v. Ranbaxy Inc. et al.*, No. 15-cv-11828 (D. Mass. May 12, 2015), ECF No. 1. Subsequent actions further asserted claims related to Nexium sales, and, later, were consolidated into this first-filed Action. *See Meijer, Inc. v. Ranbaxy, Inc..*, No. 18-cv-12129 (D. Mass., Oct. 11, 2018); *Cesar Castillo, Inc. v. Ranbaxy Inc.*, No. 18-cv-06126 (E.D.N.Y., Nov. 1, 2018) (the "CCI Action"). The CCI Action was dismissed on May 14, 2020. *See* Stip. of Dismissal without Prejudice, No. 19-md-2878 (D. Mass.), ECF No. 216.

Purchaser Classes, *see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878-NMG (D. Mass. March 2, 2021), ECF No. 338;

WHEREAS, on May 14, 2021, the Court issued a memorandum and order on Plaintiffs' motions for class certification pursuant to Federal Rule of Civil Procedure 23 certifying the Direct Purchaser Classes, as defined in Paragraph 1 below, *see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878 (D. Mass. May 14, 2021), ECF No. 389,[3] and subsequently entered an order approving the form and manner of notice, appointing a notice administrator, and formally appointing class representatives and lead class counsel, *see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878 (D. Mass. Sept. 24, 2021), ECF No. 469;

WHEREAS, on October 4, 2021, the claims administrator for the Direct Purchaser Classes sent notice to the Class Members advising them of the Court's class certification order and providing a procedure for opting out of the class. *See In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878 (D. Mass. Nov. 23, 2021), ECF No. 506-1;

WHEREAS, no entities opted out of any of the Direct Purchaser Classes;

WHEREAS, on November 15 and November 16, 2021, Ranbaxy, Lead Class Counsel, and lead class counsel for the end-payor class participated in a mediation with and through mediator Kenneth Feinberg, but did not reach any resolution;

---

[3] Two cases were also filed on behalf of end-payor plaintiffs: *United Food & Comm. Workers Health & Welfare Fund of Northeastern Penn. v. Ranbaxy Inc., et al.*, No. 19-cv-10356 (D. Mass), and *Louisiana Health Servs. & Indemnity Co. d/b/a Blue Cross and Blue Shield of Louisiana, et al. v. Ranbaxy Inc., et al.*, No. 19-cv-10274 (D. Mass). Those cases were consolidated with each other and coordinated with the Direct Purchaser Class case. The Court also certified an end-payor class.

WHEREAS, on November 22, 2021, the Court issued an order on cross-motions for summary judgment, *see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878-NMG (D. Mass. Nov. 22, 2021), ECF No. 505;

WHEREAS, on December 21, 2021, the Court issued an oral order on the parties' *Daubert* motions, *see In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878-NMG (D. Mass. Mar. 17, 2022), ECF No. 572-2 (transcript of Dec. 21, 2021 hearing);

WHEREAS, Ranbaxy denies each and every one of the allegations asserted in the current pending and prior complaints filed on behalf of the Direct Purchaser Classes, has neither conceded nor admitted any liability, and has asserted a number of defenses to the claims of the Direct Purchaser Classes;

WHEREAS, Ranbaxy has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement and to resolve all claims asserted on behalf of the Direct Purchaser Classes in this Action solely to avoid the uncertainties and additional costs of further litigation and thereby give more attention to the growth of the business;

WHEREAS, after substantial factual and expert discovery (including with respect to the claims asserted in Plaintiffs' complaints in this Action and the legal and factual defenses asserted thereto by Ranbaxy), Lead Class Counsel, along with additional counsel for Plaintiffs and the Direct Purchaser Classes ("Class Counsel"), believe that it would be in the best interests of the Direct Purchaser Classes to enter into this Settlement Agreement with Ranbaxy to avoid the uncertainties of litigation against Ranbaxy and assure a benefit to the Direct Purchaser Classes;

WHEREAS, Lead Class Counsel, on behalf of Plaintiffs and the Direct Purchaser Classes, and counsel for Ranbaxy, all of whom are highly experienced in pharmaceutical

4

antitrust litigation and settlement, engaged in arm's length settlement negotiations and have

reached this Settlement Agreement with the assistance of a mediator, Kenneth Feinberg, subject

to Court approval, which embodies all of the terms and conditions of the Settlement between

Plaintiffs, both individually and on behalf of the Direct Purchaser Classes, and Ranbaxy;

WHEREAS, Plaintiffs and Ranbaxy agree that neither this Settlement Agreement nor the

settlement it embodies (the "Settlement") nor any actions taken in furtherance of either the

Settlement Agreement or the Settlement shall be deemed or construed to be an admission or

evidence of any violation of any statute or law or of any liability or wrongdoing by Ranbaxy (or

by any of Ranbaxy's related and/or affiliated individuals and entities, past, present, and future, as

defined in ¶8 below) or of the truth of Plaintiffs' claims or allegations or a waiver of any

defenses thereto or an admission that any such defense lacks merit;

WHEREAS, Plaintiffs and Ranbaxy agree that neither this Settlement Agreement nor the

Settlement nor any actions taken in furtherance of either the Settlement Agreement or the

Settlement shall be deemed or construed to be an admission or evidence of any lack of merit in

or of the absence of the truth of Plaintiffs' claims or allegations;

WHEREAS, Lead Class Counsel have concluded that the Settlement is fair, reasonable,

and adequate within the meaning of Federal Rule of Civil Procedure 23, and is in the best

interests of the Direct Purchaser Classes; and

NOW THEREFORE, in view of the foregoing and the representations, warranties, and

covenants contained herein, and intending to be legally bound hereby, it is agreed by the

undersigned, on behalf of Plaintiffs and the Direct Purchaser Classes and Ranbaxy that this

Action and all claims of Plaintiffs and the Direct Purchaser Classes as asserted in the complaints

in this case be fully, finally, and forever settled, compromised, discharged, and dismissed with

prejudice as to Ranbaxy, with each party bearing its own costs, subject to the approval of the Court, on the following terms and conditions:

1.      **Direct Purchaser Classes.** The Court has previously certified the following Direct Purchaser Classes, which Ranbaxy shall not challenge for purposes of this Settlement:

> All persons or entities in the United States and its territories who purchased Diovan and/or AB-rated generic versions of Diovan directly from any of the Defendants or any brand or generic manufacturer at any time during the period September 21, 2012, through and until the anticompetitive effects of the Defendants' conduct cease (the "Diovan Class Period");

> All persons or entities in the United States and its territories who purchased Valcyte and/or AB-rated generic versions of Valcyte directly from any of the Defendants or any brand or generic manufacturer, but excluding those purchasers who only purchased branded Valcyte, at any time during the period August 1, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Valcyte Class Period"); and

> All persons or entities in the United States and its territories who purchased Nexium and/or AB-rated generic versions of Nexium directly from any of the Defendants or any brand or generic manufacturer at any time during the period May 27, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Nexium Class Period").

> Excluded from each of the direct purchaser classes are the defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities.

2.      **Reasonable Best Efforts to Effectuate This Settlement.** Plaintiffs, Lead Class Counsel, and Ranbaxy agree to recommend approval of this Settlement to the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, to carry out the terms of this Settlement Agreement and to secure the prompt, complete, and final dismissal with prejudice of claims in this Action against Ranbaxy. This includes Ranbaxy serving notice of this

Settlement on the appropriate federal and state officials under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

3.    <u>**Motion for Preliminary Approval of the Settlement.**</u> As soon as possible and in no event later than twenty (20) business days after the date of execution of this Settlement Agreement (or earlier if required by the Court), Plaintiffs and the Direct Purchaser Classes shall submit to the Court, and Ranbaxy shall support, a motion seeking entry of an order preliminarily approving the Settlement substantially in the form of **Exhibit A** hereto (the "Preliminary Approval Order")—

a)  preliminarily approving the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Direct Purchaser Classes, pursuant to Federal Rule of Civil Procedure 23;

b)  staying all proceedings in this Action on behalf of Plaintiffs and the Direct Purchaser Classes against Ranbaxy, except those proceedings provided for in or required by this Settlement Agreement;

c)  approving the form and manner of notice, which provides for dissemination of notice, substantially in the form of **Exhibit B** hereto, by U.S. mail and, where possible, email to all Class Members, except pursuant to CAFA, Ranbaxy shall serve notices as required under CAFA within ten (10) business days from the date Plaintiffs file the Settlement Documents with the Court. Ranbaxy shall bear any costs associated with such CAFA notices and contemporaneously provide Class Counsel with copies of any such notices;

d)  appointing a settlement administrator and escrow agent; and

e)  setting a final settlement schedule and date for a final approval hearing by the Court after the notice period has expired to approve the Settlement, the proposed allocation plan, and Lead Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, and Plaintiffs' application for Incentive Awards.

4.      <u>**Motion for Final Approval and Entry of Final Judgment.**</u> If the Court

preliminarily approves this Settlement, Plaintiffs and the Direct Purchaser Classes shall submit,

and Ranbaxy shall support, a motion for final approval of this Settlement by the Court (the

"Final Approval Motion") within sixty (60) days after the Court enters the Preliminary Approval

Order, and after notice has been disseminated to the Direct Purchaser Classes pursuant to the

Preliminary Approval Order. The Final Approval Motion shall seek entry of an order and final

judgment ("Final Approval Order") substantially in the form of **Exhibit C** hereto—

a)  finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Plaintiffs and the Direct Purchaser Classes within the meaning of Federal Rule of Civil Procedure 23 and directing its implementation pursuant to its terms;

b)  finding that the notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

c)  finding that the proposed allocation plan, which allocates the Settlement Fund (net of Court-approved attorneys' fees, expenses, and settlement administration costs), is fair and efficient;

d)  finding that all Class Members shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

e)  incorporating the releases set forth in Paragraphs 8 and 9, below, and forever barring the Plaintiff Releasors (as defined below) from asserting any Released Claims (as defined below) against any of the Ranbaxy Releasees (as defined below);

f)  retaining exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and implementation of this Settlement;

g)  directing that all claims by and on behalf of Plaintiffs and the Direct Purchaser Classes be dismissed with prejudice as to Ranbaxy and, except as provided for herein, with prejudice

and without costs or attorneys' fees recoverable under 15 U.S.C. § 15(a); and

5.    **Finality of Settlement.** This Settlement Agreement and the Settlement shall become final upon the occurrence of all the following events (the "Effective Date"):

a) the Settlement and this Settlement Agreement are approved by the Court as required by Federal Rule of Civil Procedure 23(e);

b) the Court enters an order finally approving the Settlement substantially in the form attached hereto as the Final Approval Order (**Exhibit C**) and enters a final judgment of dismissal with prejudice as to Ranbaxy against Plaintiffs and the Direct Purchaser Classes;

c) the time for appeal from the Court's signing of the Final Approval Order expires or, if the Final Approval Order is appealed, such appeal is resolved by agreement and is withdrawn by the appealing party, or is affirmed by the court of last resort to which an appeal of such Final Approval Order may be taken and such affirmance is no longer subject to further appeal or review; and

d) the Settlement is not terminated pursuant to Paragraph 13, below.

6.    **Settlement Payment.** The total "Settlement Payment" is three hundred forty million dollars ($340,000,000 USD). The Settlement Payment will be made by Ranbaxy as follows:

a) Within ninety (90) business days following entry of the Preliminary Approval Order of the Settlement without material change upon receipt from Class Counsel of wiring instructions on the recipient's letterhead that include the bank name and ABA routing number, account name, and account number, and a signed Form W-9 reflecting a valid taxpayer identification number for the qualified settlement account in which the funds are to be deposited (the "Settlement Fund"), Ranbaxy shall pay the Settlement Payment.

b) The Settlement Fund shall be held in escrow (the "Escrow Account"), subject to the terms and conditions of an escrow

agreement in the form of **Exhibit D** hereto (the "Escrow Agreement") and in accordance with the provisions of Paragraph 7 below, pending finality of this Settlement Agreement pursuant to Paragraph 5 above.

c)  The total payment that Ranbaxy will pay for this Settlement shall be the Settlement Payment only. No portion of the Settlement Payment shall constitute, or shall be construed as constituting, a payment in lieu of treble damages, fines, penalties, punitive damages or forfeitures.

d)  The Settlement Payment shall be made directly by Ranbaxy to the Escrow Account.

**7.     The Settlement Fund.**

(a) Before the Court issues the Final Approval Order, disbursements for expenses associated with providing notice of the Settlement to the Direct Purchaser Classes and administering the Settlement and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement (collectively, "Administration Expenses") may be made from the Settlement Fund. In the event the Agreement is disapproved, terminated, or otherwise fails to become effective, the Settlement Fund shall be refunded to Ranbaxy plus interest earned (net of any taxes paid on such interest), minus Administration Expenses reasonably paid or incurred up to fifty thousand dollars ($50,000). The Court's approval shall not be required for disbursements or distributions of Administration Expenses for amounts (in the aggregate) of less than fifty thousand dollars ($50,000). Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

(b) At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in the Escrow Agreement, in instruments backed by the full faith and credit of the United States government or fully insured by the United States government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit

10

Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested as directed in writing by Lead Class Counsel. All interest and dividends earned on the Settlement Fund shall become and remain part of the Settlement Fund. Ranbaxy shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

(c) After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution. Ranbaxy shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible for disputes relating to the amount, allocation, or distribution of any fees or expenses. Further, after making the Settlement Payment, Ranbaxy shall not be liable for any additional payments, including without limitation any damages, fines, penalties, punitive damages, or forfeitures, to Plaintiffs, Class Counsel, or the Direct Purchaser Classes pursuant to this Settlement Agreement.

(d) Ranbaxy shall have no right of reimbursement or repayment from the Settlement Fund except as set forth in Paragraphs 7(a) and 13.

(e) Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. Ranbaxy shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of Plaintiffs' or the Direct Purchaser Classes' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

(f) To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

8.      **Releases.**

(a) In exchange for the Settlement Payment, upon the occurrence of the Effective Date, Plaintiffs and all members of the Direct Purchaser Classes, whether or not they choose to make a claim upon or participate in the Settlement Fund on behalf of themselves and their respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or limited partners, as well as their past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing, and as assignee or representative of any other entity (the "Plaintiff Releasors"), will dismiss Ranbaxy, its past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or limited partners, as well as its past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing (the "Ranbaxy Releasees") from this Action with prejudice, and release and forever discharge the Ranbaxy Releasees from all claims, rights, debts, obligations, demands, actions, suits, causes of action, liabilities, including costs, expenses, penalties, and attorneys' fees, or damages (known or unknown), whenever incurred, asserted in the Second Amended Class Complaint, or that could have been asserted in this Action based on the allegations made regardless of legal theory (collectively, the "Released Claims").

(b) For the avoidance of doubt, the scope of the Released Claims does not extend to (1) claims alleged in *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-2724 (E.D. Pa.); (2) claims alleged in *In re: Lipitor Antitrust Litigation*, No. 12-cv-2389 (D.N.J.); and

(3) any claim that both (a) does not relate to direct purchase of brand or generic Diovan between September 2012 and December 2014; brand or generic Nexium between May 2014 and December 2015; and/or brand or generic Valcyte between August 2014 and February 2016, and (b) that is not contained in, is not based on, does not relate to, and does not arise out of the facts or circumstances alleged in the Second Amended Class Complaint.

(c) Plaintiffs and the Direct Purchaser Classes hereby covenant and agree that, after the Effective Date, each shall not sue or otherwise seek to establish or impose liability against the Ranbaxy Releasees based, in whole or in part, on any of the Released Claims. The Plaintiff Releasors are releasing claims (upon final Court approval) only against the Ranbaxy Releasees.

9.      **California Civil Code § 1542.** Each of the Plaintiff Releasors expressly waives all rights under California Civil Code § 1542 with respect to the Released Claims to the extent, if any, it would otherwise apply to the Released Claims which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

10.     **Reservation of Claims.** No party other than the Ranbaxy Releasees is intended to be, or is, included within the scope of the release contained herein.

11.     **Full Satisfaction; Limitation of Interest and Liability.** Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Ranbaxy of all claims that are released hereunder. Except as provided by order of the Court, no member of the Direct Purchaser Classes shall have any interest in the Settlement Fund or any portion thereof. Plaintiffs and Class Counsel (or any other counsel acting on Plaintiffs' behalf) will be paid solely out of the Settlement Fund for any costs and expenses relating to this Action.

12.     **Attorneys' Fees and Costs; Incentive Awards.**

13

(a) Class Counsel shall file a motion for approval of the Fee and Expense Award ("Motion for Fee and Expense Award") within sixty (60) days after the Court has granted preliminary approval of the Settlement, and sufficiently before the Court's final approval hearing on the Settlement. Class Counsel shall be paid solely out of the Settlement Fund for all such fees and expenses. Plaintiffs, Class Members, and their respective counsel shall not seek payment of any attorneys' fees or costs from Ranbaxy in this Action, or in any other action related to the Released Claims set forth above, from any source other than the Settlement Fund, and will not seek that payment prior to the Effective Date and only after the total Settlement Payment has been made.

(b) Plaintiffs may make an application to the Court for an award in connection with their representation of the Direct Purchaser Classes in this litigation, which amount constitutes the Incentive Awards, after the Court has granted preliminary approval of the Settlement but sufficiently before the Court's final approval hearing on the Settlement. Plaintiffs shall be paid solely out of the Settlement Fund for all such fees and expenses. Plaintiffs shall not seek any Incentive Awards from the Ranbaxy Releasees in this Action, or in any other action related to the Released Claims set forth above, from any source other than the Settlement Fund, and will not seek that payment prior to the Effective Date and only after the total Settlement Payment has been made.

(c) The procedures for and the allowance or disallowance by the Court of the Motion for Fee and Expense Award or the Incentive Awards to be paid out of the Settlement Fund are not part of this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Motion for Fee and Expense Award or Incentive Awards, or any

appeal from any such order, shall not operate to terminate or cancel this Agreement or provide a basis to terminate or cancel this Agreement, effect or delay the finality of the judgment approving the Settlement, or affect or delay the payment of the Settlement Payment.

13.     **Termination.** Ranbaxy and Plaintiffs shall each have the option to terminate the Settlement and have the Settlement Payment refunded to Ranbaxy if the Court declines to grant final approval to the Settlement. Ranbaxy shall have the option to terminate the Settlement and have the Settlement Payment refunded to Ranbaxy pursuant to the terms of a confidential supplemental agreement referenced in Paragraph 14. If for any reason the Settlement does not become final in accordance with the terms of the Settlement Agreement, then (i) this Settlement Agreement shall be of no force or effect; (ii) all funds paid to the Settlement Fund by Ranbaxy, plus interest (net of any taxes paid on such interest), minus the actual costs of notice and claims administration up to fifty thousand dollars ($50,000), shall be returned to Ranbaxy as soon as practicable after the Escrow Agent receives notice of termination; (iii) any release pursuant to Paragraphs 8 or 9 shall be of no force or effect; (iv) Ranbaxy and Plaintiffs shall be restored to their respective positions in the Action as of March 22, 2022, with all of their respective legal claims and defenses preserved as they existed on that date; (v) any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and (vi) the litigation of this Action will resume in a reasonable manner and on a reasonable timetable to be approved by the Court.

14.     **Opt-Outs.**

(a) Class Members were previously afforded the opportunity to opt out of the Direct Purchaser Classes. The parties agree that there is no need for an additional opt-out period and shall each oppose any effort to impose an additional opportunity to opt out of this Settlement.

Should the Court order an additional opt-out period, then, within ten (10) calendar days after the Court-ordered deadline by which Class Members may opt out, Lead Class Counsel shall serve on counsel for Ranbaxy a list of all direct purchasers who qualify for membership in one or more of the Direct Purchaser Classes and who timely submitted notices of intent to opt out ("Opt-Outs").

(b) Ranbaxy shall have the option to terminate this Agreement if the Opt-Out Percentage exceeds a percentage set forth in a confidential supplemental agreement between Plaintiffs and Ranbaxy.[4]

(c) Any disputes regarding the application of any aspect of this Paragraph 14, including the calculation of the Opt-Out Percentage, shall be resolved by the Court, with Plaintiffs, Ranbaxy, and the Opt-Outs all having the opportunity to be heard.

15.     **Taxes Paid by Settlement Fund.**

(a) The parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund. Lead Class Counsel shall be solely responsible for directing the Court-approved settlement administrator ("Settlement Administrator") to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Lead Class Counsel shall be solely responsible for directing the Settlement Administrator to make any tax payments, including interest and penalties, for income earned by the Settlement Fund. Lead Class Counsel shall also be solely responsible for directing the Settlement Administrator to withhold any amount of payments from the Settlement Fund as may be necessary or appropriate to satisfy any tax-related obligations. Lead Class Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in

---

[4] This agreement can be made available to the Court for *in camera* review upon request.

connection with carrying out the Escrow Agent's or tax preparer's responsibilities. Ranbaxy shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund and shall have no responsibility to pay taxes on any income earned by the Settlement Fund or to pay taxes with respect thereto unless the settlement is not consummated and the Settlement Fund or the net settlement fund (minus Administration Expenses) is returned to Ranbaxy. Other than as specifically set forth herein, Ranbaxy shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, for any period of time, Ranbaxy is required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Ranbaxy with notice to Lead Class Counsel, timely issue payment from the Settlement Fund to enable the payment of all taxes (state, federal, or other, including to any foreign jurisdiction) on income earned by the Settlement Fund.

(b) For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Settlement Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

(c) The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this

Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B.

16.  **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto and to the Ranbaxy Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and Lead Class Counsel shall be binding upon all Class Members.

17.  **Integrated Agreement.** This Settlement Agreement, together with exhibits hereto and the documents incorporated herein by reference, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties hereto with respect to the transactions contemplated by this Agreement, and supersedes all prior agreements or understandings, whether written or oral, between or among any of the parties hereto with respect to the subject matter hereof. This Settlement Agreement shall not be modified in any respect except by a writing executed by all of the signatories hereto.

18.  **Headings.** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

19.  **No Party is the Drafter.** None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

20.    **Intended Beneficiaries.** No provision of this Settlement Agreement will provide any rights to, or be enforceable by, any person or entity that is not Plaintiffs, Class Counsel, a member of the Direct Purchaser Classes, or Ranbaxy. Neither Plaintiffs nor Class Counsel may assign or otherwise convey any right to enforce or dispute any provision of this Settlement Agreement.

21.    **Choice of Law.** All terms of this Settlement Agreement shall be governed by and interpreted according to Massachusetts law, without regard to any otherwise applicable choice-of-law principles.

22.    **Consent to Jurisdiction.** Ranbaxy and each member of the Direct Purchaser Classes hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Massachusetts for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. Nothing in this Paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

23.    **Representations and Warranties.** The signatories hereto represent and warrant that they each have the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

24.     **Stay of Proceedings.** Pending Court approval of the Settlement embodied in this Settlement Agreement, Plaintiffs agree to support any motion by Ranbaxy to stay any and all proceedings against Ranbaxy in this Action other than those incident to the settlement process and to grant extensions of time with respect to any court filings necessary to effectuate such stays.

25.     **No Admission.** Nothing in this Settlement Agreement, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future: (a) by Ranbaxy, including, without limitation, that Ranbaxy engaged in any conduct or practices that violate any antitrust statute, any racketeering statute, or any other law, statute, or regulation; or (b) by Plaintiffs, including, without limitation, that any allegation made by them in the Action is without merit.

26.     **Notice.** Notice to Ranbaxy pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to:

> Jay P. Lefkowitz, P.C.
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022
> Telephone: 212-446-4970
> Email: lefkowitz@kirkland.com
>
> Devora W. Allon, P.C.
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022
> Telephone: 212-446-5967
> Email: devora.allon@kirkland.com

Notice to the Plaintiffs or Class Counsel pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to Lead Class Counsel:

Thomas M. Sobol
Kristen A. Johnson
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: 617-482-3700
Email:  tom@hbsslaw.com
            kristenj@hbsslaw.com

Steve Shadowen
HILLIARD & SHADOWEN LLP
1135 W. 6th St #125
Austin, TX 78703
Telephone: (855) 344-3298
Email: steve@hilliardshadowenlaw.com

**27.    Execution in Counterparts.** This Settlement Agreement may be executed in counterparts. Signatures transmitted by electronic means shall be considered valid signatures as of the date signed.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

Dated: April 8, 2022

Jay P. Lefkowitz, P.C.
Devora W. Allon, P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4970
lefkowitz@kirkland.com
devora.allon@kirkland.com

Thomas M. Sobol
Kristen A. Johnson
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

*Counsel for Ranbaxy*

Steve D. Shadowen
**HILLIARD & SHADOWEN LLP**
1135 W. 6th St., Ste. 125
Austin, Texas 78703
Tel: (855) 344-3928
steve@hilliardshadowenlaw.com

*Counsel for Plaintiffs Meijer, Inc., Meijer
Distribution, Inc., and the Direct
Purchaser Class*

**Exhibit A: Preliminary Approval Order**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>All Direct Purchaser Actions | Master File No. 19-md-02878-NMG |

## [PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH RANBAXY

Upon review of the Settlement Agreement by and between plaintiffs Meijer, Inc. and

Meijer Distribution, Inc. ("Plaintiffs"), individually and on behalf of the direct purchaser classes

previously certified by this Court (the "Direct Purchaser Classes"), and defendants Ranbaxy,

Inc., and Sun Pharmaceutical Industries Limited ("Ranbaxy"), dated April 8, 2022, and Direct

Purchaser Class Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, Approval

of Form and Manner of Notice to the Class, Appointment of Settlement Administrator and

Escrow Agent, and Final Settlement Schedule and Date for Final Approval Hearing and the

supporting memorandum, declarations, and exhibits, IT IS HEREBY ORDERED that the motion

is GRANTED as follows:

1.      This Order incorporates by reference the definitions in the Settlement Agreement

between Plaintiffs and Direct Purchaser Classes and Ranbaxy filed with this Court, and all

capitalized terms used and not otherwise defined herein shall have the meanings set forth in the

Settlement Agreement.

**Jurisdiction**

2.     This Court has subject matter jurisdiction over this Action, and personal jurisdiction over each of the representative class plaintiffs, Meijer, Inc. and Meijer Distribution, Inc. ("Plaintiffs"), and defendants Ranbaxy, Inc., and Sun Pharmaceutical Industries Limited (collectively, "Ranbaxy").

**Previously Certified Class**

3.     By order dated May 14, 2021 (ECF No. 389), the Court previously certified the Direct Purchaser Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), defined as follows:

> All persons or entities in the United States and its territories who purchased Diovan and/or AB-rated generic versions of Diovan directly from any of the Defendants or any brand or generic manufacturer at any time during the period September 21, 2012, through and until the anticompetitive effects of the Defendants' conduct cease (the "Diovan Class Period");
>
> All persons or entities in the United States and its territories who purchased Valcyte and/or AB-rated generic versions of Valcyte directly from any of the Defendants or any brand or generic manufacturer, but excluding those purchasers who only purchased branded Valcyte, at any time during the period August 1, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Valcyte Class Period"); and
>
> All persons or entities in the United States and its territories who purchased Nexium and/or AB-rated generic versions of Nexium directly from any of the Defendants or any brand or generic manufacturer at any time during the period May 27, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Nexium Class Period").
>
> Excluded from each of the direct purchaser classes are the defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities.

4.     The Court also previously appointed Plaintiffs as representatives for the Direct Purchaser Classes (the "Class Representatives") and Hagens Berman Sobol Shapiro LLP

attorneys Thomas M. Sobol and Kristen A. Johnson, and Hilliard & Shadowen LLP attorney

Steve Shadowen, as lead counsel for the Direct Purchaser Classes ("Lead Class Counsel")

pursuant to Federal Rule of Civil Procedure 23(g).

## Preliminary Approval of the Proposed Settlement

5.      Federal Rule of Civil Procedure 23(e) provides that a proposed settlement in a

class action must be approved by the Court. "[T]he approval of a settlement agreement is a two-

step process, which first requires the court to make a preliminary determination regarding the

fairness, reasonableness, and adequacy of the settlement terms." Manual for Complex Litigation

(Fourth) § 21.632 (2015). In this preliminary evaluation of a proposed settlement, the Court

determines only whether the settlement has "obvious deficiencies" or whether "it is in the range

of fair, reasonable, and adequate." *In re M3Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270

F.R.D. 45, 52 (D. Mass. 2010) (citing Manual §21.632). If the Court finds that the parties

reached the settlement as a result of good-faith negotiations and after sufficient discovery, then a

presumption of fairness attaches to the settlement. *See In re Pharm. Indus. Avg. Wholesale Price

Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009). This initial presumption of fairness allows for notice to

be given so that the class may have a full and fair opportunity to consider the proposed

settlement. *See* Manual for Complex Litigation (Fourth) § 21.631 (2015).

6.      All the relevant factors weigh in favor of preliminarily approving the Settlement:

*First*, the Settlement follows full fact and expert discovery and class certification and summary

judgment and *Daubert* motions decided based on extensive briefing and supporting submissions.

Consequently, the parties have access to a discovery record and rulings of the Court that permit a

fully informed evaluation of the case. *Second*, the Settlement is the result of arm's-length

negotiation among sophisticated counsel and mediation under Kenneth Feinberg. *Third*, the

agreed-upon Settlement Payment of $340 million, in exchange for, *inter alia*, dismissal of the

litigation with prejudice as against Ranbaxy by Plaintiffs and the Direct Purchaser Classes as set forth in the Settlement Agreement, is within the range of reasonableness based on the circumstances.

### Approval of Form and Manner of Notice

7.      The Court finds that the proposed form of notice to members of the Direct Purchaser Classes of the proposed Settlement (Exhibit B to the Settlement Agreement), and the proposed method of dissemination of notice by U.S. First-Class Mail and email satisfy Federal Rule of Civil Procedure 23(e) and due process and are otherwise fair and reasonable and are, therefore, approved. Lead Class Counsel shall also ensure that copies of the notice and the Settlement Agreement are available to members of the Direct Purchaser Classes online at www.RanbaxyAntitrustLitigation.com to allow members of the Direct Purchaser Classes to become and remain reasonably apprised of the progress of this action. The Court finds that, because prior notice of class certification disseminated by U.S. First-Class Mail to all members of the Direct Purchaser Classes on or about October 7, 2021 satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process and because the prior notice of class certification provided an opt-out period that closed on November 8, 2021, there is no need for an additional opt-out period pursuant to Federal Rule of Civil Procedure 23(e)(4). *See In re Carbon Black Antitrust Litig.*, No. 03-10191 (D. Mass. Nov. 29, 2006) (preliminarily approving settlement and explaining that "[i]n light of the previous notice to class members of the pendency of this action and the certification of the class, which complied fully with the requirements of Rule 23 and due process, there is no need for an additional opt-out opportunity pursuant to Rule 23(e)[(4)]").

8.      Class Counsel shall cause the notice substantially in the form attached as Exhibit B to the Settlement Agreement to be disseminated by _____ ___, 2022 (within 15

days after entry of this Order) via U.S. First-Class Mail and email to the last known mailing and email addresses of each member of the Direct Purchaser Classes.

9.       Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Ranbaxy shall serve notice of the Settlement to the appropriate federal and state officials as required under CAFA within 10 business days after the date Plaintiffs file for preliminary approval of the proposed Settlement. Ranbaxy shall contemporaneously provide Class Counsel with copies of the notice.

10.      The Court appoints [X] to serve as Settlement Administrator to provide notice of and to administer the Settlement.  All expenses incurred by the Settlement Administrator must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund, although Court approval shall not be required for disbursements of payments for such expenses in amounts of less than  $50,000 in the aggregate, as set forth in the Settlement Agreement.

11.      The Court appoints [X] to serve as Escrow Agent for the purpose of administering the escrow account holding the Settlement Fund. All expenses incurred by the Escrow Agent must be reasonable, are subject to the Court approval, and shall be payable from the Settlement Fund, although Court approval shall not be required for disbursements of payments for such expenses for amounts of less than $50,000 in the aggregate, as set forth in the Settlement Agreement.

12.      The Court preliminarily approves the establishment of the Settlement Fund defined in the Settlement Agreement (the "Settlement Fund") as a qualified settlement fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder. The contents of the Settlement Fund shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the

Court until such time as the funds shall be distributed pursuant to the Settlement Agreement, plan

of distribution, and/or further order(s) of the Court.

**Fairness Hearing**

13.     A hearing on final approval (the "Final Approval Hearing") shall be held before

this Court on _____, 2022 (120 days after entry of this order (the "Preliminary Approval

Order")), at _____ Eastern Time, in the Courtroom 4 of the United States District Court

for the District of Massachusetts, United States Courthouse, One Courthouse Way, Boston,

Massachusetts 02210. At the Fairness Hearing, the Court will consider, *inter alia*: (a) the

fairness, reasonableness and adequacy of the Settlement; (b) the proposed plan of distribution of

the Net Settlement Fund among members of the Direct Purchaser Classes; (c) the proposed claim

form and process to be used for the allocation and distribution of the Settlement Fund; (d)

whether the Court should approve awards of attorneys' fees and reimbursement of expenses to

Class Counsel; (e) whether service awards should be awarded to the Class Representatives, and

in what amount; and (f) whether a final judgment should be entered terminating this litigation.

14.     The Final Approval Hearing may be rescheduled or continued; in that event, the

Court will furnish all counsel with appropriate notice. Lead Class Counsel shall be responsible

for communicating any such notice promptly to the Direct Purchaser Classes by email (to the

extent and email address is available) and by posting conspicuous notice on the website

identified in the notice.

15.     On _____, 2022 (60 days after entry of this Preliminary Approval

Order), in advance of the Fairness Hearing, Plaintiffs and the Direct Purchaser Classes shall

submit, and Ranbaxy shall support, a motion for final approval of this Settlement by the Court

(the "Final Approval Motion").  On that same date, Class Counsel shall also file a motion for

approval of the Fee and Expense Award ("Motion for Fee and Expense Award"), and any motion

for service awards.

16.     Class members who wish to object with respect to (a) the fairness, reasonableness,

or adequacy of the proposed Settlement; (b) the Motion for Fee and Expense Award, and/or (c)

any motion for a service award, must first file a written letter of objection and, if intending to

speak, a notice of intention to appear, along with a summary statement outlining the position to

be asserted and the grounds therefor, together with copies of any supporting papers or briefs with

the Clerk of the United States District Court for the District of Massachusetts, United States

Courthouse, One Courthouse Way, Boston, Massachusetts 02210, with copies to the following

counsel:

| Class Counsel | Counsel for Ranbaxy |
|---|---|
| HAGENS BERMAN SOBOL SHAPIRO LLP<br>Thomas M. Sobol<br>Kristen A. Johnson<br>55 Cambridge Parkway, Suite 301<br>Cambridge, MA 02142<br>Tel: (617) 482-3700<br>tom@hbsslaw.com<br>kristenj@hbsslaw.com<br><br>HILLIARD & SHADOWEN LLP<br>Steve D. Shadowen<br>1135 W. 6th St., Suite 125<br>Austin, TX 78703<br>Tel: (855) 344-3298<br>steve@hilliardshadowenlaw.com | KIRKLAND & ELLIS LLP<br>Jay P. Lefkowitz, P.C.<br>Devora W. Allon, P.C.<br>601 Lexington Avenue<br>New York, NY 10022<br>Tel: (212) 446-4970<br>lefkowitz@kirkland.com<br>devora.allon@kirkland.com |

17.     To be valid, any such objection and/or notice of intention to appear and summary

statement must be filed or received by no later than _____, 2022 (81 days after submission of the

Preliminary Approval Order) and it must include the Direct Purchaser Class member's name,

address, telephone number, and signature, state whether the objection applies only to the

objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection. Unless a timely objection and/or notice of intention to appear is filed as provided herein, no person or entity shall be entitled to contest the terms of the proposed Settlement. All persons and entities who fail to file an objection and/or notice of intention to appear as well as a summary statement as provided above shall be deemed to have waived any such objections by appeal, collateral attack or otherwise and will not be heard at the Fairness Hearing. Persons or entities who file an objection do not need to appear in order to have their objections considered.

18. All reply briefs and materials in further support of the final approval of the Settlement and the entry of final judgment proposed by the parties to the Settlement and/or opposing timely-filed objections shall be filed with the Court by _____, 2022 (7 days prior to the Fairness Hearing).

19. Pending final approval of the Settlement and the entry of final judgment, any and all proceedings in this action (other than those incident to the settlement process) against Ranbaxy are stayed. In the event that the Settlement does not become final, then litigation of this action with respect to Ranbaxy will resume, without prejudice to the rights, claims, or defenses of the Direct Purchaser Classes or Ranbaxy, in a reasonable manner to be approved by the Court upon joint application by the parties hereto (or application by one party if a joint application is not forthcoming) as provided for in the Settlement Agreement.

20. In the event that the Settlement is terminated in accordance with the Settlement Agreement, the terminated Settlement and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void and shall have no further force and effect, Plaintiffs shall retain full rights to assert any and all causes of action

8

against Ranbaxy, and any released party affiliated with Ranbaxy shall retain any and all defenses and counterclaims thereto. This action with respect to Ranbaxy shall hereupon revert forthwith to its respective procedural and substantive status in the Action as of March 22, 2022, with all of their respective legal claims and defenses preserved as they existed on that date.  Any judgment or order entered by this Court in accordance with the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*, and the litigation shall proceed as if the Settlement Agreement and all other papers had not been executed by Plaintiffs and the Direct Purchaser Classes and Ranbaxy.

21.     Neither this Order nor the Settlement Agreement nor any other Settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as, or be deemed to be evidence of or an admission or concession by Ranbaxy as to the validity of any claim that has been or could have been asserted against Ranbaxy or as to any liability by Ranbaxy as to any matter set forth in this Order; nor shall any such matter constitute, be construed as, or be deemed to be evidence of or an admission or concession by Plaintiffs as to the absence of merit in any of their allegations or claims against Ranbaxy.

**IT IS SO ORDERED.**

Dated: _____

_____
Hon. Nathaniel M. Gorton
United States District Judge

**Exhibit B: Form of Notice**

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF MASSACHUSETTS</u>

**If you purchased any of the following drugs directly from a manufacturer during any of the indicated time periods, you could get a payment from a class action settlement:**

**(a) Brand Diovan and/or generic Diovan (valsartan) at any time between September 21, 2012 and December 31, 2014;**

**(b) Brand Nexium and/or generic Nexium (esomeprazole magnesium) at any time between May 27, 2014 and December 31, 2015; or**

**(c) Brand Valcyte and/or generic Valcyte (valganciclovir hydrochloride) at any time between August 1, 2014 and February 29, 2016, except if you purchased only branded Valcyte.**

*A federal court authorized this notice.*
*This is not a solicitation from a lawyer.*
*You are not being sued.*

A proposed settlement (the "Settlement") has been reached in a class action lawsuit (the "Lawsuit") brought by direct purchasers of brand and generic Diovan, Nexium, and Valcyte against Ranbaxy, Inc. ("Ranbaxy") and Sun Pharmaceutical Industries Ltd. ("Sun") (both entities collectively referred to as "Ranbaxy") for alleged antitrust and racketeering violations.

The purpose of this notice is to alert you about this Settlement and provide you with important details about the proposed Settlement and your rights under the proposed Settlement.

The proposed Settlement will provide a total of $340 million (the "Settlement Fund") to resolve the direct purchasers' claims against defendants Ranbaxy and Sun.

Ranbaxy and Sun (the "Defendants") deny any wrongdoing.

You were previously notified that this Lawsuit had been certified as a class action. On May 14, 2021, Judge Nathaniel M. Gorton of the United States District Court for the District of Massachusetts allowed this Lawsuit to proceed as a class action, and certified the three following Classes:

1. THE DIOVAN CLASS - All persons or entities in the United States and its territories who purchased Diovan and/or AB-rated generic versions of Diovan directly from any of the Defendants or any brand or generic manufacturer at any time during the period

1

September 21, 2012, through and until the anticompetitive effects of the Defendants' conduct cease;

2. THE NEXIUM CLASS - All persons or entities in the United States and its territories who purchased Nexium and/or AB-rated generic versions of Nexium directly from any of the Defendants or any brand or generic manufacturer at any time during the period May 27, 2014, through and until the anticompetitive effects of the Defendants' conduct cease.

3. THE VALCYTE CLASS - All persons or entities in the United States and its territories who purchased Valcyte and/or AB-rated generic versions of Valcyte directly from any of the Defendants or any brand or generic manufacturer, but excluding those purchasers who only purchased branded Valcyte, at any time during the period August 1, 2014, through and until the anticompetitive effects of the Defendants' conduct cease; and

Excluded from each of the direct purchaser classes are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities.

The Court has scheduled a hearing to decide upon Final Approval of the Settlement, the plan for allocating the Settlement Fund to Members of the Classes (summarized in Question 6 below), and Class Counsel's request for reimbursement of costs, service awards, and payment of attorneys' fees out of the Settlement Fund.  That hearing is scheduled for _____ before Judge Nathaniel M. Gorton in Courtroom 4 at the United States District Court for the District of Massachusetts, United States Courthouse, One Courthouse Way, Boston, MA, 02210.

**YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT, SO PLEASE READ THIS NOTICE CAREFULLY.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **UPON RECEIPT OF THE CLAIM FORM, PROMPTLY REVIEW, SIGN, AND RETURN IT** | You do not need to do anything now to retain your right to seek a share of the Settlement. If the Court grants Final Approval of the Settlement and you are a Member of any of the Classes, you will receive a Claim Form (which will be mailed to you) that will list your purchases of the relevant drugs in the qualifying periods.  You should review that Claim Form promptly for accuracy. If the Claim Form's information about your purchases is accurate, you only need to sign it and return it to obtain your *pro rata* share of the Settlement Fund for any of the three drugs for which you qualify. If the Claim Form's information is not accurate, you will be given an opportunity to provide data or information to correct it. |

| | |
|---|---|
| **OBJECT TO THE SETTLEMENT** | You may object to any or all aspects of the Settlement. If you do so, you may (as discussed below) write to the Court about why you disagree with the Settlement, and you may ask to speak at the Final Approval hearing about your objections to the Settlement. |
| **GET MORE INFORMATION** | If you would like more information about the lawsuit: You can review this notice, You can visit the Settlement website at **www.RanbaxyAntitrustLitigation.com**, or You can send questions to the Class Counsel identified in **Question 11** below. **DO NOT CONTACT THE COURT OR THE DEFENDANTS IF YOU HAVE QUESTIONS REGARDING THIS NOTICE.** |

**THESE RIGHTS AND OPTIONS,
AND THE DEADLINES TO EXERCISE THEM,
ARE EXPLAINED IN THIS NOTICE.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION.**.........................................................................................................**5**

   1. Why did I receive this notice? ........................................................................... 5

   2. What is the lawsuit about? ................................................................................. 5

   3. Why is this lawsuit a class action? .................................................................... 6

   4. Why is there a settlement with Ranbaxy and Sun? ........................................... 8

**WHO CAN PARTICIPATE IN THE SETTLEMENT?** .........................................**8**

   5. Am I part of one of the Classes? ....................................................................... 8

   6. What does the Settlement provide? ................................................................... 9

   7. How much will my payment be? ..................................................................... 10

   8. How can I get a payment? ................................................................................ 10

   9. When would I get my payment? ...................................................................... 10

   10. What am I giving up to get payment? ............................................................ 11

**THE LAWYERS REPRESENTING THE CLASSES.** ..........................................**11**

   11. Do I have a lawyer in this case? ..................................................................... 11

   12. Should I get my own lawyer? ........................................................................ 11

   13. How will the lawyers be paid? ...................................................................... 11

   14. How do I tell the Court that I do not like the settlement? .............................. 12

   15. When and where will the Court decide whether to approve the Settlement? ... 13

   16. Do I have to come to the hearing? ................................................................. 13

   17. May I speak at the hearing? ........................................................................... 13

   18. What happens if I do nothing at all? .............................................................. 14

   19. How do I get more information? .................................................................... 14

# BASIC INFORMATION

| 1. | Why did I receive this notice? |
|---|---|

You received this notice because, according to sales data produced by the manufacturers of brand and generic Diovan, Nexium, and Valcyte, you purchased brand and/or generic Diovan, Nexium, or Valcyte directly from the manufacturers of those products during the following qualifying time periods:

> (a) Brand Diovan or generic Diovan (valsartan) at any time between September 21, 2012 and December 31, 2014;

> (b) Brand Nexium or generic Nexium (esomeprazole magnesium) at any time between May 27, 2014 and December 31, 2015; and/or

> (c) Brand Valcyte or generic Valcyte (valganciclovir hydrochloride) at any time between August 1, 2014 and February 29, 2016, except if you purchased only branded Valcyte during this period.

This notice explains the Lawsuit, the Settlement with Ranbaxy and Sun, your legal rights, what benefits are available, and the requirements to be eligible for those benefits.

Note that you may have received this Notice in error - simply receiving this Notice does not mean that you are definitely a member of one or more Classes. You may confirm that you are a member of one or more of the Classes by reviewing the criteria set forth in **Question 5** below. You may also call, email, or write to the lawyers in this case representing the Classes ("Class Counsel") at the telephone numbers or addresses listed in **Question 11** below.

| 2. | What is this lawsuit about? |
|---|---|

The plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (the "Plaintiffs") filed lawsuits individually and as representatives of all persons or entities in the Classes. The court has appointed them Class Representatives.

This Lawsuit alleges that Ranbaxy violated federal antitrust and racketeering laws by making misrepresentations to the FDA in connection with pursuing tentative approvals for abbreviated new drug applications (ANDAs). This Lawsuit alleges that those misrepresentations caused (at least in part) the FDA to grant Ranbaxy tentative approval for its ANDAs for generic versions of Diovan, Nexium, and Valcyte, and that those improperly obtained tentative approvals gave Ranbaxy the power to exclude other generic manufacturers' versions of Diovan, Nexium, and Valcyte. The Plaintiffs allege that had Ranbaxy not made those misrepresentations to the FDA, the FDA would not have granted Ranbaxy those tentative approvals and resulting 180-day exclusivities, and other companies would have entered the market with generic versions for each of those drugs at an earlier time than actually occurred. (Sun acquired Ranbaxy in 2015 and thereby became responsible for Ranbaxy's liabilities.)

Plaintiffs further allege that, as a result of Ranbaxy's alleged unlawful conduct, the prices that purchasers paid for Diovan, Nexium, and Valcyte and/or generic Diovan (valsartan), Nexium (esomeprazole magnesium), and Valcyte (valganciclovir hydrochloride) were higher than they otherwise would have been – both because (i) purchasers who paid for branded drugs would have purchased cheaper generic versions had they been available, and (ii) purchasers of the generic versions would have paid less for those generic versions if they had launched earlier. Plaintiffs sought to recover damages in the form of overcharges they alleged were caused by Ranbaxy's conduct. A copy of Direct Purchaser Plaintiffs' Second Consolidated Direct Purchaser Complaint filed on March 2, 2021 is available at **www.RanbaxyAntitrustLitigation.com**.

Defendants Ranbaxy and Sun deny all of those allegations.  Defendants assert that their conduct did not violate any applicable laws or regulations, and they deny that the Classes are entitled to damages or other relief.  The Settlement is not an admission of wrongdoing, violation of law, or offense by Ranbaxy or Sun.

Following the completion of fact discovery and expert discovery, class certification and summary judgment motions, and extensive negotiations utilizing a private mediator, the Class Representatives, on behalf of the Classes, entered into the Settlement with Ranbaxy and Sun. The terms of the Settlement, which is subject to final approval by the Court, are set forth in a written Settlement Agreement dated as of April 8, 2022 (the "Settlement Agreement"). The Settlement Agreement provides that Ranbaxy and Sun will pay $340 million in cash to the direct purchaser Classes in exchange for a release of all claims against the Released Parties (as defined in the Settlement Agreement) related to the conduct alleged in the Complaint. The Settlement Agreement is available for review at **www.RanbaxyAntitrustLitigation.com**. The Settlement Agreement contains the full text of the release for your review.

THE COURT HAS NOT DECIDED WHETHER RANBAXY AND SUN VIOLATED ANY LAWS. THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF PLAINTIFFS' CLAIMS OR THE DEFENSES ASSERTED BY RANBAXY AND SUN.

The class action is known as *In re Ranbaxy Generic Drug Application Antitrust Litigation*, (D. Mass.), MDL No. 2878, Case No. 19-md-2878-NMG. Judge Nathaniel M. Gorton of the United States District Court for the District of Massachusetts is overseeing this class action.

## 3. Why is this lawsuit a class action?

In a class action lawsuit, one or more persons or entities called plaintiffs or class representatives sue on behalf of others who have similar claims. In this case, the Class Representatives are Meijer, Inc. and Meijer Distribution, Inc. The Class Representatives, along with the entities whom they represent and on whose behalf they have sued, are together called the Classes. Their lawyers are called "Class Counsel." The companies that they sued, in this case Ranbaxy and Sun, are called the Defendants. In a class action lawsuit, one court resolves the issues for everyone in the class.

In this Lawsuit, the Court, by order dated May 14, 2021, certified three Classes for the purposes of litigation. The Court decided that this Lawsuit can proceed as a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that, for each of the three Classes:

- The Class is so numerous that joinder of all members is impractical (numerosity);

- There are questions of law or fact common to the Class (commonality);

- The claims or defenses of the Class Representatives are typical of the claims or defenses of the Class (typicality);

- The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class (adequacy); and

- Common legal and factual questions predominate over any questions affecting only individual members of the Class (predominance), and this class action is a superior method for fair and efficient adjudication of this controversy as opposed to having many individual lawsuits (superiority).

In so doing, the Court found that the Plaintiffs "have sufficiently shown that classwide injury and damages can be demonstrated through evidence common to the class and that common issues predominate over individualized inquiries." Common legal and factual questions include:

- Whether Ranbaxy willfully engaged in anticompetitive conduct;

- Whether Ranbaxy unlawfully acquired and/or maintained monopoly power over the relevant markets through all or part of its overall anticompetitive scheme;

- Whether Ranbaxy formed an enterprise with Buc & Beardsley (its law firm) and Parexel (its consultant) with the common goal of securing tentative approval for Ranbaxy's ANDAs.

- Whether Ranbaxy and its co-conspirators engaged in a pattern of racketeering activity;

- Whether Ranbaxy's and its co-conspirators' unlawful conduct caused the FDA to grant tentative approval to Ranbaxy's ANDAs;

- Whether Ranbaxy's scheme, in whole or in part, has substantially affected interstate commerce;

- Whether direct proof of Ranbaxy's monopoly power is available and, if so, whether it is sufficient to prove Ranbaxy's monopoly power without the need to define the relevant markets;

- Whether Ranbaxy's unlawful conduct was a substantial contributing factor in causing some delay in the market entry of AB-rated generic versions of Diovan, Nexium, and Valcyte;

- Determination of a reasonable estimate of the amount of delay Ranbaxy's unlawful conduct caused; and

- The quantum of overcharges paid by the Classes.

A copy of the Court's order may be found at **www.RanbaxyAntitrustLitigation.com.**

---

### 4. Why is there a settlement with Ranbaxy and Sun?

The Court has not decided which side is correct or if any laws were violated. Instead, Ranbaxy, Sun, and the Classes agreed to settle the case and avoid the cost and risk of trial and possible appeals.

This Settlement is the product of extensive negotiations between Class Counsel, Ranbaxy, and Sun with the assistance of an experienced private mediator, and after lengthy, hard-fought litigation. At the time the Settlement was reached, discovery was complete, expert reports had been exchanged and experts examined, class certification, summary judgment, and expert exclusion motions had been decided, and the parties were preparing for a trial.

After thoroughly investigating the complex factual, legal, and economic issues involved, Class Counsel negotiated with Ranbaxy and Sun's counsel a settlement of $340 million in cash to resolve the claims direct purchasers brought against Ranbaxy and Sun.

If the Court approves the Settlement, members of the three Classes will be guaranteed compensation without undue delay. The Class Representatives and the Class Counsel representing them believe that the $340 million cash for a release of claims against Ranbaxy and Sun is fair, adequate, and reasonable, and in the best interests of the Classes.

## WHO CAN PARTICIPATE IN THE SETTLEMENT?

To see if you will get money from the Settlement, you first have to determine whether you are a member of at least one of the Classes.

---

### 5. Am I part of one of the Classes?

You are in one or more of the Classes if you are an entity in the United States or its territories that purchased, directly from a manufacturer, any of the following drugs in the qualifying time periods as follows:

(a) brand Diovan and/or generic Diovan (valsartan) at any time between Sept. 21, 2012 and Dec. 31, 2014;

(b) brand Nexium and/or generic Nexium (esomeprazole magnesium) at any time between May 27, 2014 and Dec. 31, 2015; and/or

(c) brand Valcyte and/or generic Valcyte (valganciclovir hydrochloride) at any time between Aug. 1, 2014 and Feb. 29, 2016, except if you only purchased branded Valcyte.

Excluded from each of the direct purchaser classes are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities.

If you are not sure whether you are included in one or more of the Classes, you may call or write to the lawyers in this case at the telephone numbers or addresses listed in Question 11 below.

# THE SETTLEMENT BENEFITS – WHAT YOU GET

## 6. What does the Settlement provide?

Ranbaxy and Sun have agreed to pay $340 million in cash into a Settlement Fund (which will include any interest that accrues) for the benefit of the direct purchaser Classes.

Class Counsel will apply to the Court for an award of attorneys' fees (of up to one-third of the Settlement Fund net of expenses, plus a proportionate share of the interest earned on the Settlement Fund), expenses they incurred prosecuting this litigation on behalf of the Classes, service awards to the Class Representatives of $_____ each for their services to the Classes, and payment for costs of administering the Settlement from the Settlement Fund.

The remainder (the "Net Settlement Fund") will be divided as follows, subject to Court approval of the proposed plan of allocation:

First, divided between the three classes as follows: 50% for the Diovan Class, 45% for the Nexium Class, and 5% for the Valcyte Class.

Next, divided within each Class on a *pro rata* basis based on each Class Member's purchases of brand and generic Diovan, Nexium, and Valcyte made directly from manufacturers, net of any returns and net of any purchases for which the Class Member has assigned its rights to recovery in this litigation, and distributed to Class Members who return valid and timely Claim Forms.

More information about the proposed plan of allocation and any related Court orders will be posted at **www.RanbaxyAntitrustLitigation.com**.

In exchange, Ranbaxy and Sun will be released and discharged from all antitrust claims, racketeering claims, and other similar claims as those alleged in this action relating to Diovan, Nexium, and Valcyte. The full text of the release is included in the Settlement Agreement, available at **www.RanbaxyAntitrustLitigation.com**.

**7. How much will my payment be?**

Your share of the Net Settlement Fund will depend on the amount of brand and generic Diovan, Nexium, and/or Valcyte that you purchased directly from manufacturers during the applicable qualifying period for each drug. Generally, those who spent more on those drugs during the qualifying periods will get a higher recovery.

Your share of the Net Settlement Fund will also depend on the number of valid claim forms that Class Members submit. If some Class Members fail to send in a timely and valid claim form, you could get a larger *pro rata* share of the Net Settlement Fund.

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

**8. How can I get a payment?**

If the Settlement is approved by the Court, all Class Members of any of the three Classes will receive a Claim Form to request a *pro rata* share of the Net Settlement Fund. Transactional sales data from manufacturers of Diovan, Nexium, and Valcyte and generic versions of those drugs will be used to make the calculations. You may be asked to verify the accuracy of the information in the Claim Form and to sign and return the form according to the directions on the form.

If the information on the Claim Form is accurate, you only need to sign and return it to receive the *pro rata* share of the Net Settlement Fund to which you are entitled.

If you believe the information on the Claim Form is not accurate, you will have the opportunity to provide data or information to supplement or correct any inaccuracies.

**9. When would I get my payment?**

Payment is conditioned on several matters, including the Court's approval of the Settlement and upon any appeal being final (and no longer subject to any appeals to any court). Upon satisfaction of various conditions, the Net Settlement Fund will be allocated to Class Members as soon as possible after final approval has been obtained for the Settlement.

The allocation will be on a *pro rata* basis pursuant to a Plan of Allocation that will be approved by the Court. If there is an appeal of the Settlement's final approval, the appeal could take several years to resolve. Any accrued interest on the Settlement Fund will be included, *pro rata*, in the amount paid to the Class Members.

The Settlement Agreement may be terminated if the Court does not approve the Settlement or materially modifies it. If the Settlement Agreement is terminated because the Court determines the Settlement not to be fair, adequate, and reasonable, the lawsuit will proceed as if the Settlement had not been reached. The full text of the termination provisions are in the Settlement Agreement, available at **www.RanbaxyAntitrustLitigation.com**.

**10. What am I giving up to get payment?**

Class Members submitting claims will be required to execute a release that releases any right to sue Ranbaxy and Sun over the "Released Claims," or be part of any other lawsuit against Ranbaxy and Sun over the "Released Claims."

The Released Claims are described fully in the Settlement Agreement (available at **www.RanbaxyAntitrustLitigation.com**) and will also be included as part of the Claim Form to be mailed to each Class Member upon Final Approval of the Settlement by the Court.

## THE LAWYERS REPRESENTING THE CLASSES.

**11. Do I have a lawyer in this case?**

The lawyers listed below have been appointed by the Court as Co-Lead Class Counsel. They are experienced in handling similar cases against other companies. The lawyers are:

| HAGENS BERMAN SOBOL SHAPIRO LLP | HILLIARD & SHADOWEN LLP |
|---|---|
| Thomas M. Sobol | Steve D. Shadowen |
| Kristen A. Johnson | 1135 W. 6th St., Suite 125 |
| 55 Cambridge Parkway, Suite 301 | Austin, TX 78703 |
| Cambridge, MA 02142 | Tel: (855) 344-3298 |
| Tel: (617) 482-3700 | steve@hilliardshadowenlaw.com |
| tom@hbsslaw.com | |
| kristenj@hbsslaw.com | |

**12. Should I get my own lawyer?**

You do not need to hire your own lawyer because Class Counsel are working on your behalf.

However, if you wish to do so, you may retain your own lawyer at your own expense.

**13. How will the lawyers be paid?**

You will not have to pay anything for these lawyers. If the Court approves the settlement, Class Counsel will apply to the Court for an award of attorneys' fees (of up to one-third of the Settlement Fund net of expenses), plus expenses they incurred prosecuting this litigation on behalf of the Classes.

Class Counsel also will apply for service awards to the Class Representatives for their services to the Classes of $_____ each. If the Court grants Class Counsel's requests, these amounts would be deducted from the Settlement Fund. You will not have to pay these fees, costs, and expenses out of your own pocket.

Class Counsel's application for an award of attorneys' fees, reimbursement of expenses and service awards to the Class Representatives will be filed with the Court and made available for download and/or viewing on or before _____, 2022 on **www.RanbaxyAntitrustLitigation.com**, as well as at the office of the Clerk of the United States District Court for the District of Massachusetts, United States Courthouse, One Courthouse Way, Boston, MA 02210, during normal business hours.

# OBJECTING TO THE SETTLEMENT

| **14. How do I tell the Court that I disagree with the Settlement?** |
| --- |

If you are a Class Member, you may tell the Court that you object to (disagree with) all or any aspect of the Settlement, and/or the application for attorneys' fees, costs and expenses, and/or the requested service awards to the Class Representatives.

You must provide reasons and otherwise explain the basis for any objection you raise. The Court will consider your objection(s) in determining whether to grant Final Approval to the Settlement.

To object, you must file a letter with the Court saying that you object to the Settlement in the Direct Purchaser Action in *In re Ranbaxy Generic Drug Application Antitrust Litigation*, MDL No. 2878, Case No. 19-md-2878-NMG (D. Mass.). Be sure to include your name, address, telephone number, and your signature, state whether the objection applies only to you, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for your objection. File the objection electronically via the Court's Case Management/Electronic Case Files (CM/ECF) system or by mailing it to the Clerk of the United States District Court for the District of Massachusetts, United States Courthouse, One Courthouse Way, Boston, MA 02210, with copies to all of the following:

| **Class Counsel** | **Counsel for Ranbaxy and Sun** |
| --- | --- |
| HAGENS BERMAN SOBOL SHAPIRO LLP<br>Thomas M. Sobol<br>Kristen A. Johnson<br>55 Cambridge Parkway, Suite 301<br>Cambridge, MA 02142<br>Tel: (617) 482-3700<br>tom@hbsslaw.com<br>kristenj@hbsslaw.com<br><br>HILLIARD & SHADOWEN LLP<br>Steve D. Shadowen<br>1135 W. 6th St., Suite 125<br>Austin, TX 78703<br>Tel: (855) 344-3298<br>steve@hilliardshadowenlaw.com | KIRKLAND & ELLIS LLP<br>Jay P. Lefkowitz, P.C.<br>Devora W. Allon, P.C.<br>601 Lexington Avenue<br>New York, NY 10022<br>Tel: (212) 446-4970<br>lefkowitz@kirkland.com<br>devora.allon@kirkland.com |

Do not call the Court or the Judge's office about your objection(s).

Your objection must be filed no later than _____.

## THE COURT'S FINAL FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to.

---

**15. When and where will the Court decide whether to approve the Settlement?**

---

The Court will hold a Fairness Hearing at ___ on _____, in Courtroom 4 at the United States District Court for the District of Massachusetts, United States Courthouse, One Courthouse Way, Boston, MA 02210. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long the decision will take.

IMPORTANT: The time and date of this hearing may change without additional mailed notice. For updated information on the hearing, visit **www.RanbaxyAntitrustLitigation.com.**

---

**16. Do I have to come to the hearing?**

---

No, you are not required to attend the hearing.

Class Counsel will answer any questions that Judge Gorton may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

Moreover, attendance is not necessary to receive a *pro rata* share of the Net Settlement Fund.

---

**17. May I speak at the hearing?**

---

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re Ranbaxy Generic Drug Application Antitrust Litigation*, MDL No. 2878, Case No. 19-md-2878-NMG." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be filed no later than _____, 2022, and you must send copies to (1) the Clerk of the Court, (2) Class Counsel, and (3) Ranbaxy and Sun's counsel, at the addresses set forth in the response to Question 14.

You cannot speak at the hearing if you do not send a Notice of Intention to Appear.

## IF YOU DO NOTHING

| 18. What happens if I do nothing at all? |
| --- |

If you are a Class Member, and you do nothing, and the Court approves the Settlement, you will participate in the Settlement as described in this Notice. However, you will need to review the Claim Form, and sign and return it (once it is sent to you) in order to obtain a payment.

## GETTING MORE INFORMATION

| 19. How do I get more information? |
| --- |

If you have questions about this case or want to get additional information, you may call or write to the lawyers listed in the answer to Question 11 or visit the website **www.RanbaxyAntitrustLitigation.com.**

This notice is only a summary of the Settlement and is qualified in its entirety by the terms of the actual Settlement Agreement. A copy of the Settlement Agreement, including the releases, is on public file during normal business hours at United States District Court for the District of Massachusetts, United States Courthouse, One Courthouse Way, Boston, MA 02210 and is also available for download and/or viewing on **www.RanbaxyAntitrustLitigation.com.**

### PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.

### INSTEAD, PLEASE DIRECT ANY INQUIRIES TO THE CLASS COUNSEL LISTED IN QUESTION 11, ABOVE.

DATE:  April _____, 2022                    BY THE COURT

_____

Hon. Nathaniel M. Gorton
United States District Judge

**Exhibit C: Final Approval Order**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>All Direct Purchaser Actions | Master File No. 19-md-02878-NMG |

### [PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION AND REQUEST FOR AWARD OF ATTORNEYS' FEES AND EXPENSE REIMBURSEMENT, AND ORDER OF DISMISSAL WITH PREJUDICE

Upon review of the Settlement Agreement by and between the plaintiffs Meijer, Inc. and Meijer Distribution, Inc. ("Plaintiffs"), individually and on behalf of the direct purchaser classes ("Direct Purchaser Classes"), and defendants Ranbaxy, Inc. and Sun Pharmaceutical Industries Limited (collectively "Ranbaxy") dated April 8, 2022, Direct Purchaser Class Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, Approval of Form and Manner of Notice, Appointment of Settlement Administrator and Escrow Agent, and Final Settlement Schedule and Date for Final Approval Hearing and the supporting memorandum, declarations, and exhibits; and Direct Purchaser Class Plaintiffs' Motion for Final Approval of Settlement, Approval of Plan of Allocation and Request for Award of Attorneys' Fees and Reimbursement of Expenses, and Order of Dismissal with Prejudice ("Final Approval Motion") and the supporting memorandum and exhibits, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.     This Order and Final Judgment incorporates by reference the definitions in the Settlement Agreement between Plaintiffs and Direct Purchaser Classes and Ranbaxy filed with

this Court, and all capitalized terms used and not otherwise defined herein shall have the

meanings set forth in the Settlement Agreement.

2.    This Court has subject matter jurisdiction over the above captioned litigation (the

"Action") and personal jurisdiction over each of the representative class plaintiffs Meijer, Inc.

and Meijer Distribution, Inc., and defendants ("Ranbaxy").

3.    As set forth in this Court's order dated May 14, 2021 (ECF No. 389), certifying

the Direct Purchaser Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the

Class is defined as follows:

> All persons or entities in the United States and its territories who
> purchased Diovan and/or AB-rated generic versions of Diovan
> directly from any of the Defendants or any brand or generic
> manufacturer at any time during the period September 21, 2012,
> through and until the anticompetitive effects of the Defendants'
> conduct cease (the "Diovan Class Period");

> All persons or entities in the United States and its territories who
> purchased Valcyte and/or AB-rated generic versions of Valcyte
> directly from any of the Defendants or any brand or generic
> manufacturer, but excluding those purchasers who only purchased
> branded Valcyte, at any time during the period August 1, 2014,
> through and until the anticompetitive effects of the Defendants'
> conduct cease (the "Valcyte Class Period"); and

> All persons or entities in the United States and its territories who
> purchased Nexium and/or AB-rated generic versions of Nexium
> directly from any of the Defendants or any brand or generic
> manufacturer at any time during the period May 27, 2014, through
> and until the anticompetitive effects of the Defendants' conduct
> cease (the "Nexium Class Period").

> Excluded from each of the direct purchaser classes are the
> defendants and their officers, directors, management, employees,
> subsidiaries, or affiliates, and all governmental entities.

4.    The Court also previously appointed Plaintiffs as representatives for the Direct

Purchaser Class and Hagens Berman Sobol Shapiro LLP attorneys Thomas M. Sobol and Kristen

A. Johnson, and Hilliard & Shadowen LLP attorney Steve Shadowen as co-lead counsel for the

Direct Purchaser Class ("Lead Class Counsel") pursuant to Federal Rule of Civil Procedure 23(g).

## Notice Satisfies Due Process

5.     The Court finds that notice has been given to the Direct Purchaser Class in substantially the manner approved by this Court in its Preliminary Approval Order.

6.     The Court finds that the notice of settlement (the "Notice") directed to Class Members constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided for individual notice to all Class Members, which were identified through reasonable efforts. Copies of the Notice were disseminated via U.S. First-Class Mail and by email to Class Members identified from sales data produced by the defendants in this litigation. The Notice was also posted on the settlement website, www.ranbaxyantitrustlitigation.com.

7.     Pursuant to, and in accordance with, Federal Rule of Civil Procedure 23, the Court hereby finds that the Notice provided Class Members due and adequate notice of the settlement, the Settlement Agreement, these proceedings, and the right of Class Members to object to the Settlement. All Class Members having had a full and fair opportunity to object and to participate in the Final Approval Hearing, the Court hereby determines that all Class Members are bound by this Order and Final Judgment.

## Final Approval of Settlement

8.     The deadline for Class Members to file objections to the Settlement was _____ ___, 20___. The Court has received no objections to the Settlement.

9.     The Court has held a Final Approval Hearing to consider the fairness, reasonableness, and adequacy of the Settlement.

10.     Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the

Settlement, as set forth in the Settlement Agreement, and finds that the Settlement is in all

respects fair, reasonable, and adequate to the Direct Purchaser Classes; that it contains terms that

responsible and experienced attorneys could accept considering all relevant risks and factors; and

that it is in full compliance with all applicable requirements of the Federal Rules of Civil

Procedure, the United States Constitution, including the Due Process Clause, and the Class

Action Fairness Act, including 28 U.S.C. § 1715.

11.     Specifically, the Court finds the Settlement is fair, reasonable, and adequate under

Federal Rule of Civil Procedure 23(e)(2), which requires consideration of whether:

> (i) the class representatives and class counsel adequately represented
> the class; (ii) the proposed settlement was negotiated at arm's
> length; (iii) the relief obtained for the class is adequate; and (iv) the
> proposed settlement treats class members equitably relative to each
> other.[1]

12.     Specifically, as follows and for the reasons set forth in the Memorandum of Law

in Support of Direct Purchaser Class Plaintiffs' Final Approval Motion, the Court finds:

> a) The litigation was highly complex, expensive, and of long
>    duration, and would have continued to be so had the case not
>    settled;
>
> b) Class Counsel and the Direct Purchaser Classes would have
>    faced risks in establishing liability, causation, and damages
>    had they decided to continue litigating rather than settling;
>
> c) The Settlement amount is reasonable in light of the best
>    possible recovery against this particular defendant and the
>    attendant risks of this litigation;
>
> d) The case settled after the parties had completed discovery,
>    had fully briefed and the Court had ruled on class
>    certification, summary judgment and Daubert motions, and
>    was on the verge of trial, so Class Counsel had a full

---

[1] *Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 3:15-cv-30024-KAR, 2020 U.S. Dist. LEXIS 53643, at *8-9 (D. Mass. Mar. 27, 2020).

4

appreciation of the strengths and weaknesses of their case in negotiating the Settlement;

e) The Settlement was the result of arm's-length negotiation among sophisticated, experienced counsel and was facilitated and recommended by mediator Kenneth Feinberg; and

f) The Direct Purchaser Classes have supported the Settlement and no Class Member has objected.

13.     Under Federal Rule of Civil Procedure 23(e), the Court hereby finally approves in all respects the Settlement, finds that it benefits the Class Members, and directs its consummation pursuant to its terms.

14.     The Settlement Agreement includes the following releases:

**8. Releases**.

(a) In exchange for the Settlement Payment, upon the occurrence of the Effective Date, Plaintiffs and all members of the Direct Purchaser Classes, whether or not they choose to make a claim upon or participate in the Settlement Fund on behalf of themselves and their respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or limited partners, as well as their past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing, and as assignee or representative of any other entity (the "Plaintiff Releasors"), will dismiss Ranbaxy, its past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, and general or limited partners, as well as its past, present, and future respective officers, directors, employees, trustees, insurers, agents, associates, attorneys, and any other representatives thereof, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing (the "Ranbaxy Releasees") from this Action with prejudice, and release and forever discharge the Ranbaxy Releasees from all claims, rights, debts, obligations, demands, actions, suits, causes of action, liabilities, including costs, expenses, penalties, and attorneys' fees, or damages (known or unknown), whenever incurred, asserted in the Second Amended Class Complaint, or that could have been asserted in this Action based on the allegations made regardless of legal theory (collectively, the "Released Claims").

5

(b) For the avoidance of doubt, the scope of the Released Claims does not extend to (1) claims alleged in *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-2724 (E.D. Pa.); (2) claims alleged in *In re: Lipitor Antitrust Litigation*, No. 12-cv-2389 (D.N.J.); and (3) any claim that both (a) does not relate to direct purchase of brand or generic Diovan between September 2012 and December 2014; brand or generic Nexium between May 2014 and December 2015; and/or brand or generic Valcyte between August 2014 and February 2016, <u>and</u> (b) that is not contained in, is not based on, does not relate to, and does not arise out of the facts or circumstances alleged in the Second Amended Class Complaint.

(c) Plaintiffs and the Direct Purchaser Classes hereby covenant and agree that, after the Effective Date, each shall not sue or otherwise seek to establish or impose liability against the Ranbaxy Releasees based, in whole or in part, on any of the Released Claims. The Plaintiff Releasors are releasing claims (upon final Court approval) only against the Ranbaxy Releasees.

**9. California Civil Code § 1542.** Each of the Plaintiff Releasors expressly waives all rights under California Civil Code § 1542 with respect to the Released Claims to the extent, if any, it would otherwise apply to the Released Claims which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

15.    The releases set forth in ¶ 14 of this Order and Final Judgment effect a complete and total resolution of the Action with respect to Ranbaxy to the extent of the claims of the Direct Purchaser Classes that were asserted in the Action, as well as any compulsory counterclaims of Ranbaxy relating to the allegations in the Action that were or should have been asserted.

16.    All of Plaintiffs' and the Direct Purchaser Classes' claims against Ranbaxy are hereby dismissed with prejudice and without costs as provided in the Settlement Agreement.

17.     The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration and consummation of the Settlement and over this Order and Final Judgment.

## Approval of Plan of Allocation

18.     The Court approves and finds as fair and reasonable Plaintiffs' proposed Plan of Allocation, filed on _____ ___, 20___ and available on the official settlement website, www.ranbaxyantitrustlitigation.com, which addresses the allocation of the Settlement Fund, plus interest and net of the Court-approved award of attorneys' fees and expense reimbursement and the costs of settlement administration.

19.     Lead Class Counsel and [X], the Court-appointed Settlement Administrator, are authorized to begin administration and distribution of claim forms and the net proceeds of the Settlement in accordance with the Plan of Allocation.

## Approval of Class Counsel's Request for Award of Attorneys' Fees and Reimbursement of Expenses

20.     Upon review and consideration of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and the memoranda and declarations submitted in support thereof, the Court hereby GRANTS the motion and approves the following payments from the Settlement Fund, but only after the later of the Effective Date or the date the final settlement payment has been made by Ranbaxy into the Settlement Fund:

a)   A fee award totaling $_____, plus interest on that amount that may accrue before distribution; and

b)   Reimbursement of reasonable litigation expenses incurred before the Settlement, totaling $_____.

21.     Further costs and expenses under $25,000 that may be incurred in connection with the settlement administration process may be disbursed from the Settlement Fund without further application to the Court.

### Final Judgment and Order of Dismissal

IT IS HEREBY ADJUDGED AND DECREED, PURSUANT TO RULE 58 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AS FOLLOWS:

22.     Having found the Settlement to be fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure as to the Direct Purchaser Class and that due, adequate, and sufficient notice has been provided to all persons or entities entitled to receive notice satisfying the requirements of the United States Constitution, including the Due Process Clause, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law, the Direct Purchaser Class Plaintiffs' Final Approval Motion is hereby GRANTED and the Settlement shall be consummated in accordance with its terms as set forth in the Settlement Agreement.

23.     The Direct Purchaser Classes' claims against Ranbaxy in the Action are hereby dismissed with prejudice.

24.     No costs or attorneys' fees are recoverable under 15 U.S.C. § 15(a).

25.     The Plaintiff Releasors' Released Claims with respect to the Ranbaxy Releasees are hereby released, with such release being effective as of the Effective Date.

26.     The Plaintiff Releasors are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against the Ranbaxy Releasees.

27.     With respect to any non-released claim, no rulings, orders, or judgments in this Action shall have any res judicata, collateral estoppel, or offensive collateral estoppel effect.

28.     This Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement, including its administration and consummation.

29.     There being no just reason for delay, the Court directs that judgment of dismissal of all Plaintiffs' and the Direct Purchaser Classes' claims against Ranbaxy shall be final and appealable in accordance with Federal Rule of Civil Procedure 54(b). The Clerk of this Court is requested to enter this Order and Final Judgment.

30.     Neither this Order, nor the Settlement Agreement, nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceeding undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as, or be deemed to be evidence of or an admission, concession, or waiver of any defense in any action or proceeding of any kind whatsoever, civil, criminal, or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Ranbaxy, including, without limitation, that Ranbaxy has engaged in any conduct or practices that violate any antitrust statute, any racketeering statute, or any other law, statute, or regulation. Likewise, neither this Order, nor the Settlement Agreement nor any actions taken in furtherance of either the Settlement Agreement or the Settlement shall be deemed or construed to be an admission or evidence of any lack of merit in or of the absence of the truth of Plaintiffs' claims or allegations against Ranbaxy.


**IT IS SO ORDERED.**


Dated: _____

                                                        _____
                                                        Hon. Nathaniel M. Gorton

United States District Judge

**Exhibit D: Escrow Agreement**

# CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated _____, is made among _____ ("Class Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

## Recitals

A.      This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Stipulation of Settlement (the "Settlement Agreement") dated _____ attached hereto as Exhibit A, entered into by, among others, Class Counsel on behalf of the Lead Plaintiffs, will be paid to settle the class action captioned _____, pending in _____ (the "Court").

B.      Pursuant to the terms of the Settlement Agreement, the Defendant has agreed to pay or cause to be paid the total amount of _____ in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Class Action.

C.      The Settlement Amount, together with any interest accrued thereon, is to be deposited into Custodian/Escrow and used to satisfy payments to Authorized Claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## Agreement

1.      <u>Appointment of Custodian/Escrow Agent</u>.  The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      <u>The Custodian/Escrow Account</u>.  The Custodian/Escrow Agent shall establish and maintain an Custodian/Escrow account titled as _____ (the "Custodian/Escrow Account").  Pursuant to the Settlement Agreement, the Defendant shall cause the Settlement Amount to be deposited into the Custodian/Escrow Account within ninety (90) business days following entry of the Court's order preliminarily approving the settlement.  Custodian/Escrow Agent shall receive the Settlement Amount into the Custodian/Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund."  The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

1

3.     <u>Investment of Settlement Fund</u>.  At the written direction of Class Counsel, Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Custodian/Escrow Agent.

4.     <u>Custodian/Escrow Funds Subject to Jurisdiction of the Court</u>.  The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.     <u>Tax Treatment & Report</u>.  The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.  Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date.  For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel.  Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.  Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.     <u>Tax Payments of Settlement Fund</u>.  All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Custodian/Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Class Counsel.  Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law.  The Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Custodian/Escrow Agent at Class Counsel's direction.  The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Custodian/Escrow Agent, as directed by Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Custodian/Escrow Agent with a properly completed Form W-9.

7.     <u>Disbursement Instructions</u>

(a)      Class Counsel may, without further order of the Court or authorization by the Defendant's Counsel, instruct Custodian/Escrow Agent to disburse the funds necessary to pay Notice and Administration Expenses for aggregate amounts of less than $50,000.

(b)      Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written direction of _____ of Class Counsel.

(c)      In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated.  It will not be reasonably necessary to seek confirmation if Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b).  To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs.  If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent.  Class Counsel will notify Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)      The Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.     <u>Termination of Settlement</u>.  If the Settlement Agreement terminates in accordance with its terms, Class Counsel shall notify Custodian/Escrow Agent of the termination of the Settlement Agreement.  Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Class Counsel and the Defendant, shall be returned to the Defendant in accordance with instruction from the Class Counsel.

9.     <u>Fees</u>.  The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund.  The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel.  If Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10.     <u>Duties, Liabilities and Rights of Custodian/Escrow Agent</u>.  This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)     Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)     Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon approval by Class Counsel or (ii) pursuant to an order of the Court.

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this

4

Custodian/Escrow Agreement.  The Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act  or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

11.     Non-Assignability by Custodian/Escrow Agent.  Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendant.

12.     Resignation of Custodian/Escrow Agent.  Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein.  On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

13.     Notices.  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

| If to Class Counsel: | HAGENS BERMAN SOBOL SHAPIRO LLP |
| | Thomas M. Sobol |
| | Kristen A. Johnson |
| | 55 Cambridge Parkway, Suite 301 |
| | Cambridge, MA 02142 |
| | Tel: (617) 482-3700 |
| | tom@hbsslaw.com |
| | kristenj@hbsslaw.com |
| | |
| | HILLIARD & SHADOWEN LLP |
| | Steve D. Shadowen |
| | 1135 W. 6th St., Suite 125 |
| | Austin, TX 78703 |
| | Tel: (855) 344-3298 |
| | steve@hilliardshadowenlaw.com |

| If to Custodian/Escrow Agent: | THE HUNTINGTON NATIONAL BANK |
| | Robyn Griffin |
| | Senior Managing Director |
| | National Settlement Team |
| | The Huntington National Bank |
| | One Rockefeller Plaza 10th Fl |
| | New York, NY 10020 |
| | Office: 312-646-7288 |
| | Mobile: 646-265-3817 |
| | E-mail:  robyn.griffin@huntington.com |
| | |
| | Susan Brizendine, Trust Officer |
| | Huntington National Bank |
| | 7 Easton Oval – EA5W63 |
| | Columbus, Ohio 43219 |
| | Telephone: (614) 331-9804 |
| | E-mail:  susan.brizendine@huntington.com |

14.     Patriot Act Warranties.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15.     <u>Entire Agreement</u>.  This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.     <u>Governing Law</u>.  This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.     <u>Termination of Custodian/Escrow Account</u>.  The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18.     <u>Miscellaneous Provisions</u>.

(a)     <u>Counterparts</u>.  This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b)     <u>Further Cooperation</u>.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give Custodian/Escrow Agent confirmation and assurance of Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to Custodian/Escrow Agent.

(c)     <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By:  _____
      Robyn Griffin, Senior Managing Director

Class Counsel


By:  _____

**Exhibit A**

**Settlement Agreement**

**Exhibit B**

**Fees of Custodian/Escrow Agent**

| | |
|---|---|
| **Acceptance Fee:** | **Waived** |

The Acceptance Fee includes the review of the Custodian/Escrow Agreement, acceptance of the role as Custodian/Escrow Agent, establishment of Custodian/Escrow Account(s), and receipt of funds.

| | |
|---|---|
| **Annual Administration Fee:** | **Waived** |

The Annual Administration Fee includes the performance of administrative duties associated with the Custodian/Escrow Account including daily account management, generation of account statements to appropriate parties, and disbursement of funds in accordance with the Custodian/Escrow Agreement. Administration Fees are payable annually in advance without proration for partial years.

| | |
|---|---|
| **Out of Pocket Expenses:** | **Waived** |

Out of pocket expenses include postage, courier, overnight mail, wire transfer, and travel fees.