# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>*All Direct Purchaser Actions* | Master File No.<br>19-md-02878-NMG |

**DIRECT PURCHASER PLAINTIFFS' [PROPOSED] PLAN OF ALLOCATION FOR THE DIRECT PURCHASER CLASSES**

### I.     Introduction

Plaintiffs Meijer, Inc. and Meijer Distribution, Inc., individually and on behalf of the direct purchaser classes ("Direct Purchaser Classes"),[1] submit this proposed plan of allocation ("Allocation Plan") to apportion the $340 million settlement with Defendants Ranbaxy, Inc. and Sun Pharmaceuticals Industries Limited (collectively, "Ranbaxy"), plus interest and net of Court-approved attorneys' fees (including a proportionate share of interest), reimbursement for

---

[1] The Court previously certified the following Direct Purchaser Classes:

 All persons or entities in the United States and its territories who purchased Diovan and/or AB-rated generic versions of Diovan directly from any of the Defendants or any brand or generic manufacturer at any time during the period September 21, 2012, through and until the anticompetitive effects of Defendants' conduct cease (the "Diovan Class");

 All persons or entities in the United States and its territories who purchased Valcyte and/or AB-rated generic versions of Valcyte directly from any of the Defendants or any brand or generic manufacturer, but excluding those purchasers who only purchased branded Valcyte, at any time during the period August 1, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Valcyte Class"); and

 All persons or entities in the United States and its territories who purchased Nexium and/or AB-rated generic versions of Nexium directly from any of the Defendants or any brand or generic manufacturer at any time during the period of May 27, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Nexium Class").

Excluded from each Direct Purchaser Class are the defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all governmental entities.  ECF No. 389.

litigation expenses incurred through the date of settlement, and settlement administration costs (the "Net Settlement Fund"), among members of the Direct Purchaser Classes ("Class Members").

The Allocation Plan (i) apportions the Net Settlement Fund among the Direct Purchaser Classes to create three drug-specific Net Settlement Funds (the "Drug-Specific Net Settlement Funds," described below); (ii) calculates each Class Member's *pro rata* weighted share of each Drug-Specific Net Settlement Fund based on the combined net unit purchases of (a) brand and generic Diovan made directly from any brand or generic manufacturer, (b) brand and generic Nexium made directly from any brand or generic manufacturer, and/or (c) brand and generic Valcyte made directly from any brand or generic manufacturer, but excluding from the calculation all brand units attributable to persons or entities that purchased only branded Valcyte; and (iii) allocates the Net Settlement Fund among Class Members in proportion to the sum of the Class Member's *pro rata* weighted share of each Drug-Specific Net Settlement Fund. The Allocation Plan is similar to allocation plans that have been approved in similar class actions brought by direct purchasers to recover overcharges arising from impaired generic competition.[2]

Plaintiffs' expert, Dr. Meredith B. Rosenthal, will calculate each Claimant's[3] percentage share of each Drug-Specific Net Settlement Fund using transactional sales data for brand and

---

[2] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-2819 (E.D.N.Y.), ECF Nos. 490-7, 562 (approved Oct. 7, 2020); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.), ECF Nos. 1396-8, 1462 (approved Sept. 1, 2020); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521 (N.D. Cal.), ECF Nos. 1004-5, 1004-6, 1054 (approved Sept. 20, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, (D. Mass.), ECF Nos. 1163-4, 1179 (approved July 18, 2018); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (D. Conn.), ECF Nos. 733-8, 740 (approved Dec. 19, 2017); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-cv-1797 (E.D. Pa.), ECF Nos. 864-17, 870 (approved Oct. 15, 2015).

[3] As defined in the accompanying declaration of Meredith B. Rosenthal, a "Claimant" is any entity that timely submits a completed proof of claim and release form ("Claim Form"). *See* Declaration of

generic Diovan, Nexium, and Valcyte produced by brand and generic manufacturers in discovery.[4] Claimants will also have the option of submitting their own records or data showing purchases of brand and generic Diovan, Nexium, and/or Valcyte directly from any brand or generic manufacturer during the relevant time periods and documentation showing any relevant assignments. Dr. Rosenthal will review any such submissions and confer with the Settlement Administrator regarding the final calculations, which may include making any appropriate adjustments.[5]

Throughout this Allocation Plan, "purchases" refers to gross unit purchases of brand and generic Diovan, Nexium, and/or Valcyte directly from any brand or generic manufacturer during the relevant time periods, net of any returns and net of any purchases for which the Claimant has assigned its rights to recovery in this litigation.[6] The unit of purchase is a pill (tablet). A Claimant's *pro rata* share of each Drug-Specific Net Settlement Fund will be based only on purchases made directly from a brand or generic manufacturer and will not include purchases from other entities.[7]

---

Meredith B. Rosenthal, Ph.D. Related to Proposed Allocation Plan and Net Settlement Fund Allocation at ¶ 2 n. 1 ("Rosenthal Decl.") (filed herewith). The Allocation Plan requires each Claimant to submit a timely, valid Claim Form to receive a share of the Net Settlement Fund. As Dr. Rosenthal explains, a Claimant's percentage share will be zero if that Claimant timely submits a Claim Form, but that claim is rejected because, for example, the Claimant did not purchase brand or generic versions of Diovan, Nexium, and/or Valcyte directly from any brand or generic manufacturer during the relevant time periods and does not have a valid assignment covering any such direct purchases. ¶ 2 n. 1.

[4] ¶ 9. The manufacturers that produced sales data for brand and generic Diovan include Alembic, Amneal, Aurobindo, Endo, Hetero, Jubilant, Lupin, Mylan, Novartis, Prinston, Ranbaxy, Sandoz, Teva, and Torrent. The manufacturers that produced sales data for brand and generic Nexium include AstraZeneca, Aurobindo, Dr. Reddy's, Hetero, Mylan, Ranbaxy, Teva, and Torrent. The manufacturers the produced sales data for brand and generic Valcyte include Aurobindo, Endo, Dr. Reddy's, Hetero, and Hoffmann-La Roche.

[5] ¶¶ 11-12.

[6] ¶ 9.

[7] ¶ 9.

3

The proposed Allocation Plan is practical and efficient, using sales data already obtained from brand and generic manufacturers in discovery.[8]  It also is a fair and reasonable way to allocate the Net Settlement Funds to all Class Members, including brand- or generic-only purchasers, basing their respective shares on the approximate extent of overcharges they incurred.[9]

## II.     Drug-Specific Net Settlement Funds

The proposed settlement resolves the claims brought on behalf of three certified Direct Purchaser Classes.  To ensure that each Direct Purchaser Class receives an equitable share of the Net Settlement Fund, Lead Class Counsel previously appointed separate counsel to advocate on behalf of each Direct Purchaser Class ("Allocation Counsel") in the event of a successful resolution of the case.  Allocation Counsel engaged in vigorous, arms-length negotiations over the percentage of funds that each Direct Purchaser Class would receive from any future settlement with Ranbaxy based on the particular facts and circumstances surrounding each drug, including issues related to establishing Ranbaxy's liability to each Direct Purchaser Class, causation issues presented by the circumstances of each drug's alternate entry scenarios, and the comparison of potential damages owed to each Direct Purchaser Class.[10]  Allocation Counsel determined that an equitable allocation of the Net Settlement Found would allocate fifty percent (50%) of the Net Settlement Fund to the Diovan Class ("Diovan Net Settlement Fund"), forty-five percent (45%) of the Net Settlement Fund to the Nexium Class ("Nexium Net Settlement Fund"), and five percent (5%) of the Net Settlement

---

[8] ¶ 13.

[9] ¶ 13.

[10] *See* Declaration of Joseph Meltzer on behalf of the Diovan Class (filed herewith as Exhibit 6 to the Declaration of Thomas M. Sobol ("Sobol Decl. Ex.")); Declaration of Linda Nussbaum on behalf of the Nexium Class (filed herewith as Sobol Decl. Ex. 7); and Declaration of Kenneth A. Wexler on behalf of the Valcyte Class (filed herewith as Sobol Decl. Ex. 8).

4

Fund to the Valcyte Class ("Valcyte Net Settlement Fund"). As described below, Dr. Rosenthal will calculate each Claimant's *pro rata* weighted share of each Drug-Specific Net Settlement Fund to determine the Claimant's allocation of the total Net Settlement Fund.

### III.   Allocation Plan

The Allocation Plan calculations for the Net Settlement Fund are set out in detail in the accompanying declaration of Dr. Rosenthal. In summary, the Allocation Plan works as follows.

**1.   Pre-Populated Claim Forms**

1.1   At the appropriate time and after receiving Court approval to do so, the Settlement Administrator, Rust Consulting, Inc., in conjunction with Dr. Rosenthal's firm, Greylock McKinnon Associates, will prepare a separate, individualized Claim Form for each member of the Direct Purchaser Classes. The Claim Form will include each Class Member's name and address and will be pre-populated with each Class Member's total net brand and generic purchases of (a) Diovan made directly from any brand or generic manufacturer from September 21, 2012 through December 31, 2014, (b) Nexium made directly from any brand or generic manufacturer from May 27, 2014 through December 31, 2015, and (c) Valcyte made directly from any brand or generic manufacturer from August 1, 2014 through February 29, 2016, as calculated by Dr. Rosenthal based on transactional sales data produced in discovery.[11] The purchase totals shown on the Claim Form will be reduced to account for returns reflected in the sales data and all known assignments.[12]

---

[11] ¶¶ 3, 9.

[12] ¶¶ 4, 9.

Based on Lead Class Counsel's prior experience in using this claims process for similar classes of direct purchasers, we expect that 100% of the eligible Claimants will receive their allocated share of the Net Settlement Fund.[13]

The Claim Form will (a) request that each Class Member verify the accuracy of the information contained in the Claim Form, and (b) provide instructions for challenging any of the figures or computations contained in the Claim Form. If a Class Member agrees that the information contained in the Claim Form is accurate, it will be asked to sign the Claim Form verifying its accuracy and to timely mail it to the Settlement Administrator, Rust Consulting, Inc. If a Class Member believes that the information contained in its Claim Form is not accurate, that Class Member may submit its own purchase records pursuant to the procedures described below.[14]

1.2     The Claim Form will request the Claimant's full name, a mailing address for correspondence regarding the distribution of the Net Settlement Fund, and the identify of and contact information for the person responsible for overseeing the claims process for the Claimant. The Claim Form will also include the release language set out in the Settlement Agreement between the Direct Purchaser Classes and Ranbaxy. Each Claimant will be required to execute and return the Claim Form to receive any distribution from the Net Settlement Fund.

1.3     *Timeliness.* The submission of the Claim Form to the Settlement Administrator (with any necessary supporting documentation if the Claimant does not agree with the information contained in its Claim Form) will be deemed timely if it is received or postmarked

---

[13] *See supra* note 2.

[14] Dr. Rosenthal will work with the Settlement Administrator to review any data and related documentation submitted by Claimants to finalize the allocation calculations. Rosenthal Decl. ¶ 12.

within the time period or by the deadline set by the Court. At Lead Class Counsel's discretion, this deadline may be extended by 45 days without additional approval of the Court. Lead Class Counsel may also seek further extensions of the deadline by order of the Court after any such initial extension.

1.4     *Follow-up with Class Members.* The Settlement Administrator shall follow up with any Class Member that does not timely return a Claim Form by phone, email, and/or mail to confirm that the decision not to submit a Claim Form was intentional and address any questions the Class Member may have.

**2.     Calculation of Weighted *Pro Rata* Shares of Drug-Specific Net Settlement Funds.**

2.1.    Each Claimant's allocation of the Net Settlement Fund will be set in proportion to the sum of the Claimant's *pro rata* weighted share of each Drug-Specific Net Settlement Fund, based on the Claimant's weighted combined total of net unit purchases of brand and generic Diovan, Nexium, and/or Valcyte directly from any brand or generic manufacturer[15] during the relevant time periods. The beginning and end dates of the time periods are determined by the Court's Order Approving the Form and Manner of Notice.[16] The Allocation Plan utilizes the weighted totals of each Claimant's purchases of brand and generic Diovan, Nexium, and/or Valcyte to account for the different amount of overcharge associated with purchases of brand and generic products, as described in Section 2.3.

The National Drug Codes ("NDCs") for qualifying brand and generic Diovan, Nexium, and/or Valcyte purchases will be included in the Claim Form and available on the settlement website. The NDCs are standard codes maintained by the FDA and used in the pharmaceutical

---

[15] *See supra* note 4.

[16] ECF No. 469.

industry to identify specific pharmaceutical products and will allow Claimants to understand precisely which purchases are eligible for purposes of allocation.

The Allocation Plan will determine each Claimant's *pro rata* weighted share of the Drug-Specific Net Settlement Funds by reference to the combined total of brand and generic purchases of each drug, net of any returns and net of any purchases for which the rights to damages in this litigation have been assigned from a Class Member by agreement.[17] Allocations to any Claimants whose right to a share of the Net Settlement Fund arises by virtue of assignments from Class Members will be determined in the same manner: the volumes of brand and generic purchases of each drug used to calculate the *pro rata* weighted share will be the volumes assigned to the assignee Claimant by an otherwise eligible Class Member, and the assignor Class Member's brand and generic purchase volumes for each drug will be reduced by the same amount.[18] As the Claim Form will make clear, data submitted by a Claimant who files a Claim Form based on an assignment may be shared with the Claimant's assignor Class Members during the claims administration process.

2.2.    The allocation computation will be based on the following information (whether from the data produced in discovery or from submissions by Claimants):

> (a) for the Diovan Net Settlement Fund, each Claimant's net brand and generic unit purchases of Diovan from September 21, 2012 through December 31, 2014; and the combined total of net brand and generic unit purchases of Diovan from September 21, 2012 through December 31, 2014 made by all Claimants with valid, accepted Claim Forms.
>
> (b) for the Nexium Net Settlement Fund, each Claimant's net brand and generic unit purchases of Nexium from May 27, 2014 through December 31, 2015; and the combined total of net brand and generic unit purchases of Nexium from May 27, 2014 through December 31, 2015 made by all Claimants with valid, accepted Claim Forms.

---

[17] ¶ 4.

[18] ¶ 11.

(c) for the Valcyte Net Settlement Fund, each Claimant's net brand and generic unit purchases of Valcyte from August 1, 2014 through February 29, 2016; and the combined total of net brand and generic unit purchases of Valcyte from August 1, 2014 through February 29, 2016, excluding from this calculation all brand units attributable to persons or entities that only purchased branded Valcyte, made by all Claimants with valid, accepted Claim Forms.

2.3. Dr. Rosenthal has calculated the ratio of the average Class-wide overcharge (a) per unit of brand Diovan and per unit of generic Diovan, (b) per unit of brand Nexium and per unit of generic Nexium, and (c) per unit of brand Valcyte and per unit of generic Valcyte. According to Dr. Rosenthal's calculations, the average per-unit overcharge on purchases of generic Diovan is 85% of the average per-unit overcharge on brand Diovan purchases, the average per-unit overcharge on purchases of generic Nexium is 133% of the average per-unit overcharge on brand Nexium purchases, and the average per-unit overcharge on purchases of generic Valcyte is 16% of the average per-unit overcharges on brand Valcyte purchases.[19] This is because the price differential between actual and but-for prices on brand purchases is different than that for generic purchases. The Allocation Plan accounts for any divergence between the average brand overcharge and the average generic overcharge.[20] Accordingly, the Allocation Plan weighs each generic Diovan purchase as .85 of a brand Diovan purchase, each generic Nexium purchase as 1.33 of a brand Nexium purchase, and each generic Valcyte purchase as .16 of a brand Valcyte purchase.[21]

2.4. To calculate each Claimant's *pro rata* share of each Drug-Specific Net Settlement Fund, the Settlement Administrator, working with Dr. Rosenthal, will ascertain, (a) for the Diovan Net Settlement Fund, each Claimant's weighted combined total net purchases of brand and generic Diovan and divide it by the weighted combined total qualifying purchases of brand

---

[19] ¶ 6.
[20] ¶ 5.
[21] ¶ 6.

9

and generic Diovan for all Claimants; (b) for the Nexium Net Settlement Fund, each Claimant's weighted combined total net purchases of brand and generic Nexium and divide it by the weighted combined total qualifying purchases of brand and generic Nexium for all Claimants; and (c) for the Valcyte Net Settlement Fund, each Claimant's weighted combined total net purchases of brand and generic Valcyte and divide it by the weighted combined total qualifying purchases of brand and generic Valcyte for all Claimants (excluding from the Valcyte calculation all brand units attributable to persons or entities that only purchased branded Valcyte and brand unit volume that would have remained with the brand in the but-for world based on Dr. Rosenthal's calculations). This calculation will yield each Claimant's *pro rata* weighted share of each Drug-Specific Net Settlement Fund. Each Claimant's allocation of the Net Settlement Fund will be the sum of the Claimant's *pro rata* weighted share of each Drug-Specific Net Settlement Fund.

Based on data produced in discovery, Dr. Rosenthal can perform a preliminary computation of qualifying net brand and generic purchases for each Class Member and use these figures to calculate each Claimant's percentage share of each Drug-Specific Net Settlement Fund.[22] If any Class Member fails to submit a claim, or if any Claimant submits data or other documentation showing an alternative amount of purchases that is approved by the Settlement Administrator (who will work with Dr. Rosenthal to review such submissions), the *pro rata* weighted shares for all Claimants from the affected Drug-Specific Net Settlement Fund(s) will be recalculated accordingly.[23]

---

[22] ¶¶ 7, 13.

[23] ¶ 12.

10

2.5. The final calculations of each Claimant's *pro rata* weighted share of each Drug-Specific Net Settlement Fund will be summed to determine the Claimant's allocated share of the total Net Settlement Fund.

3. **Processing of Claims**

3.1. All claims will be reviewed and processed by the Settlement Administrator with assistance from Dr. Rosenthal and her staff at Greylock McKinnon Associates as required and appropriate.

3.2 *Acceptance and Rejection.* The Settlement Administrator will first determine whether a Claim Form received is timely, properly completed, and signed. If a Claim Form is incomplete, the Settlement Administrator will communicate with the Claimant via U.S. First-Class Mail, email, or telephone regarding the deficiency. Claimants will then have 25 days from the date they are contacted by the Settlement Administrator regarding the deficiency to cure it. If any Claimant fails to correct the deficiency within this time, the Settlement Administrator may reject the claim and will notify the Claimant of the rejection by letter, stating the reason for rejection and informing the Claimant of its right to seek, and the procedures for seeking, review of the decision by the Court via the appeals process described in Section 7.2 below.

3.3. The Settlement Administrator will approve all timely Claim Forms that are properly completed (the "Approved Claims"). All late Claim Notices that are otherwise complete will be processed by the Settlement Administrator but marked as "Late Approved Claims." If Lead Class Counsel conclude that, in their judgment, any such "Late Approved Claims" should ultimately not be accepted,[24] those Claimants will be so notified within 30 days

---

[24] *Cf. Kuehbeck v. Genesis Microchip Inc.*, No. C 02-05344, 2007 WL 2382030, at *1 (N.D. Cal. Aug. 17, 2007) (authorizing distribution to claimants who timely filed claims and those who filed late but otherwise valid claims).

11

of the extended 45-day deadline set forth in Section 1.3 above and then may seek review by the Court via the appeals processed described in Section 7.2 below.

3.4. *The Pro Rata Distribution Calculation.* The Settlement Administrator, in conjunction with Dr. Rosenthal, will be responsible for determining the total amount that each Claimant will receive from the Net Settlement Fund. Once the Settlement Administrator has determined the number of Approved Claims for each drug, it will work with Dr. Rosenthal to calculate each Claimant's *pro rata* weighted share of each Drug-Specific Net Settlement Fund and the Claimant's allocation of the Net Settlement Fund as determined by the calculation described in Section 2 above.[25]

## 4. Processing Challenged Claims

4.1 The Settlement Administrator, in conjunction with Dr. Rosenthal and Lead Class Counsel, will review any and all written challenges by Claimants to the Settlement Administrator's determinations. If, upon review of a challenge and supporting documentation, the Settlement Administrator decides to amend or modify its determination of the distribution amounts to a Claimant, it will advise the Claimant. These determinations shall be final, subject to the appeals process described in Section 7.2 below.

4.2. Where the Settlement Administrator determines that a challenge requires additional information or documentation, it will so advise the Claimant and provide that Claimant an opportunity to cure the deficiency within 25 days. If the Claimant fails to cure the deficiency within that time, the challenge may be rejected, and the Claimant will be notified of the rejection by mail, which notification shall be deemed final.

---

[25] Rosenthal Decl. ¶ 12.

4.3. If the Settlement Administrator concludes that it has enough information to properly evaluate a challenge and maintains that its initial determination was correct, it will so inform the Claimant in writing, which notification shall be deemed final.

5. **Report to Court Regarding Distribution of Net Settlement Fund**

5.1. After the Settlement Administrator reviews all submitted claims and works with Dr. Rosenthal to determine the amount that each Claimant is entitled to recover from the Net Settlement Fund, the Settlement Administrator will prepare a report for the Court's final review and approval. The report will explain the tasks and methodologies employed by the Settlement Administrator in processing the claims and administering the Allocation Plan. The report will also contain (1) a list of Class Members or other Claimants (if any) that filed Claim Forms that were rejected and (2) a list of any challenges to the estimated distribution amounts that were rejected, along with the reasons for those rejections. Finally, the report will contain an accounting of the expenses associated with the Allocation Plan, including bills from Greylock McKinnon Associates and Rust Consulting, Inc., and any taxes that are due and owing, and any other fees or expenses associated with the settlement administration process.

6. **Payment to Claimants**

6.1. Upon Court approval of the final report and declaration of the Settlement Administrator, the Settlement Administrator will issue payment by wire transfer or check to each Claimant that submitted a complete and valid Claim Form.

6.2. It is anticipated that the entire Net Settlement Fund will be distributed in a single distribution. Subject to further order of the Court, however, any Net Settlement Fund amount that remains unclaimed after the first distribution will be distributed to Claimants in an additional distribution or distributions. The additional distribution or distributions will be drawn from the Drug-Specific Net Settlement Fund(s) in which an unclaimed amount remains

and will be made on the basis of the same calculations of the Claimants' *pro rata* weighted share of that Drug-Specific Net Settlement Fund(s).

6.3. Insofar as the Net Settlement Fund includes residual funds after distribution or distributions as set forth in the preceding paragraphs that cannot be economically distributed to the Claimants (because of the costs of distribution compared to the amount remaining), Lead Class Counsel will make an application to the Court, with notice to Defendants, for such sums to be used to make a *cy pres* payment for the benefit of members of the Direct Purchaser Classes. That is, subject to Court approval, the money may be used, for example, to make a donation in support of interests that are consistent with the purpose of this action as directed by the Court.

**7.     Resolution of Disputes**

7.1. In the event of any disputes between Claimants and the Settlement Administrator on any subject (*e.g.*, timeliness or completeness of a claim, sufficiency of supporting documentation, or the calculation of *pro rata* shares), the decision of the Settlement Administrator shall be final, subject to the Claimant's right to seek review by the Court. In notifying a Claimant of the final rejection of a Claim or a challenge thereto, the Settlement Administrator will notify the Claimant of its right to seek such review.

7.2. Any such appeal by a Claimant must be submitted in writing to the Court, with copies to the Settlement Administrator and Lead Class Counsel, within 20 days of the Settlement Administrator's mailing of the final rejection notification letter to the Claimant.

DATED: April 21, 2022  /s/ *Thomas M. Sobol*

Thomas M. Sobol (BBO# 471770)
Gregory T. Arnold (BBO #632738)
Kristen A. Johnson (BBO #667261)
Kristie A. LaSalle (BBO #692891)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Fax: (617) 482-3003
tom@hbsslaw.com
grega@hbsslaw.com
kristenj@hbsslaw.com
kristiel@hbsslaw.com

Steve D. Shadowen (admitted *pro hac vice*)
**HILLIARD SHADOWEN LLP**
1135 W. 6th St., Ste. 125
Austin, Texas 78703
Tel: (855) 344-3928
steve@hilliardshadowenlaw.com

*Lead Class Counsel for the Direct Purchaser Class*

John D. Radice (admitted *pro hac vice*)
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com

Paul E. Slater (admitted *pro hac vice*)
Joseph M. Vanek (admitted *pro hac vice*)
David P. Germaine (admitted *pro hac vice*)
John Bjork (admitted *pro hac vice*)
**SPERLING & SLATER, P.C.**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Tel: (312) 641-3200
pes@sperling-law.com
jvanek@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com
mslater@sperling-law.com

Joseph H. Meltzer (admitted *pro hac vice*)
Terence S. Ziegler (admitted *pro hac vice*)
Ethan J. Barlieb (admitted *pro hac vice*)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
jmeltzer@ktmc.com
tziegler@ktmc.com
ebarlieb@ktmc.com

Kenneth A. Wexler (admitted *pro hac vice*)
Justin Boley (admitted *pro hac vice*)
Tyler Story (admitted *pro hac vice*)
**WEXLER BOLEY & ELGERSMA LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com

Sharon K. Robertson (admitted *pro hac vice*)
Donna M. Evans (BBO #554613)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
srobertson@cohenmilstein.com
devans@cohenmilstein.com

*Counsel for Plaintiffs Meijer, Inc., Meijer Distribution, Inc., and the Direct Purchaser Class*

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com

*Counsel for the Direct Purchaser Class*