# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>*Direct Purchaser Actions* | Master File No.<br>19-md-02878-NMG |

**DECLARATION OF JOSEPH H. MELTZER IN SUPPORT OF
ALLOCATION TO THE DIOVAN DIRECT PURCHASER CLASS**

I, Joseph H. Meltzer, hereby declare as follows:

I am a member of the bar of Pennsylvania. I am a partner at Kessler Topaz Meltzer & Check, LLP (KTMC) and counsel for the direct purchaser class plaintiffs, Meijer, Inc., and Meijer Distribution, Inc., and the certified classes.

1. KTMC specializes in the prosecution of complex class actions, including antitrust actions, and has grown into one of the largest and most successful firms in the field. For the past several years, the National Law Journal has recognized KTMC as one of the top class action law firms in the country. In addition, Philadelphia's Legal Intelligencer has awarded KTMC with its Class Action Litigation Firm of The Year award multiple times. Lastly, KTMC and several of its attorneys are regularly recognized as leaders in our field by Legal500 and Benchmark: Plaintiffs. Additional information is available through our website: www.ktmc.com.

2. Among other responsibilities, I manage KTMC's Antitrust and Pharmaceutical Pricing Group and I devote much of my practice to pharmaceutical pricing litigation. I have served as

1

lead or co-lead counsel in numerous nationwide actions of this type, including: *Flonase Antitrust Litigation*, No.08-3149 (E.D. PA) ($150 million settlement); *In re: Loestrin Fe 24 Antitrust Litigation*, MDL No. 2472 (D.R.I.) ($120 million settlement); and *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833 (E.D. Pa.) (settlement of $65.8 million on behalf of certain end payors with total recoveries exceeding $100 million). I have also represented several states in actions related to pharmaceutical pricing and I have lectured on issues related to antitrust litigation. I have been engaged in litigating cases of this type for some twenty years.

3. KTMC has been actively engaged in this litigation and took a primary role in developing evidence and responding to arguments related to causation. From this work, I became very familiar with these arguments as they related to Diovan, Nexium and Valcyte, as did my partners Terence Ziegler and Ethan Barlieb.

4. In 2021, shortly in advance of a scheduled mediation, I was contacted by Thomas Sobol and asked to serve as one of three allocation counsel, each to represent one of the three certified classes. In particular, I was asked to represent the Diovan Class[1] to ensure that said class members were treated fairly in any settlement or recovery achieved in the successful resolution of this case. I agreed to serve as allocation counsel on behalf of the Diovan Class and to negotiate in good faith with my counterparts, Linda Nussbaum and Kenneth Wexler, who undertook to represent the Nexium Class and Valcyte Class, respectively.

5. Following my appointment as allocation counsel, I reviewed the record with respect to each of the drugs, including with respect to (i) aggregate damages, (ii) risks to establishing

---

[1] As defined in the Court's class certification order, ECF No. 389, the Diovan Direct Purchaser Class is: "All persons or entities in the United States and its territories who purchased Diovan and/or AB-rated generic versions of Diovan directly from any of the Defendants or any brand or generic manufacturer at any time during the period September 21, 2012, through and until the anticompetitive effects of the Defendants' conduct cease."

liability, and (iii) issues related to causation. Because of our work in this case, we were intimately familiar with the pathways for generic versions of each of these drugs and had been studying liability and causation issues related to these pathways for years. Additional research for my work as allocation counsel included an analysis of the economic reports prepared by Direct Purchaser Plaintiffs' experts, and a comparison of how damage figures were impacted by certain liability and causation scenarios.

6. To prepare for my negotiations with allocation counsel, in addition to reviewing the record in this case, my colleagues and I prepared an analysis of factors weighing in favor of the Diovan Class, as well as factors that tended to undermine arguments in support of that Class. We undertook the same exercise for both Nexium and Valcyte. This work prepared me to advocate on behalf of the Diovan Class and also to refute arguments in support of the other classes.

7. Reviewing the record, it was clear that certain rulings and evidence favored all three drugs equally. For instance, the Court's decision granting class certification was of equal benefit to each of the three classes. So too was much of the liability evidence in this case, including the findings by the *Burwell* court to the extent they could be used in this litigation. Other factors, such market power, causation and damages were more suited to analyzing with respect to each of the drugs individually. Viewing all of these arguments allowed me to develop a thorough understanding of the strengths and weaknesses of the direct purchaser plaintiffs' claims involving Diovan as well as Nexium and Valcyte.

8. Based on my understanding of the strengths and weaknesses of the claims in the case, as well as the analyses undertaken specifically for purposes of allocation, I engaged in negotiations on behalf of the Diovan Class with Ms. Nussbaum and Mr. Wexler.

9. Our first such meeting was by Zoom in early November 2021, where we each gave our initial impressions on the issues related to allocating any recovery. Over the next two weeks, I participated in several meetings, both internal to my firm and with my fellow allocation counsel, where positions and argument as to an appropriate allocation were exchanged. The negotiations tended to revolve mostly around issues related to market power, causation, and damages, as these core issues affected each of the subject drugs in unique ways.

10. The negotiations among allocation counsel were at all times arms-length and vigorous. Having considered all of the factors, and having considered all of the arguments raised by my colleagues and fellow allocation counsel, I believe that 50% of the settlement fund is an equitable allocation to the Diovan Class.

11. I declare under penalty of perjury that the foregoing is true and correct.

Executed on Apr. 18, 2022

_____

*Joseph H. Meltzer*