# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>*Direct Purchaser Actions* | Master File No.<br>19-md-02878-NMG |

**DECLARATION OF LINDA P. NUSSBAUM IN SUPPORT OF ALLOCATION TO THE NEXIUM DIRECT PURCHASER CLASS**

I, Linda P. Nussbaum, hereby declare as follows:

I am a member of the bar of the New York. I am an attorney at Nussbaum Law Group, P.C. ("NLG") and counsel for the direct purchaser class plaintiffs, Meijer, Inc., and Meijer Distribution, Inc., and the certified classes.

1. I am NLG's founding partner and principal, have been at the forefront of plaintiff's class action litigation for over 35 years, and am nationally recognized for my representation of class and individual plaintiffs in numerous other pharmaceutical, antitrust cases. Before founding NLG, I headed the antitrust departments at two prominent plaintiffs' class action firms.

2. I have been appointed to a leadership position in over two-dozen major antitrust class action cases, including *In re Generic Pharmaceutical Pricing Antitrust Litig.*, 16-md-2724 (E.D. Pa.); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 05-md-1720 (E.D.N.Y.) and *In re Neurontin Marketing and Sales Practices Litig.*, No. 04cv10981 (D. Mass.) (resulting in a trebled jury verdict of $142 million for a single third-party payor). I also served as allocation counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 13-cv-07789 (S.D.N.Y.).

1

3. Prior to the initial mediation, I was contacted by Thomas Sobol, who conveyed lead counsel's request that I advocate for the interests of the Nexium Class[1] to maximize its recovery in the event of a successful resolution of the case against defendants Ranbaxy, Inc. and Sun Pharmaceuticals Industries Ltd. (collectively, "Ranbaxy"). I agreed to serve as allocation counsel on behalf of the Nexium Class and undertook my best efforts to perform the function of allocation counsel.

4. Following my appointment as allocation counsel for the Nexium Class, I immediately set out to understand the facts of the litigation and the potential damages at issue for each direct purchaser class. I felt that I needed to understand as much as I could about the course of the litigation, including the competing definitions of the relevant market and market power for each of the three classes, the scope and application of the Food and Drug Administration review requirements to the Ranbaxy ANDAs, the evidence supporting Plaintiffs' damages calculations, and the composition of the Direct Purchaser Class certified for each of the three ANDAs at issue.

5. To prepare for my negotiations with allocation counsel for the Diovan Class and Valcyte Class, I reviewed the Direct Purchasers' Second Consolidated Complaint, the parties' expert reports on damages, regulatory compliance, and market power and the summary judgment arguments on damages.

6. I consulted with attorneys at NLG who had experience developing the direct purchaser plaintiffs' evidence that Ranbaxy's misconduct misled the FDA into granting tentative approval

---

[1] As defined in the Court's class certification order, ECF No. 389, the Nexium Direct Purchaser Class includes: "All persons or entities in the United States and its territories who purchased Nexium and/or AB-rated generic versions of Nexium directly from any of the Defendants or any brand or generic manufacturer at any time during the period May 27, 2014, through and until the anticompetitive effects of the Defendants' conduct cease (the "Nexium Class Period")."

to Ranbaxy's generic Nexium ANDA in order to better understand the strengths and weaknesses of the direct purchaser plaintiffs' claims involving Nexium.

7. These attorneys were also responsible for adducing evidence that other generic applicants would have entered the market earlier, absent Ranbaxy's conduct. Through these discussions and my own independent review of the relevant materials, I was able to acquire a comprehensive understanding of the facts and nuances of the claims of the Nexium Class.

8. Based on my understanding of the strengths and weaknesses of the claims of the Nexium Class, I engaged in negotiations on behalf of the Nexium Class with Joseph H. Meltzer and Kenneth A. Wexler, who had been appointed by lead counsel to advocate for the interests of the Diovan Class and Valcyte Class, respectively.

9. Over the course of several meetings during November 2021, I participated in negotiations with allocation counsel for the Diovan Class and Valcyte Class where arguments were presented on behalf of the three classes and the aforementioned issues with respect to market power, causation, and damages were debated as to each.

10. The negotiations among allocation counsel were at all times arms-length and vigorous. Given my understanding the litigation as it relates to the Nexium Class, and through my negotiations with the other allocation counsel, I believe that 45% of the settlement fund is an equitable allocation to the Nexium Class.

11. I declare under penalty of perjury that the foregoing is true and correct.

Executed on Apr. 11, 2022

*/s/ Linda P. Nussbaum*

Linda P. Nussbaum
