# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>*Direct Purchaser Actions* | Master File No.<br>19-md-02878-NMG |

**DECLARATION OF KENNETH A. WEXLER IN SUPPORT OF ALLOCATION TO VALCYTE DIRECT PURCHASER CLASS**

I, Kenneth A. Wexler, declare as follows:

1. I am the managing partner of Wexler Boley & Elgersma LLP ("WBE"). Based on my position with WBE, I am authorized on behalf of WBE to submit this declaration.

2. I make this declaration based on my personal knowledge and if called to testify to the contents hereof, I could and would competently do so. In connection with arriving at the plan of allocation, I served as allocation counsel for the Valcyte class.[1]

3. I have been a lawyer for 41 years. I have served and am serving as lead counsel in multiple complex cases. Information on my experience in antitrust and other complex class action litigation can be found at www.wbe-llp.com. In sum, WBE is a complex litigation firm with an excellent national reputation. We have a strong antitrust and consumer fraud practice, and I personally have been engaged in pharmaceutical litigation since the early 1990s. We were part of the trial team in the first post-*Actavis* pay-for-delay class action trial (*Nexium*) in this

---

[1] As defined in the Court's class certification order, ECF No. 389, the Valcyte Direct Purchaser Class is: "All persons or entities in the United States and its territories who purchased Valcyte and/or AB-rated generic versions of Valcyte directly from any of the Defendants or any brand or generic manufacturer, but excluding those purchasers who only purchased branded Valcyte, at any time during the period August 1, 2014, through and until the anticompetitive effects of the Defendants' conduct cease."

1

Court. We are well-versed in all aspects of the kind of litigation that is the subject of this declaration.

4. WBE has participated in this litigation since its inception and played a key role on the Valcyte team as the litigation developed. We had a significant role in the preparation for trial. When assuming my role as allocation counsel for the Valcyte class, I was able to draw on my own knowledge and the knowledge of others in my firm who had been intimately involved with case development from the beginning (notably, Justin Boley and Tyler Story).

5. In October 2021, co-lead counsel asked if I would be interested in serving as allocation counsel in the event a recovery was made in the case. I agreed. In a subsequent meeting with co-counsel Joe Melzer and Linda Nussbaum, we decided the respective classes would be best served if allocation responsibilities were divided among counsel in a way that took advantage of their knowledge of the class drugs. On that basis, I was assigned to Valcyte, and Mr. Melzer and Ms. Nussbaum were appointed allocation counsel for Diovan and Nexium, respectively.

6. I set out educating myself regarding the damages suffered by the various classes and determining the percentage of damages attributable to Valcyte in relation to damages as a whole. I read the expert reports of Professor Meredith Rosenthal and determined that Valcyte represented roughly 1.7-2.7% of the total damages, though possibly more if the Court adopted Defendant's assertion that Nexium and Diovan purchasers could not recover brand-only damages. I then went about studying the case law surrounding approvable class settlements where damages are small and firming my understanding of the respective issues faced by the Diovan, Nexium, and Valcyte classes, including class issues, nuances associated with company forecasts of the effects of generic entry on price, market power, and the potential problems each class faced in proving causation.

7. Allocation counsel staked out their respective positions and exchanged their reasoning in vigorous arms-length negotiations. On November 4, 2021, allocation counsel met on a Zoom conference and continued the process of making offers and counteroffers. Eventually, we were able to narrow our differences and agree on the allocation for which approval is sought. In my view, obtaining a 5% allocation for the Valcyte class was and is a good result.

8. I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of April 2022, in Chicago, IL.

*/s/ Kenneth A. Wexler*

Kenneth A. Wexler