# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL No. 2878 |
| THIS DOCUMENT RELATES TO:<br><br>All End-Payor Actions | Master File No.<br>19-md-02878-NMG |

## <u>MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................... 4

    A.   THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ......... 4

      1.   The Settlement Is Procedurally Fair ....................................................................... 6

        a)   The Settlement is the product of serious, non-collusive, arms'-length negotiations ... 6

        b)   Plaintiffs and Plaintiffs' counsel have adequately represented the interests of the
            End-Payor Classes .......................................................................................... 8

      2.   The Settlement Is Substantively Fair ...................................................................... 9

        a)   The complexity, expense, and likely duration of the litigation weigh in favor of
            approval ......................................................................................................... 9

        b)   The positive reaction of the classes to the settlement favors approval ........................ 11

        c)   The late stage of the proceedings supports final approval ............................................ 12

        d)   The risks of establishing liability and damages weigh in favor of approval ............... 12

        e)   The risks of maintaining the class action through the trial ........................................... 13

        f)   The ability of defendants to withstand a greater judgment did not negatively impact
            settlement negotiations .................................................................................. 13

        g)   The Settlement falls within a range of reasonableness that supports granting final
            approval ........................................................................................................ 14

    B.   THE SETTLEMENT'S PLAN OF ALLOCATION EQUITABLY DISTRIBUTES
        RELIEF AND SHOULD BE APPROVED ...................................................................... 15

III.  CONCLUSION ............................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ayyash v. Bank Al-Madina,*
  233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................... 10

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.,*
  No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) ..................................... 7

*Bert v. AK Steel Corp.,*
  No. 02-cv-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ................................. 7

*Bezdek v. Vibram USA Inc.,*
  79 F. Supp. 3d 324 (D. Mass.), *aff'd,* 809 F.3d 78 (1st Cir. 2015) ......................... 5

*Bussie v. Allmerica Financial Corp.,*
  50 F. Supp. 2d 59 (D. Mass. 1999) ....................................................................... 11

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ..................................................................... 6, 13, 14

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,*
  100 F.3d 1041 (1st Cir. 1996) ............................................................................ 4, 6

*Craig v. Rite Aid Corp.,*
  No. 08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ..................................... 12

*Giusti-Bravo v. U.S. Veterans Admin.,*
  853 F. Supp. 34 (D.P.R. 1993) ....................................................................... 15, 16

*Hall v. AT & T Mobility LLC,*
  No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ................................ 7

*Hemphill v. San Diego Ass'n of Realtors, Inc.,*
  225 F.R.D. 616 (S.D. Cal. 2005) ............................................................................ 7

*Hill v. State St. Corp.,*
  No. 09-cv-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ......... 4, 14, 15, 16

*Hochstadt v. Boston Sci. Corp.,*
  708 F. Supp. 2d 95 (D. Mass. 2010) ..................................................................... 15

*Humana, Inc., v. Indivior Inc.,*
  No. 20-cv-4602, 2021 WL 3101593 (E.D. Pa. July 22, 2021) ................................ 10

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.,*
  MDL No. 09-2067-NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) .................... 6

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ................................................. 6

*In re Fleet/Norstar Sec. Litig.*,
935 F. Supp. 99 (D.R.I. 1996) ................................................. 4

*In re Gen. Motors Corp.*,
55 F.3d 768 (3d Cir. 1995) ................................................. 14

*In re IMAX Secs. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ................................................. 16

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
296 F.R.D. 351 (E.D. Pa. 2013) ................................................. 15, 16

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ................................................. 5

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................. 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) ................................................. 4, 9

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
MDL No. 2328, 2015 WL 3486434 (E.D La. June 2, 2015) ................................................. 10

*In re Prograf Antitrust Litig.*,
No. 11-md-02242-RWZ, 2015 WL 13908415 (D. Mass. May 20, 2015) ................................................. 16

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ................................................. 9

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ................................................. 4, 5

*In re Southeastern Milk Antitrust Litig.*,
No. 08-md-1000, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ................................................. 15, 16

*In re Toys R Us Antitrust Litig.*,
191 F.R.D. 347 (E.D.N.Y. 2000) ................................................. 7

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Coll. Practices Act (FDCPA) Litig.*,
No. 2:13-MD-2426, 2016 WL 543137 (D. Me. Feb. 10, 2016) ................................................. 8

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ................................................. passim

iii

*Jean-Pierre v. J&L Cable TV Services, Inc.*,
    538 F. Supp. 3d 208 (D. Mass. 2021) ..................................................................... 5

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J.) .............................................................................. 12

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ............................................................................................ 6

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass. 2009) ............................................................... 5, 6

*Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
    No. 11-md-02208, 2014 WL 6968424 (D. Mass. Dec. 9, 2014)............................... 5

*Puerto Rico Dairy Farmers Ass'n v. Pagan*,
    748 F.3d 13 (1st Cir. 2014) ................................................................................. 4

*Roberts v. TJX Cos.*,
    No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) .................... 5, 7, 12, 14

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ........................................................................ 6, 15, 16

*United States v. Comunidades Unidas Contra La Contaminacion*,
    204 F.3d 275 (1st Cir. 2000) ............................................................................... 4

*United States v. Davis*,
    261 F.3d 1 (1st Cir. 2001) ................................................................................... 4

*Voss v. Rolland*,
    592 F.3d 242 (1st Cir. 2010) ............................................................................... 4

## Rules

FED. R. CIV. P. 23(e) ................................................................................... passim

FED. R. CIV. P. 23(g) ........................................................................................ 8

## I.    <u>INTRODUCTION</u>

Plaintiffs, United Food and Commercial Workers Health and Welfare Fund of

Northeastern Pennsylvania ("UFCW NEPA"), Louisiana Health Service & Indemnity Company

d/b/a Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc. ("BCBS LA")

(collectively, "Plaintiffs"), on behalf of themselves and the certified End-Payor Classes they

represent (the "End-Payor Classes or "EPPs"),[1] respectfully submit this Memorandum of Law in

support of their Unopposed Motion for Final Approval of the Proposed Settlement, requesting

that the Court enter the [Proposed] Order Granting End Payor Plaintiffs' Motion For Final

Approval of Settlement, Approval of Plan of Allocation, and Order of Dismissal with Prejudice

that was attached as Exhibit C to the Settlement Agreement ("Final Approval Order and

Judgment"),[2] and that is being submitted again herewith, pursuant to Rule 23 of the Federal

Rules of Civil Procedure.

This Action was on the verge of trial when the proposed Settlement was reached, with

this Court having already ruled on motions to dismiss, motions for class certification, and

motions for summary judgment, had addressed numerous discovery matters, and had fully

briefed motions *in limine* and other pretrial submissions.  The hard-fought nature of this

litigation and Lead Class Counsel's efforts to reach this Settlement were detailed in the EPPs'

motion for preliminary approval,[3] and are further described in the Joint Declaration of Gerald

Lawrence, Esq. and James R. Dugan, II, Esq. in support of (A) End-Payor Plaintiffs' Unopposed

Motion for Final Approval of the Proposed Class Action Settlement; and (B) Lead Class

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as in the Settlement Agreement, dated April 8, 2022 ("Settlement Agreement"). ECF No. 587-1.  Unless otherwise indicated, internal citations and quotation marks are omitted and ECF citations are to the docket in this MDL.
[2] ECF No. 587-1, at 56-66.
[3] EPPs incorporate by reference the facts detailed and arguments made in their motion for preliminary approval, which similarly support this motion for final approval.  *See* ECF No. 586.

Counsel's Motion for an Award of Attorneys' Fees, Litigation Expenses, and Service Awards ("Joint Decl.") which accompanies this motion for final approval.  The history of this Action and the tremendous results achieved by Lead Counsel amply support granting final approval of the Settlement and the proposed Plan of Allocation.

This Court is familiar with this case, the parties' respective positions, and certain strengths and weaknesses on each side.  In brief, EPPs contend, and Sun Pharmaceutical Industries Ltd. and Ranbaxy, Inc. ("Ranbaxy") deny, that Ranbaxy knowingly misrepresented to the Food and Drug Administration ("FDA") its compliance with current Good Manufacturing Practices ("cGMP") in order to obtain tentative approvals for Abbreviated New Drug Applications ("ANDAs") for generic drugs, and the corresponding lucrative first-to-file exclusivities.  These allegedly ill-gotten tentative approvals delayed entry by other generic manufacturers, resulting in EPPs paying more for brand and/or generic Diovan, Nexium and Valcyte than they otherwise would have paid had Ranbaxy not acted as EPPs allege.

The Court granted class certification for the End-Payor Classes on May 14, 2021,[4] and granted preliminary approval of the EPPs' proposed Class Action Settlement, on April 28, 2022.[5] Pursuant to the Court's Order of October 26, 2021,[6] notice of class certification, along with the options to object or opt out, was disseminated to the EPPs on November 5, 2021.[7]  Only three Class Members elected to opt out of the Classes by the opt-out deadline of December 20, 2021 and there were no objections.[8]  Thereafter, a second notice was promulgated on May 13, 2022, in accordance with the Court-approved Notice Plan[9] to notify Class Members of the proposed

---

[4] ECF No. 389.
[5] ECF No. 592.
[6] ECF No. 487.
[7] ECF No. 549-1, ¶¶4-7.
[8] ECF No. 549-1, ¶11.
[9] ECF Nos. 592, 585-1, ¶¶6-9.

Settlement.[10]  Class Members have until July 18, 2022 to object to the Settlement.[11]  To date, there have been no objections nor requests to speak at the Fairness Hearing.[12]  The reaction of the Classes to the litigation and Settlement, as evidenced by the absence of any objections thus far and the sparsity of opt-outs, demonstrates strong support for this Action and the Settlement.

The parties agreed to the Settlement after extensive discovery, motion practice, trial preparation, and months of arm's-length negotiations among experienced counsel and with assistance from well-known and well-regarded mediator, Kenneth Feinberg.  Ranbaxy denies the allegations of unlawful or wrongful conduct and believes it has meritorious defenses to this litigation.  The Settlement confers substantial benefits on the EPPs without the uncertainty of continued litigation, including trial and potential appeals.

Under the terms of the Settlement, Ranbaxy will deposit one hundred forty-five million dollars ($145,000,000 USD) into the Settlement Fund on or before September 2, 2022.  The settlement monies together with any interest thereon (the "Settlement Fund") will be used to pay: (i) taxes payable on the Settlement Fund; (ii) any and all costs and expenses associated with issuing notice of the Settlement to the Classes and administering the Settlement; (iii) costs and expenses incurred by Lead Class Counsel in connection with this litigation;[13] and (iv) any Court-approved attorneys' fees, as well as Court-approved service awards to the named Plaintiffs.[14]  The remainder of the Settlement Fund (the "Net Settlement Fund") will be distributed to

---

[10] *See* Exhibit 5 to Joint Decl., Declaration of Eric J. Miller Regarding (A) Mailing of the Postcard Notice; (B) Publication of Summary Notice; and (C) Report on Objections and Requests to Speak at Fairness Hearing Received To Date ("Miller Decl."), at ¶¶4-7.

[11] ECF Nos. 592, 585-1, ¶17. *See also* Important Dates listed on https://www.ranbaxytpplitigation.com/Home/Index.

[12] Miller Decl., at ¶12.

[13] Up to two hundred and twenty-five thousand dollars ($225,000) of the Settlement Fund may be used to pay Administrative Expenses, as defined in the Settlement Agreement, prior to Final Approval without prior Court approval.  Should the Settlement not be finally approved, Defendants will not be entitled to reimbursement of the Administrative Expenses paid or to be paid out of the Settlement Fund.  ECF No. 587-1 (Settlement Agreement), at ¶7(a).

[14] Settlement Agreement at ¶¶6, 7, 12(b), 15.

qualifying members of the End-Payor Classes in accordance with the Plan of Allocation, if the Court grants final approval.  In exchange, Plaintiffs and the EPPs have agreed to release Defendants from liability for the claims arising from the conduct alleged, in accordance with the terms of the Settlement Agreement.

The Settlement is an excellent result for the Classes and accordingly, EPPs respectfully request that the Court grant final approval.

## II.     ARGUMENT

### A.     THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Settlement of class action litigation is favored by federal courts.[15]  A district court may approve a proposed class settlement, if it is "fair, reasonable and adequate."[16]  The determination of whether a settlement is fair, reasonable and adequate rests in the court's sound discretion, and should be evaluated within the context of the public policy favoring settlement.[17]

"Courts generally consider both the 'the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the result likely to be reached at trial.'"[18]  Rule 23 sets out the factors to guide the Court's analysis, with Rule

---

[15] See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship, 100 F.3d 1041, 1043-44 (1st Cir. 1996); Puerto Rico Dairy Farmers Ass'n v. Pagan, 748 F.3d 13, 20 (1st Cir. 2014) (noting the "strong public policy in favor of settlements"); In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 259 (D.N.H. 2007) ("[P]ublic policy generally favors settlement[.]").

[16] FED. R. CIV. P. 23(e); see also Voss v. Rolland, 592 F.3d 242, 251 (1st Cir. 2010); In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32 (1st Cir. 2009) ("In re AWP") ("[A] district court can approve a class action settlement only if it is fair, adequate and reasonable[.]").

[17] City P'ship Co., 100 F.3d at 1043-44; see In re Fleet/Norstar Sec. Litig., 935 F. Supp. 99, 105 (D.R.I. 1996) ("The district court's discretion is circumscribed by the long-recognized policy of encouraging settlements."); United States v. Davis, 261 F.3d 1, 27 (1st Cir. 2001) (noting the "strong public policy in favor of settlements"); United States v. Comunidades Unidas Contra La Contaminacion, 204 F.3d 275, 280 (1st Cir. 2000) (same).

[18] Hill v. State St. Corp., No. 09-cv-12146-GAO, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015) (quoting In re Relafen Antitrust Litig., 231 F.R.D. 52, 72 (D. Mass. 2005)).

23(e)(2)(A) and (B) focusing on the procedural fairness of a settlement, and Rule 23(e)(2)(C) and (D) focusing on substantive fairness.[19]

To evaluate procedural fairness of a class action settlement, Rule 23 requires the Court to find in part that, "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]"[20] To assess the Settlement's substantive fairness, the Court considers whether, "the relief provided for the class is adequate," accounting for the following factors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).[21]

The Court is also required to confirm that the Settlement "treats class members equitably relative to each other."[22]

Although "[t]he First Circuit has not established a fixed test for evaluating the fairness of a settlement," the Rule 23(e)(2) requirements overlap with factors that courts in this Circuit frequently consider, the so-called *Grinnell* factors established by the Second Circuit,[23] which are as follows:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

---

[19] *See* FED. R. CIV. P. 23 advisory committee's notes to 2018 amendment (stating Rule 23 focuses on the "core concerns of procedure and substance" when deciding whether to finally approve a settlement).

[20] FED. R. CIV. P. 23(e)(2)(A)-(B); *see In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-md-02208, 2014 WL 6968424, at *2-3 (D. Mass. Dec. 9, 2014) (granting final approval where the class representative and class counsel diligently represented the class and the settlement was reached following an adversarial and contentious process that included settlement conferences before the Court).

[21] FED. R. CIV. P. 23(e)(2)(C).

[22] FED. R. CIV. P. 23(e)(2)(D); *accord Jean-Pierre v. J&L Cable TV Services, Inc.*, 538 F. Supp. 3d 208, 213 (D. Mass. 2021).

[23] *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 602 F. Supp. 2d 277, 280-81 (D. Mass. 2009); *see Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343-44 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015); *Relafen*, 231 F.R.D. at 72; *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93-94 (D. Mass. 2005); *see also Roberts v. TJX Cos.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *20 n. 8 (D. Mass. Sept. 30, 2016).

> establishing liability; (5) the risks of establishing damages; (6) the
> risks of maintaining the class action through the trial; (7) the ability
> of defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund
> to a possible recovery in light of all the attendant risks of litigation.[24]

Other courts in this Circuit, have utilized pared down versions of the *Grinnell* factors, *e.g.*, a six-factor list,[25] or a five-factor list.[26]

EPPs submit that this Settlement satisfies procedural fairness because it was negotiated at arm's-length, following full discovery, virtually on the eve of a pivotal oral argument on motions *in limine*, two weeks before the commencement of trial, and under the auspices of an experienced mediator. The Settlement is substantively fair by virtue of satisfying each of the *Grinnell* factors and treating Class Members equitably under the Plan of Allocation. Both Rule 23(e) and First Circuit precedent support final approval of the Settlement.

### 1.   The Settlement Is Procedurally Fair

a)   The Settlement is the product of serious, non-collusive, arms'-length negotiations

"Although the district court must carefully scrutinize the settlement, there is a presumption in favor of the settlement if the parties negotiated it at arms-length, after conducting meaningful discovery."[27] "Discovery is sufficient if it enables representatives of the parties to act 'intelligently' when negotiating a settlement."[28] Additionally, courts routinely credit neutral

---

[24] *First Databank,* 602 F. Supp. 2d at 280-81 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989)).

[25] *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003).

[26] *In re Tyco*, 535 F. Supp. 2d at 259-60; *see In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067-NMG, 2014 WL 4446464, at *5 (D. Mass. Sept. 8, 2014) ("*Celexa*").

[27] *In re Tyco*, 535 F. Supp. 2d at 259 (citing *City P'ship Co.*, 100 F.3d at 1043).

[28] *Celexa*, 2014 WL 4446464, at *4 (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000)).

mediators with ensuring that the parties' negotiations were at arms' length and that there was no collusion.[29]

Here, fact discovery was complete for over a year, and expert discovery for nearly six months, when the negotiations between EPPs and Defendants began in October 2021. The formal two-day Mediation held on November 15-16, 2021, and conducted under the auspices of experienced mediator Ken Feinberg, failed. Although Mr. Feinberg employed a number of strategies in order to narrow the significant gap between the parties' respective settlement positions, including making a mediator's recommendation, the parties were still far apart at the close of the mediation, despite the uncertainties for both parties due to pending motions for summary judgment.[30] The Court thereafter denied Ranbaxy's motion for summary judgment and purchasers' motion for partial summary judgment on November 22, 2021, further informing the parties.[31]

The Court's comments on its initial impressions on the motions *in limine* stated on the record at the December 21, 2021 Status Conference further impacted counsel's evaluation of the case and the EPPs' Settlement position. After weeks of informal sporadic conversations with Mr. Feinberg, with the trial less than two months away, the parties again engaged in active negotiations through Mr. Feinberg, which resulted in the proposed Settlement two days before

---

[29] *See Roberts v. TJX Co., Inc*., No. 13-cv-13142, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("[T]he participation of an experienced mediator, also supports the Court's finding that the Settlement is fair, reasonable, and adequate."); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C*., No. 15-2460, 2016 WL 4766079, at *16 (E.D. Pa. Sept. 13, 2016) (citation and quotation omitted) ("[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Hemphill v. San Diego Ass'n of Realtors, Inc*., 225 F.R.D. 616, 621 (S.D. Cal. 2005); *In re Toys R Us Antitrust Litig*., 191 F.R.D. 347, 352 (E.D.N.Y. 2000); *see also Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, *7 (D.N.J. Oct. 13, 2010); *Bert v. AK Steel Corp*., No. 02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).
[30] *See* Joint Decl., at ¶¶81-86.
[31] *See* Joint Decl., at ¶¶59-65.

the motions *in limine* and other pretrial matters were to be argued and decided by the Court, and two weeks before a jury was to be impaneled.

In this case, not only was discovery sufficient to enable the parties to intelligently negotiate, the record was fully developed and the parties were in the throes of preparing the case for trial, including the framing of the presentation of evidence using various permutations dependent upon the outcome of the pending motions *in limine*. EPPs' experienced counsel were armed with superior insights on how a jury might find if they were to win or lose those pre-trial issues and were thus able to gauge the corresponding risk of a trial versus the certainty of a settlement. The Settlement was the result of hard-fought, good-faith, arms' length negotiations between parties who were fully informed as to the strengths and weaknesses of their respective cases.

    b) <u>Plaintiffs and Plaintiffs' counsel have adequately represented the interests of the End-Payor Classes</u>

In its Class Certification decision, this Court found that Plaintiffs UFCW NEPA and BCBS LA adequately represented the interests of the End-Payor Classes.[32] The Court further cemented this decision when it formally appointed Plaintiffs as Class Representatives on October 26, 2021 pursuant to Rule 23(g).[33] Their interests align with the interests of the End-Payor Classes, as each named Plaintiff is a third-party payor who paid for or provided reimbursement for the at-issue drugs at higher prices that than they otherwise would have if not for Ranbaxy's alleged conduct.[34]

---

[32] ECF No. 389, at 14-15.
[33] *See* Joint Decl., at ¶57 and ECF No. 487.
[34] *See In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Coll. Practices Act (FDCPA) Litig*., No. 2:13-MD-2426, 2016 WL 543137, at *4 (D. Me. Feb. 10, 2016) (finding class representatives adequate where they "suffered the same injury as class members") (internal quotation and alteration omitted).

This Court also formally appointed Lead Class Counsel through its class certification and October 26, 2021 Orders, finding that Lead Class Counsel adequately represents the End-Payor Classes.[35]  Lead Class Counsel were well-versed in the relevant facts and law, conducted an extensive investigation and discovery, and thus understood the potential strengths and risks of Class Plaintiffs' claims.

## 2.   The Settlement Is Substantively Fair

While Lead Class Counsel believe that EPPs' claims would have prevailed had the Action advanced, there was nevertheless considerable risk of a less favorable result (including no recovery at all) if litigation went to trial, post-trial motions and appeal.  Given the risks, the Settlement achieves a substantial recovery for the EPPs and unquestionably satisfies the factors for approval under Rule 23(e)(2)(C)-(D) and the *Grinnell* factors.

### a)   The complexity, expense, and likely duration of the litigation weigh in favor of approval

"The complexity of federal antitrust law is well-known and antitrust class actions are notoriously complex, protracted, and bitterly fought."[36]  This case was no exception.  In fact, this case was not the usual generic suppression antitrust case, but, was made more complicated by the fact that Ranbaxy never sold two of the drugs, generic Nexium and generic Valcyte, and for the drug it did sell, generic Diovan, it did not carry the majority of the market.  EPPs would have had to persuade the jury that Ranbaxy had monopoly power despite these facts.  While EPPs are confident that their experts' opinions on monopolization and attempted monopolization are well-

---

[35] *See* Joint Decl., at ¶57 and ECF No. 487. *See also In re AWP*, 588 F.3d at 36 n.12 ("The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class.").
[36] *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 459 (D.P.R. 2011) (internal quotations omitted).

supported, these are not simple concepts to explain to a jury under the most straightforward facts, let alone here.[37]

Similarly, RICO is not a simple concept,[38] particularly outside of the context of an organized crime ring as a layperson generally conceptualizes RICO conspiracies.  EPPs would have had to convince the jury that the alleged co-conspirators, an outside law firm and outside regulatory consultant, were not agents of Ranbaxy and were not merely doing their jobs, but rather were knowing players in a conspiracy to deceive the FDA.  This presented significant hurdles to the jury finding for the EPPs.  And even if the jury had found for EPPs, a possible appeal carried its own risks and may have wiped that verdict away.[39]

As to the expense and duration of the litigation, the trial of this case, with a dozen experts and two End-Payor Class Representatives coming to trial in Boston to testify live and otherwise observe the trial, would have been extremely expensive.  Further, it is unlikely that any jury verdict would have ended the matter.  Defendants have evidenced their willingness to appeal virtually every decision rendered in this case.[40]  Had either side lost, they would likely have appealed, further delaying any finality and recovery for the Classes.

The complicated subject matter and expense of the case clearly weighs in favor of approval of the Settlement.

---

[37] *See In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2015 WL 3486434, at *10 (E.D La. June 2, 2015) ("DPPs' claims are subject to complex problems of proof. In particular, DPPs' attempted monopolization and Section 1 rule of reason claims require market analysis and consideration of potential justifications.").

[38] *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (noting "the difficulty of prevailing in civil RICO actions").

[39] *See Humana, Inc., v. Indivior Inc.*, No. 20-cv-4602, 2021 WL 3101593, at *9 (E.D. Pa. July 22, 2021) (dismissing indirect purchaser RICO claims for lack of standing).

[40] *See, e.g.,* Joint Decl., at ¶¶20, 56.

b)   <u>The positive reaction of the classes to the settlement favors approval</u>

To further support approval of a settlement, courts look to the class reaction to the settlement.[41] It is important to note that the existence of an objection to a settlement does not, by itself, prevent the court from approving the agreement.  Rather, this factor weighs in favor of granting final approval so long as the reaction of the class is "positive."[42]

The Notice Plan for the Class certification and the Notice Plan for the Settlement were both robust, including direct mail notice to the Settlement Administrator's proprietary list of over 41,000 EPPs.[43]  When notice of certification of the litigation End-Payor Classes was disseminated, only three exclusions requests were received by the December 20, 2021 deadline.[44] While Class Members have until July 18, 2022 to object to the Settlement, Lead Class Counsel is not aware that any objections have been received thus far.[45]

Class Members, like the Class Representatives, are sophisticated health insurers and union health and welfare funds, which monitor cases like this one closely because they routinely file claims to recoup amounts they have overpaid for their members' prescription drugs as a result of alleged antitrust violations by pharmaceutical manufacturers.  They are uniquely positioned to gauge the sufficiency of settlements.  By the time of the Fairness Hearing on September 8, 2022, the Settlement Administrator, A.B. Data, will have filed a notice informing the Court of the total number of Class Member objections, if any, that were filed by the deadline.

---

[41] *In re Tyco*, 535 F.Supp.2d at 259 (citing the "reaction of the class to the settlement" as a relevant factor).
[42] *Id.* at 261 (noting that "only a small number" of class members had raised objections and that their objections were "without merit"); *accord Bussie v. Allmerica Financial Corp*., 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("The number of requests for exclusion from the settlement, as well as the number and substance of objections filed, is relevant to this Court's analysis of the settlement.").
[43] ECF No. 549-1, ¶4; Miller Decl., at ¶4.
[44] ECF No. 549-1, ¶11.
[45] Miller Decl., at ¶12.

Based on the current response by Class Members, this *Grinnell* factor supports judicial approval of the Settlement. Experienced counsel are confident that this factor will also support approval following the objection deadline.

c)   The late stage of the proceedings supports final approval

As described above and in the Joint Declaration, this Settlement came only two weeks before trial was to begin. Since discovery was complete even before the settlement negotiations began in October 2021 (at that time the trial was still scheduled to begin in January 2022), and the trial was to have begun in two weeks when the Settlement was ultimately reached, EPPs' counsel clearly had sufficient information to make an informed decision concerning the adequacy of the Settlement. This factor, too, clearly weighs in favor of Settlement approval.

d)   The risks of establishing liability and damages weigh in favor of approval

Courts in this district have noted that where, as here, "questions of liability and damages are heavily fact-intensive," "regardless of the merits of their claims, [plaintiffs] face a real risk in establishing liability at trial."[46] "Courts have found that uncertainty involving the method of calculating damages weighs in favor of finding a settlement agreement fair, reasonable, and adequate."[47]

As noted above in section I.B.1, EPPs would have faced substantial risks in demonstrating liability to a jury on the complicated antitrust monopoly and attempted monopoly claims and RICO claims, which would have required the jury to appreciate and weigh numerous facts, evaluate the testimony of over a dozen experts, and to understand and follow extensive and

---

[46] *Roberts*, 2016 WL 8677312, at *7.
[47] *Id.* (citing *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 462 (D.N.J.) and *Craig v. Rite Aid Corp.*, No. 08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013)).

complex jury instructions.  There was also a risk that the jury may have accepted any one of Ranbaxy's defenses.  As just two examples, they argued that the FDA was aware of Ranbaxy's non-compliance with cGMP when it granted the tentative approvals for generic Diovan, Nexium and Valcyte, and that the Plaintiffs' complaints were filed outside the applicable statute of limitations.  If the jury were to have believed even one of Ranbaxy's defenses, EPPs would recover nothing.

Even assuming liability were to have been proven, EPPs and Ranbaxy disagreed on the method of calculating damages.  EPPs are confident that their expert, Dr. Conti, utilized the correct methodology to determine that there was a significant impact to the EPPs resulting in significant damages.  However, it is possible that the jury might have adopted the competing analysis of Ranbaxy's expert, Dr. Strombom, who valued the EPPs' damages at zero or close to it.

Therefore, the risks of establishing liability and damages weigh in favor of granting final approval of the Settlement.

e)  <u>The risks of maintaining the class action through the trial</u>

Since the First Circuit denied Defendants' Rule 23(f) petition, it is unlikely that they would have prevailed were they to have attempted an appeal of the Court's class certification decision post-trial.  So, this factor is neutral.

f)  <u>The ability of defendants to withstand a greater judgment did not</u>
<u>negatively impact settlement negotiations</u>

When evaluating settlements, courts in this Circuit weigh the proposed settlement against the "ability of the defendants to withstand a greater judgment."[48]  "This factor is typically

---

[48] *Grinnell*, 495 F.2d at 463.

relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement."[49] That was not the case here. The financial resources of the Defendants ultimately did not affect the result of the negotiations, so this factor does not weigh against approval.

Further, courts have recognized that the *Grinnell* factors need not be strictly applied, and this seventh factor may be more appropriately assessed in the context of the eighth and ninth factors, which are discussed below.[50]

g)   The Settlement falls within a range of reasonableness that supports granting final approval

When assessing the reasonableness of a settlement, courts make a "comparison of the proposed settlement with the likely result of continued litigation."[51] "In analyzing these factors, the issue for the court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. The court 'consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable[.]'"[52]

This Settlement is positioned comfortably within the zone of reasonableness for an atypical generic delay antitrust case like this one.[53] It serves the best interests of the Classes by securing a substantial and immediate cash recovery of $145,000,000, while avoiding delays, risks, and uncertainties, including the vagaries of juries tasked with rendering a verdict in a case

---

[49] *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020).
[50] *Roberts*, 2016 WL 8677312, at *8.
[51] *In re Tyco*, 535 F. Supp. 2d at 259; *accord In re Gen. Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) (evaluating a settlement by assessing "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing").
[52] *Hill*, 2015 WL 127728, at *10 (quoting *Grinnell*, 495 F.2d at 462).
[53] *See* Ex. 6 to the Joint Decl. (listing most EPP recoveries in generic suppression cases in a range from $9 million to $120 million).

as highly complex as this one and the potential appeal of any favorable verdict the Classes might be awarded.  Compared to proceeding with a trial, the certain, immediate receipt of the settlement funds works to the benefit of the End-Payor Classes, particularly where the risk of no recovery at all was a possibility.

In deciding whether a proposed class action settlement is reasonable, courts often give significant weight to the judgment of experienced counsel.[54]  This is particularly true where, as here, EPPs' Lead Class Counsel have decades of relevant experience and had conducted significant discovery and motion practice to understand fully the pros and cons of proceeding with litigation.[55]  EPPs are represented by counsel with extensive antitrust and complex litigation experience, who have represented classes of third party payors in numerous cases against pharmaceutical manufacturers.[56]  EPPs' Lead Class Counsel, relying on their years of experience in similar cases and their efforts in this litigation, recommend approval of the proposed Settlement.

### B.    THE SETTLEMENT'S PLAN OF ALLOCATION EQUITABLY DISTRIBUTES RELIEF AND SHOULD BE APPROVED

"As with the settlement itself, 'the plan of allocation must be fair, reasonable and adequate.'"[57]  A reasonable plan need not treat all class members equally,[58] but may instead allocate funds based upon the extent of class members' injuries and may "consider the relative

---

[54] *See, e.g.*, *Rolland v. Celluci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 296 F.R.D. 351, 364 (E.D. Pa. 2013); *In re Southeastern Milk Antitrust Litig.*, No. 08-md-1000, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013).
[55] *See, e.g.*, *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993).
[56] *See* Declaration of Renee Nolan in Support of End-Payor Plaintiffs' Motion for Class Certification, dated Nov. 2, 2020 (ECF No. 287-3), at Exs. 7 and 8 (Co-Lead Class Counsel's firm resumes) (ECF Nos. 290-7, 290-8).
[57] *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010) (quoting *In re Tyco*, 535 F. Supp. 2d at 262); *see also* FED. R. CIV. P. 23(e)(2).
[58] *Hill*, 2015 WL 127728, at *28.

strengths and values of different categories of claims."[59]  Generally, when recommended by

competent and experienced counsel, whose assessment is entitled to considerable weight, the

plan need have only a rational, reasonable basis.[60]

Here, the Plan of Allocation is based upon the damages analysis of EPPs' expert, Dr.

Rena Conti, in terms of dividing the total net Settlement proceeds among the three at-issue

drugs.[61]  Then, as in similar cases, the Plan allocates the proceeds allotted for each drug *pro rata*

based upon each Class Member's purchases.[62]  Under the Plan, the Settlement proceeds will be

allocated net of Court-approved attorneys' fees and expenses and service awards for Plaintiffs,

and other costs of litigation and claims administration: (i) 72.6% to the purchasers of brand

Diovan and its AB-rated generic equivalents; (ii) 26.2% to the purchasers of AB-rated generic

Nexium; and (iii) 1.2% to the purchasers of brand Valcyte and its AB-rated equivalents.  Then,

within each allocation, each eligible EPP that files a timely and valid claim form will receive its

*pro rata* share of the relevant allocation based on the Class Member's purchases for that drug

during the relevant class period.[63]

While the largest portion of the settlement monies are allocated to those Class Members

that purchased or reimbursed for brand or generic Diovan, under the circumstances, that is fair

and reasonable.  As calculated by Dr. Conti, the Diovan purchases by far constituted the largest

portion of the End-Payor Classes' damages.  Additionally, given that the typical third-party

payor has hundreds, if not thousands of members or insureds, it is highly likely that the End-

---

[59] *In re IMAX Secs. Litig*., 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *see also Hill*, 2015 WL 127728, at *28 (citing cases).
[60] *See, e.g., Giusti-Bravo*, 853 F. Supp. at 40; *Imprelis*, 296 F.R.D. at 364; *Rolland,* 191 F.R.D. at 10; *Southeastern Milk*, 2013 WL 2155379, at *5.
[61] *See* Joint Decl., at ¶¶ 79-81.
[62] *See, e.g., In re Prograf Antitrust Litig*., No. 11-md-02242-RWZ, 2015 WL 13908415, at *3 (D. Mass. May 20, 2015).
[63] ECF No. 587-3.

Payor Class Members who paid for Valcyte also paid for brand or generic Diovan and/or generic Nexium.  As such, the fact that the Valcyte apportionment is so much lower is not problematic – it is fair and rational.

Within each allocation, each eligible End-Payor Class Member that files a timely and valid claim form will receive its pro rata share of the relevant allocation based on the Class Member's purchases for that drug during the relevant class period.[64]  The proposed claim form instructs Class Members to submit the total amount of their purchases for each drug category during the Class Periods, and supply supporting data if their purchases exceed a certain threshold.  Similar claim forms have been approved in other pharmaceutical antitrust cases.[65]

The Plan of Allocation allocates the Net Settlement Fund in substantially the same manner as plans that have been approved by courts in analogous cases in which those plans were deemed to be fair and efficient.[66]  For these reasons, EPPs respectfully submit that the Court should finally approve the Plan of Allocation which it previously preliminarily approved.

## III.   CONCLUSION

For the foregoing reasons, EPPs respectfully request that the Court enter the proposed Final Approval Order and Judgment submitted herewith, granting Final Approval Order and Judgment and providing such other relief necessary to effectuate the Settlement.

---

[64] *See* Proof of Claim, at ECF No. 587-4.

[65] *See In re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices, and Antitrust Litig.*, No. 17-md-2785 (D. Kan. Feb. 28, 2022) ECF  2590-5; *In re Loestrin 24 Fe Antitrust Litig.*, No. 1:13-MD-2472-WES-PAS (D.R.I. Feb 6, 2020), ECF 1401-4; *In re Aggrenox Antitrust Litig.*, No. 3:14 MD 2516 (SRU) (D. Conn. Jan 8, 2018), ECF 748-8; *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-MD-2503-DJC (D. Mass. April 4, 2019), ECF 1143-5.

[66] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-md-02819 (E.D.N.Y.), ECF Nos. 713-6, 716 (plan of allocation approved January 18, 2022); *In re Loestrin 24 Fe Antitrust Litig.*, No. 1:13-MD-2472-WES-PAS, (D.R.I.), ECF Nos. 1401-2, 1427 (approved March 23, 2020); *In re Aggrenox Antitrust Litig.*, No. 3:14 MD 2516 (SRU) (D. Conn.), ECF Nos. 748-6, 821 (approved July 19, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-MD-2503-DJC (D. Mass.), ECF Nos.1143-3, 1177 (approved July 18, 2018).

Dated: June 27, 2022

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**

By: */s/Renee A. Nolan*
Gerald Lawrence
Renee A. Nolan
William Olson
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel. (215) 399-4770
glawrence@lowey.com
rnolan@lowey.com
wolson@lowey.com

Peter D. St. Phillip
44 South Broadway
Suite 1100
White Plains, New York 10601
Tel. 914-997-0500
PStPhillip@lowey.com

*Counsel for Plaintiff United Food and*
*Commercial Workers Health and Welfare*
*Fund of Northeastern Pennsylvania and the*
*End-Payor Classes*

**THE DUGAN LAW FIRM, APLC**

James R. Dugan, II
David S. Scalia
TerriAnne Benedetto
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA70130
Tel: 504-648-0180
Fax: 866-328-7670
jdugan@dugan-lawfirm.com
dscalia@dugan-lawfirm.com
tbenedetto@dugan-lawfirm.com

*Counsel for Louisiana Health Service &*
*Indemnity Company d/b/a Blue Cross and*
*Blue Shield of Louisiana, and HMO La., Inc.*
*and the End-Payor Classes*

18

and

Richard A. Sherburne, Jr.
Jessica W. Chapman
BLUE CROSS AND BLUE SHIELD OF
LOUISIANA
5525 Reitz Avenue
P.O. Box 98029
Baton Rouge, Louisiana 80809
Tel.: (225) 295-2199
Fax: (225) 297-2760

*Counsel for Louisiana Health Service &
Indemnity Company d/b/a Blue Cross and
Blue Shield of Louisiana, and HMO La., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2022, a true copy of the foregoing document was served

on all counsel of record by electronic transmission and/or electronically filing the document with

the Court's CM/ECF system.

*/s/Renee A. Nolan*