**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **In re: Ranbaxy Generic Drug Application Antitrust Litigation** | ) | **MDL No. 19-md-02878-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

This multi-district litigation involves five actions that were centralized in this Court and divided into two plaintiff classes against Ranbaxy Inc. and Sun Pharmaceutical Industries Limited (collectively, "Ranbaxy" or "defendants") for allegedly causing the delayed market entry of three generic drugs. After years of protracted litigation, the parties reached proposed settlement agreements in March, 2022.

Pending before the Court are motions by each of the two plaintiff classes for final approval of those settlements, as well as motions for attorneys' fees, litigation expenses and service awards for class representatives.

## I. Background

The two plaintiff classes are composed of direct purchaser plaintiffs ("DPPs") and end-payor plaintiffs ("EPPs"). DPPs, such as wholesalers and distributors, purchase generic drugs directly from drug manufacturers. EPPs are third-party payors, such as health plans and insurance companies, that indirectly purchase and/or provide reimbursement for generic drugs at the end of the distribution chain from retailers and other intermediaries. Plaintiffs brought claims against Ranbaxy for violations of federal and state antitrust law, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and state consumer protection statutes.

Two weeks before trial was set to commence, the parties notified the Court that they had reached global settlement agreements and preliminary approval of those settlements was subsequently allowed. Under the terms of the settlements, Ranbaxy will deposit $145,000,000 into a settlement fund for EPPs and $340,000,000 into a settlement fund for DPPs. The settlement funds, together with any interest accrued, will be used to pay: (1) taxes payable on the settlement funds, (2) any and all costs and expenses associated with issuing notice of the settlement to the classes and administering the settlement, (3) costs and expenses incurred by lead class counsel in connection

with the litigation, and (4) any Court-approved attorneys' fees, as well as Court-approved service awards to the named plaintiffs. If the Court grants final approval, the remainder of the settlement funds will be distributed to qualifying members of the respective classes in accordance with the allocation plans.

In exchange, plaintiffs have agreed, inter alia, to release defendants from liability for the claims arising from the conduct alleged. Class members have been notified as to the terms of the settlement, including the attorneys' fees requested, and there have been no objections from members of either class to date.

Counsel have also submitted motions seeking attorneys' fees, litigation expenses and service awards for class representatives. More specifically, counsel for DPPs seek: (1) attorneys' fees of $92,523,554 (which represents 27.5 percent of the net fund or a lodestar multiplier of 2.11), (2) reimbursement of $3,550,713 in expenses and (3) $40,000 service awards for each of the two class representatives. Correspondingly, counsel for EPPs seek: (1) attorneys' fees of $40,600,000 (which represents 28 percent of the net fund or a lodestar multiplier of 2.94), (2) reimbursement of $2,268,846 in

expenses and (3) $50,000 service awards for each of the two class representatives.

## II. Motions for Final Settlement Approval

Federal Rule of Civil Procedure 23(e) provides the broad requirements for approval of a proposed settlement in class action litigation:

> [T]he court may approve [a settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Although the First Circuit Court of Appeals has not provided supplemental guidance concerning the factors to be considered in assessing the fairness of a settlement, many courts in this Circuit have looked to those set forth by the Second Circuit Court of Appeals in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974). See, e.g., New

England Carpenters Health Benefits Fund v. First DataBank, Inc., 602 F. Supp. 2d 277, 281 (D. Mass. 2009). Those factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

City of Detroit, 495 F.2d at 463.

The necessary assessment is, thus, holistic and incorporates "a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 72 (D. Mass. 1999). Notwithstanding the responsibility of the district court to carefully assess the settlement, there is a presumption in its favor so long as parties engaged in arms-length negotiations after meaningful discovery. In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 259 (D.N.H. 2007).

After taking all of this and the submissions of counsel into consideration, the Court finds that the proposed settlement satisfies those requirements and represents a "fair, reasonable,

and adequate" outcome to this litigation. That determination is supported by the complexities of class action litigation in the field of antitrust, the lack of objections to the settlement, the late stage at which the settlement was adopted and the risks associated with extending the litigation through trial. The settlement is also within the range of reasonableness when compared to other settlements in other generic delay antitrust cases. That the settlement is the result of arms-length negotiations weighs heavily in its favor, as does the quality of class counsel.

The Court therefore will allow plaintiffs' motions for final approval of the settlement insofar as they do not impact attorneys' fees.

## III. Motions for Attorneys' Fees

### A. Legal Standard

Counsel who recovers common funds for a class is entitled to reasonable attorneys' fees and reimbursement of expenses prior to the distribution of the balance to the class. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Courts have wide discretion in awarding attorneys' fees. In re Thirteen Appeals Arising Out of San Juan, 56 F.3d 295, 307 (1st Cir. 1995). In addition to ensuring that class counsel is fairly compensated, the district court is obliged to function as "a quasi-fiduciary

to safeguard the corpus of the fund for the benefit of the plaintiff class." In re Fidelity/Micron Sec. Litig., 167 F.3d 735, 736 (1st Cir. 1990).

The district court may calculate attorneys' fees by either the percentage of the fund ("POF") method or the lodestar method. In re Thirteen Appeals, 56 F.3d at 307. The First Circuit has acknowledged the "distinct advantages" of the POF method, explaining that it is less burdensome, enhances efficiency and better approximates the marketplace dynamics. Id. Regardless of the method utilized, the goal of such a calculation is to compensate plaintiffs' counsel fairly for the labor provided, taking into account the risks they faced during the representation.

As a percentage of the relevant common fund, standard awards in the First Circuit range from 20% at the low end to 33% at the high end. Commonly, courts in this Circuit award fees between 25% (the benchmark) and 30%. See Conley v. Sears, Roebuck & Co., 222 B.R. 181, 187 (D. Mass. 1998); see also Roberts v. TJX Companies, Inc., 2016 WL 8677312 (D. Mass. Sept. 30, 2016) (33%); In re Puerto Rican Cabotage Antitrust Litig., No. 08-MD-1960(DRD), 2011 WL 4537726, at *9-10 (D.P.R. Sept. 13, 2011) (23%); In re Am. Dental Partners, Inc. Sec. Litig., No. 08-CV-10119-RGS, 2010 WL 1427404, at *1 (D. Mass. Apr. 9, 2010)

(22.5%); New Eng. Carpenters Health Benefits Fund v. 1st Databank, Inc., No. 05-CV-11148-PBS, 2009 WL 2408560, at *1-2 (D. Mass. Aug. 3, 2009) (20%); Sylvester v. Cigna Corp., 401 F. Supp. 2d 147 (D. Me. 2005) (33%). See generally Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees & Expenses in Class Action Settlements: 1993-2008, J. Empirical Legal Stud. 248, 260 (2010) (Table 4) (finding that 20% was both the median and mean attorneys' fees awarded in the First Circuit between 1993 and 2008); Theodore Eisenberg, Geoffrey P. Miller & Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937, 951 (2017) (Table 3) (finding the median attorneys' fees awarded in the First Circuit between 2009 and 2013 was 23% and the mean 26%).

This Session typically approves attorneys' fees of 25% or, sometimes, more but often reduces requested fees when they are deemed excessive. See Latorraca v. Centennial Techs. Inc., 834 F. Supp. 2d 25, 27 (D. Mass. 2011) (a securities fraud class action in which this Session reduced the fees awarded to 25% of the amount to be paid to class members rather than the initially requested 30%); Boyd v. Pepsi Beverages Company et al., 14-cv-12289 (D. Mass Feb. 18, 2016)(a FLSA class action in which this Session allowed attorneys' fees of 25% of the total gross value of the settlement); Kingsborough v. Sprint et al., 14-cv-12049 (D. Mass. June 3, 2015)(a property rights dispute in which this

Session approved attorneys' fees of 25% of the total gross value of the settlement); Tracey v. MIT, 16-cv-11620-NMG (D. Mass. May 29, 2020) (an ERISA class action in which this Session allowed attorneys' fees of 29% of the settlement fund where the lodestar calculation exceeded the 25% benchmark). Most recently, in Bettencourt v. Jeanne D'Arc Credit Union et al., 17-cv-12548-NMG (D. Mass. June 17, 2020), this Session decreased the requested attorneys' fees from 30% of the settlement fund to 27%, "splitting the difference" between the request and its usual benchmark of 25%.

The lodestar method, under which a lodestar multiplier is calculated based upon the total hours worked, is often used in this Circuit to cross-check the attorneys' fees calculated pursuant to the POF method. The typical range of the lodestar multiplier allowed by this Court is between one and 2.7. Most multipliers fall between one and four, although there is significant variation. See In re Relafen Antitrust Litigation, 231 F.R.D. 52, 82 (D. Mass 2005) (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002)). See also Theodore Eisenberg et al., Attorneys' Fees in Class Actions: 2009-2013, (finding, between 2009 and 2013, the mean multiplier in common fund cases in the First Circuit was 2.4 and the mean multiplier in national antitrust cases was 1.61).

> A properly calculated lodestar allows the court to assess whether the multiplier being requested by counsel is justified by the complexity of the case, the risks of the litigation, and the benefit they conferred on the class.

Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co., 512 F. Supp. 3d 196, 239 (D. Mass. 2020), appeal dismissed sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp., No. 20-1365, 2020 WL 5793216 (1st Cir. Sept. 3, 2020), and aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp., 25 F.4th 55 (1st Cir. 2022) (citations omitted). See Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis.").

**B. Application**

Regardless of the precise formula by which the Court calculates attorneys' fees in this case, they will be immense due to the scope of this litigation, which has culminated in two proposed settlement funds totaling approximately $475 million. While plaintiffs effectively cite case law concerning the alleged delayed market entry of other generic pharmaceuticals, that precedent is of limited value in light of the relative magnitude of the amounts involved here. The Court must holistically determine what constitutes fair compensation under

these particular circumstances, given the enormity of the settlement and the relatively routine (albeit extensive) nature of the legal services rendered. In assessing attorneys' fees either as a percentage of the settlement fund or a multiple of the lodestar, it is necessary and appropriate to consider the funds at issue which, in this case, are colossal.

A brief survey of attorneys' fees awarded in similar cases arising from the alleged delayed market entry of generic pharmaceuticals in this District highlights the magnitude of both the settlement funds at issue here and, relatedly, the attorneys' fees requested. Among those cases, the modal fraction of the settlement fund awarded as attorneys' fees has been one-third, significantly higher than the fraction sought by counsel here. The total dollar amount of the funds in those prior cases was, however, significantly lower. See In re Solodyn Antitrust Litig., No. 14-md-2503, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (Casper, J.) (awarding fees of $24,176,667 to direct purchaser counsel and $7,666,667 to end-payor purchasers, representing one-third of each respective settlement fund); In re Asacol Antitrust Litig., No. 1:15-CV-12730-DJC, 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (Casper, J.) (awarding fees of $5,000,000, equaling one-third of settlement fund, for direct purchaser counsel); In re Prograf Antitrust Litig., No. 1:11-MD-02242-RWZ, 2015 WL 13908415, at *1 (D. Mass.

May 20, 2015) (Zobel, J.) (awarding fees of $4,416,667, equaling one-third of settlement fund, for indirect purchaser counsel); In re Relafen Antitrust Litig., 231 F.R.D. at 82 (Young, J.) (awarding fees of $22,311,000, equaling one-third of settlement fund, for indirect purchaser counsel).

The First Circuit Court of Appeals does not require courts to cross check the percentage of the fund against the lodestar calculation to determine the reasonableness of the requested attorneys' fees. See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995).

> Nevertheless, the Court will perform the lodestar calculation as the Court finds that it is a pragmatic cross-check to ensure that the Court is not creating a windfall for Lead Counsel.

In re Puerto Rican Cabotage Antitrust Litig., 815 F. Supp. 2d 448, 464 (D.P.R. 2011). See Vizcaino, 290 F.3d at 1050 ("While the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); Manual for Complex Litigation (Fourth) § 14.122 (2004) ("The lodestar is . . . useful as a cross-check on the percentage method."). That reference is particularly helpful here due to the magnitude of attorneys' fees under consideration.

Compared to the other generic delay cases cited supra, the conclusion is clear: the requested lodestar multipliers are on the high end of those awarded and, in fact, the lodestar multiplier requested from counsel for EPPs is substantially higher than any of those figures. See In re Solodyn Antitrust Litig., at *2 (lodestar multiplier of 0.82); In re Asacol Antitrust Litig., at *4 (D. Mass. Dec. 7, 2017) (lodestar multiplier of less than 0.60); In re Prograf Antitrust Litig., at *1 (D. Mass. May 20, 2015) (lodestar multiplier of 2.35); In re Relafen Antitrust Litig., 231 F.R.D. at 82 (lodestar multiplier of 2.02).

The Court is undoubtedly influenced by the immensity of the requested fees at issue. The Court declines, however, to apply strictly the logic of the declining-percentage rule that some jurists have applied to cases involving so-called "megafunds," i.e. settlements exceeding $100 million. The First Circuit has not addressed the advisability of applying such a rule and courts in this District have declined to do so. See Arkansas Tchr. Ret. Sys., 512 F. Supp. 3d at 239; In re Lupron Mktg. & Sales Pracs. Litig., No. 01-CV-10861-RGS, 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005). See generally Newberg and Rubenstein on Class Actions § 15:81 (6th ed.).

Nevertheless, empirical research has revealed that "fee percentage is strongly and inversely associated with settlement size among all cases" and, at least for awards for settlements between $250 million and $500 million in 2006 and 2007, the mean and median awards were 17.8% and 19.5%, respectively. See Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 839 (2010).

The Court acknowledges the particularities of this litigation, the substantial benefit conferred on plaintiff classes by counsel, the legal uncertainties involved in prosecuting the case, the financial risks to which counsel were exposed and the extensive timeline of the litigation. Nevertheless, the Court concludes that it is appropriate here to adjust significantly downward the attorneys' fees due, in part, to the extent to which this litigation was the successor of a civil settlement and criminal plea agreement into which Ranbaxy entered with the federal government in 2013. Thus, while some of the specific legal theories at issue in this case were novel, the allegations of wrongdoing at the core of the case were based upon findings known at the outset of the litigation and the financial risks inherent to litigation of this scope were certainly mitigated.

For that reason, and others, the Court finds that the attorneys' fees requested are excessive and that attorneys' fees totaling 20 percent of the settlement funds—$68,000,000 for the DPPs and $29,000,000 for the EPPs—are reasonable. Those attorneys' fees, which represent lodestar multipliers of 1.55 for the DPPs and 2.10 for the EPPs, represent awards sufficient to compensate counsel and to incentivize future litigation on behalf of plaintiffs similarly situated.

**ORDER**

For the forgoing reasons, the motions for final approval of the settlement agreements (Docket Nos. 595 and 600) are **ALLOWED**. Furthermore, the motions for attorneys' fees (Docket Nos. 597 and 603) are **ALLOWED**, in part, and **DENIED**, in part. Class counsel are awarded attorneys' fees in the amount of 20% of each respective common fund, plus interest accrued thereon, if any. Furthermore, class counsel will be reimbursed for the reasonable litigation expenses set forth in their motions and class representatives will be paid the service awards requested.

Counsel for DPPs are awarded: (1) attorneys' fees of $68,000,000, (2) reimbursement of $3,550,713.47 in expenses and (3) $40,000 service awards for each of the two class representatives. Counsel for EPPs are awarded: (1) attorneys' fees of $29,000,000, (2) reimbursement of $2,268,845.61 in

expenses and (3) $50,000 service awards for each of the two class representatives.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 19, 2022