# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: RANBAXY GENERIC DRUG APPLICATION ANTITRUST LITIGATION | MDL NO. 2878 |
|  | Master File No. |
| THIS DOCUMENT RELATES TO: | 19-md-02878-NMG |
| *All Cases* | Leave to file granted on April 24, 2026 |

## PRO PUBLICA, INC.'S REPLY
## IN SUPPORT OF MOTION TO INTERVENE
## AND UNSEAL JUDICIAL RECORDS

## ***ORAL ARGUMENT REQUESTED***

## TABLE OF CONTENTS

I.      ProPublica's motion to intervene should be granted. ........................................ 1

II.     Any record submitted to the Court in support of a motion for summary judgment is a judicial record to which the presumption of access attaches. ............................................................................................................... 3

III.    The presumption of public access to summary judgment records has not been overcome. ...................................................................................... 5

        A.      Attorney argument is insufficient to justify sealing. ............................... 5

        B.      Defendants rely in part on cases considering whether to enact a discovery protective order under Rule 26(c), which is a lower, inapplicable standard. ............................................................................... 6

        C.      Defendants' communications with and about the FDA that the parties submitted to the Court at summary judgment should be unsealed. ............................................................................................. 7

        D.      The reports and deposition testimony of experts that the parties submitted to the Court at summary judgment should be unsealed. ........................................................................................... 10

        E.      The purported non-party privacy interests asserted by the parties do not overcome the presumption of public access to summary judgment records. ................................................................ 11

IV.     Any sealing should be achieved through narrowly tailored redactions. ......... 13

i

# TABLE OF AUTHORITIES

**CASES**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
   440 F.3d 541 (1st Cir. 2006) ....................................................................... 2

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
   171 F.R.D. 135 (S.D.N.Y. 1997) ................................................................. 6

*Baxter Int'l, Inc. v. Abbott Lab'ys*,
   297 F.3d 544 (7th Cir. 2002) ...................................................................... 7

*Binh Hoa Le v. Exeter Fin. Corp.*,
   990 F.3d 410 (5th Cir. 2021) ...................................................................... 7

*Blanchard & Co. v. Barrick Gold Corp.*,
   No. 02-3721, 2004 WL 737485 (E.D. La. Apr. 5, 2004) ............................. 6

*Burnett v. CNO Fin. Grp., Inc.*,
   No. 1:18-CV-00200-JPH-KMB, 2024 WL 3161855 (S.D. Ind. June 24, 2024) ....... 10

*Coal. of Black Leadership v. Doorley*,
   No. C.A. 71-4523-JJM, 2023 WL 3844618 (D.R.I. June 6, 2023),
   *report and recommendation adopted*, 2023 WL 4174463 (D.R.I. June 26, 2023).... 2

*Courthouse News Serv. v. Quinlan*,
   32 F.4th 15 (1st Cir. 2022) ........................................................................ 4

*Cunningham v. Beecham*,
   No. 2:07-CV-174, 2008 WL 2572076 (N.D. Ind. June 25, 2008) ............... 8

*DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*,
   990 F.3d 1364 (Fed. Cir. 2021) .................................................................. 5

*Doe v. Pub. Citizen*,
   749 F.3d 246 (4th Cir. 2014) ...................................................................... 4

*F.T.C. v. Standard Fin. Mgmt. Corp.*,
   830 F.2d 404 (1st Cir. 1987) ............................................................... 4, 5, 9

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.,*
  24 F.3d 893 (7th Cir. 1994) ........................................................................ 4

*In re Bos. Herald, Inc.,*
  321 F.3d 174 (1st Cir. 2003) ..................................................................... 11

*In re Gabapentin Pat. Litig.,*
  312 F. Supp. 2d 653 (D.N.J. 2004) ............................................................ 6

*In re NASDAQ Mkt.-Makers Antitrust Litig.,* 164 F.R.D. 346 (S.D.N.Y. 1996) .......... 6

*In re Providence J. Co.,*
  293 F.3d 1 (1st Cir. 2002) ......................................................................... 13

*Ingenus Pharms., LLC v. Nevakar Injectables, Inc.,*
  No. 3:22-CV-07603-MAS-JBD, 2023 WL 11852437 (D.N.J. July 13, 2023) ........... 14

*Joy v. North,*
  692 F.2d 890 (2d Cir. 1982) ........................................................................ 6

*Kamakana v. City & Cnty. of Honolulu,*
  447 F.3d 1172 (9th Cir. 2006) ..................................................................... 7

*King Pharms., Inc. v. Eon Labs, Inc.,*
  No. 04-cv-05540 (DGT), 2010 WL 3924689 (E.D.N.Y. Sept. 28, 2010) ..................... 8

*Lugosch v. Pyramid Co. of Onondaga,*
  435 F.3d 110 (2d Cir. 2006) ........................................................................ 7

*Nycomed US, Inc. v. Glenmark Generics, Inc.,*
  No. 08-CV-5023 (CBA), 2010 WL 889799 (E.D.N.Y. Mar. 8, 2010) ........................ 7

*Pub. Citizen v. Liggett Grp., Inc.,*
  858 F.2d 775 (1st Cir. 1988) ....................................................................... 2

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.,*
  584 F.3d 1 (1st Cir. 2009) .......................................................................... 2

*Ranbaxy Lab'ys, Ltd. v. Burwell,*
  82 F. Supp. 3d 159 (D.D.C. 2015) ............................................................... 9

iii

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
825 F.3d 299 (6th Cir. 2016) ................................................................................. 7

*Smith v. Turbocombustor Tech., Inc.*,
338 F.R.D. 174 (D. Mass. 2021) ............................................................................. 2

*United States v. Amodeo*,
44 F.3d 141 (2d Cir. 1995) ................................................................................... 13

*United States v. Kravetz*,
706 F.3d 47 (1st Cir. 2013) ...................................................................... 11, 12, 13

*United States v. Mass. Gen. Hosp., Inc.*,
No. 15-CV-11890-ADB, 2021 WL 11749764 (D. Mass. Feb. 16, 2021) ..................... 2

*United States v. O'Brien*,
No. CRIM. 12-40026-FDS, 2014 WL 204695 (D. Mass. Jan. 17, 2014) ............ 12, 13

*Valve Corp. v. Rothschild*,
No. 2:23-CV-01016-JNW, 2026 WL 232569 (W.D. Wash. Jan. 28, 2026) .............. 11

*Victim Rts. L. Ctr. v. Rosenfelt*,
988 F.3d 556 (1st Cir. 2021) ................................................................................. 2

*Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*,
No. 19-CV-13955 (FLW) (DEA), 2021 WL 9827274 (D.N.J. July 12, 2021) ....... 6, 14

**OTHER AUTHORITIES**

Ex. A, Decl. of Darren M. Geliebter in Supp. of Mot. to Seal,
*Ingenus Pharms., LLC v. Nevakar Injectables, Inc.*, No. 3:22-CV-
07603-MAS-JBD (D.N.J. May 1, 2023), ECF No. 34-2 ...........................................14

Fed. R. Civ. P. 26.................................................................................................6

Index in Supp. of Mot. to Seal,
*Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*, No. 19-CV-13955 (FLW) (DEA)
(D.N.J. Feb. 12, 2021), ECF No. 158-2 ............................................................. 14, 15

Ltr. from Arnold B. Calmann to Hon. Douglas E. Arpert,
*Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*, No. 19-CV-13955 (FLW) (DEA)
(D.N.J. Jan. 22, 2021), ECF No. 144 ....................................................................14

Ltr. from William P. Deni, Jr. to Hon. Douglas E. Arpert,
   *Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*, No. 19-CV-13955 (FLW) (DEA)
   (D.N.J. Jan. 13, 2021), ECF No. 139 ........................................................................14

Pursuant to Local Rule 7.1(b)(3), Proposed Intervenor Pro Publica, Inc. ("ProPublica") respectfully submits this reply in support of its February 12, 2026 Motion to Intervene and Unseal Judicial Records, ECF No. 625 (the "Motion" or "Mot."). For the following reasons, and for the reasons set forth in ProPublica's Memorandum of Law in Support of the Motion, ECF No. 626 (the "Memorandum" or "Mem."), ProPublica's Motion should be granted. The parties have not come close to satisfying their burden to justify the vast sealing of the summary judgment papers at issue here. The records sought through ProPublica's unsealing motion will shed light on matters of significant public interest—allegations that Defendants fraudulently obstructed the FDA's process for approving generic drugs for the U.S. market, jeopardizing the public's access to safe and effective generic drugs. These court records must finally be released.

## I.  ProPublica's motion to intervene should be granted.

ProPublica's Motion is timely, and the parties have not adequately protected the public's interest in this litigation. *Contra* Defs.' Mem. in Opp'n to ProPublica's Mot. to Intervene & Unseal, ECF No. 643 ("Defs.' Opp'n") at 5–6. The First Circuit has recognized that the public's right of access to court records continues to apply even after a case has concluded. *See Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 499 (1st Cir. 1989) (First Amendment presumption of access applied to closed criminal cases). Accordingly, members of the public and press may intervene to vindicate their right of access even where the litigation has ended. *See* Mem. at 7-8.

In arguing that ProPublica's motion to intervene is untimely, Defendants rely on inapposite case law outside of the court access context, *see B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544–45 (1st Cir. 2006); *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 564 (1st Cir. 2021); *Coal. of Black Leadership v. Doorley*, No. C.A. 71-4523-JJM, 2023 WL 3844618, at *10 (D.R.I. June 6, 2023), *report and recommendation adopted*, 2023 WL 4174463 (D.R.I. June 26, 2023), and outside the intervention context altogether, *see Smith v. Turbocombustor Tech., Inc.*, 338 F.R.D. 174, 177 (D. Mass. 2021); *United States v. Mass. Gen. Hosp., Inc.*, No. 15-CV-11890-ADB, 2021 WL 11749764, at *5 (D. Mass. Feb. 16, 2021).  Defendants ignore that intervention is not only the appropriate procedural method for bringing a motion to unseal, but also the only means for the public, including the press, to seek access to sealed court records.  *See R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783 (1st Cir. 1988).

Further, Defendants' contention that ProPublica's motion to intervene is untimely because ProPublica "has been writing about foreign drug manufacturers since 2007" and because "[m]any of the allegations giving rise to this lawsuit were in the public eye *years* ago" (emphasis in original) evinces a head-in-the-sand view of investigative journalism.  Defs.' Opp'n at 7.  That news outlets have previously investigated a topic as general as "foreign drug manufacturers" or as complex as the Ranbaxy litigation does not mean that the public interest in the topic has been exhausted.  Further, though the Ranbaxy litigation "has been closed for years" and

the parties to the litigation previously moved to unseal certain records, *id.* at 7, 9, the summary judgment records sought in the Motion have remained broadly sealed and inaccessible to the press and the public since they were filed.  Given this ongoing denial of court access, ProPublica's motion to intervene is both timely and appropriate in this context.

**II.   Any record submitted to the Court in support of a motion for summary judgment is a judicial record to which the presumption of access attaches.**

The public has the same presumption of access to materials submitted in support of a successful motion for summary judgment as it does to those submitted in support of one that is denied.  *Contra* Defs.' Opp'n at 10–11.  Although Ranbaxy's theory to the contrary has not been squarely considered by the First Circuit, it has been rejected by other circuits,[1] and cannot be reconciled with the opinion in *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8, 10, 13 (1st Cir. 1986).  In *Anderson*, "the news media were allowed access to materials considered in connection with a motion for summary judgment" that had not ended the litigation.  *Id.* at 8.  This was

---

[1] *See United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 173 (4th Cir. 2024) ("[I]rrespective of whether a district court ever resolves a summary judgment motion, the public has a presumptive First Amendment right to access documents submitted in connection with it."); *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) ("Material filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access."); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) (counting material submitted in support of summary judgment motions as the kind of "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith" to which "there is a presumptive right of public access"); *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016) (holding that the presumption of public access applies to court filings beyond those that are "literally dispositive") (citation omitted).

"consistent with a public right of access to materials considered in rulings on dispositive pretrial motions," *id.*, as opposed to those submitted in support of discovery motions.   The outcome of the motion was not relevant; the *Anderson* decision correctly forecast that the inquiry going forward would be whether documents were "*submitted to, and accepted by*, a court of competent jurisdiction *in the course of adjudicatory proceedings.*" *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987) (emphasis added).[2]

And contrary to Defendants' suggestion, *Siedle v. Putnam Investments*, 147 F.3d 7 (1st Cir. 1998) does not stand for the proposition that materials submitted in connection with summary judgment motions are somehow not judicial records.  *Siedle* held that the presumption of access that applied to a complaint could be overcome where the materials fell under the attorney-client privilege—a concern entirely irrelevant here.  *Id.* at 11 (explaining that protecting the attorney-client privilege "is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records").

---

[2] A rule that required the public to wait on the outcome of a motion would be unworkable.  "In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous."  *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("the public and press generally have a contemporaneous right of access to court documents and proceedings when the right applies").  Even a delay of a few days can plausibly constitute a violation of that right. *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 21 (1st Cir. 2022) ("[I]t is at least plausible that a delay of up to six calendar days would be consequential in the plaintiffs' exercise of their right to access judicial records.").

Finally, the Purchasers represent that several "large native files" containing "sales data" were referenced in its summary judgment papers but that they were not submitted to the Court and the Court never requested them. Purchasers' Limited Opp'n to Mot. to Intervene & Unseal Judicial Records, ECF No. 642 ("Purchasers' Opp'n") at 3–4. To the extent this representation is accurate, ProPublica does not seek the native files referenced in ECF Nos. 432-34, 432-35, 432-36, 432-37, 432-38, 432-39, 432-40, 432-43, and 432-44.

### III. The presumption of public access to summary judgment records has not been overcome.

Defendants have the burden of justifying the continued sealing of each of the hundreds of pages they wish to keep secret, Defs.' Opp'n at 13. The Court must then make specific, on-the-record findings justifying any sealing. Mem. at 19.

#### A. Attorney argument is insufficient to justify sealing.

Neither party provides a factual or evidentiary showing that the Court could use to evaluate whether the "higher values" necessary to overcome the First Amendment right of access or the "competing interests" utilized in the common law analysis are present. *See* Mem. at 14, 17. This is insufficient for the parties to meet their burdens under those standards, because sealing "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *F.T.C.*, 830 F.2d at 412 (citation omitted); *see also DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1373 (Fed. Cir. 2021) (affirming unsealing order and noting that although party seeking sealing had "argued that disclosure . . . would harm its 'proprietary and competitive business interest,' [it] provided no

evidence to that effect"); *Joy v. North*, 692 F.2d 890, 894 (2d Cir. 1982) ("[A] naked conclusory statement [of feared injury] . . . falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal.").

**B.   Defendants rely on cases considering a discovery protective order under Rule 26(c), which is a lower, inapplicable standard.**

As ProPublica previously argued, "[t]he 'good cause' that justifies an umbrella protective order at the discovery stage . . . is not sufficient to meet the heightened standard to seal filings about dispositive motions or trial." Mem. at 11 (citations omitted). Defendants nonetheless rely on cases that conflate those standards. *Blanchard & Co. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *10 (E.D. La. Apr. 5, 2004), and *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 144 (S.D.N.Y. 1997), are actually adjudications of Rule 26(c) discovery protective order disputes and not addressed to the question of public access to records submitted to the court. *In re NASDAQ Market-Makers Antitrust Litigation*, 164 F.R.D. 346, 355 (S.D.N.Y. 1996), involves motions to modify a protective order to obtain discovery material also never filed with the court.

In two other cases cited by Defendants, the court mistakenly held that "the 'good cause' standard imposed by Federal Rule of Civil Procedure 26 effectively merges with right-of-access analysis in many respects." *In re Gabapentin Pat. Litig.*, 312 F. Supp. 2d 653, 665 (D.N.J. 2004); *see also Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*, No. 19-CV-13955 (FLW) (DEA), 2021 WL 9827274, at *1 (D.N.J. July 12, 2021) (conflating Rule 26 standard with common law balancing and sealing records for "good cause having been shown"). The Court should not rely on decisions resolving

unopposed motions that conflate the two standards.[3]   The burden for overcoming those presumptions is steeper than that required to protect information that is only exchanged during discovery.  Neither party agreement nor the Federal Rules displace the constitutional and common law rights of access.

> ### C.   Communications with and about the FDA submitted to the Court at summary judgment should be unsealed.

Ranbaxy's opposition implies that it is entitled to sealing of any record that it believes contains "confidential business information."  Defs.' Opp'n at 12, 16.  This is incorrect.  *See, e.g.*, *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 (CBA), 2010 WL 889799, at \*6 (E.D.N.Y. Mar. 8, 2010) (in the context of ANDA submitted to FDA, "an assertion of confidential business information, without more, will not merit trade secret protection").  More specifically, Ranbaxy primarily seeks continued sealing of certain communications with or about the FDA (and those

---

[3] *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 307 (6th Cir. 2016) (Rule 26(c) should not be confused with the "vastly more demanding standards for sealing off judicial records from public view"); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420 (5th Cir. 2021) ("At the *discovery* stage . . . [p]arty-agreed secrecy has its place—for example, honoring legitimate privacy interests and facilitating the efficient exchange of information.  But at the *adjudicative* stage, when materials enter the court record, the standard for shielding records from public view is far more arduous." (emphasis in original)); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) ("the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable"); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("Different interests are at stake with the right of access than with Rule 26(c); with the former, the private interests of the litigants are not the only weights on the scale."); *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002) ("Secrecy is fine at the discovery stage, before the material enters the judicial record.  But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." (citations omitted)).

describing related regulatory and legal "vulnerabilities").   Defs.' Opp'n at 14.[4] "[J]udicial precedent does not afford blanket protection against disclosure of communications with the FDA.  Instead, each case turns on its particular facts, and a court will order sealing only where the party resisting disclosure has made a particularized showing of harm that would result from revealing trade secrets." *King Pharms., Inc. v. Eon Labs, Inc.*, No. 04-cv-05540 (DGT), 2010 WL 3924689, at *8 (E.D.N.Y. Sept. 28, 2010) (collecting cases).   Ranbaxy—at best—relies on "perfunctory (and unsworn) characterization[s] of this information as comprising trade secrets," which "in no way satisfies its burden." *Compare id.* at *10 (denying motion to seal communications with FDA), *with* Defs.' Opp'n at 14 (asserting that sealed documents "constitute proprietary operational information that competitors could exploit"); *see also Cunningham v. Beecham*, No. 2:07-CV-174, 2008 WL 2572076, at *3 (N.D. Ind. June 25, 2008) (denying motion to seal new drug application because party "provide[d] little more than the conclusion that the information contains a trade secret without reference to any basis for the conclusion").

Given the intense public interest in understanding these records, which will

---

[4] For instance, Ranbaxy's opposition to the Motion seeks continued sealing of, *inter alia*, a November 4, 2014 letter sent from FDA to Ranbaxy (ECF No. 424-7), the February 1, 2007 Form 483 issued by the FDA to Ranbaxy (ECF No. 424-27), a February 9, 2007 email from Parexel Consulting to Buc & Beardsley LLP and Ranbaxy (ECF No. 424-28), two internal FDA emails (ECF Nos. 424-51, 424-56), a July 29, 2008 memorandum from Buc & Beardsley to the FDA (ECF No. 424-58), a February 25, 2009 letter from the FDA to Ranbaxy (ECF No. 424-62), and the consent decree entered in *United States v. Ranbaxy Laboratories, Ltd.*, No. 12-cv-250 (D. Md. Jan. 26, 2012), between Ranbaxy and the FDA (ECF No. 424-64), which is already publicly available on that docket, and Appendix A to the same consent decree (ECF No. 424-66).

shed light on the FDA's oversight of generic drugs that Americans take every day, *see* Mem. at 1, 2, 6, the presumption of access has not been overcome.  And the references throughout the Court's summary judgment order to Ranbaxy's communications with or about the FDA only strengthen the case for unsealing.  *See F.T.C.*, 830 F.2d at 412 (holding that in cases involving facts that are "patently matters of significant public concern[,] [t]he threshold showing required for impoundment of [] materials is correspondingly elevated").  At summary judgment, "defendants argue[d] that none of the [FDA's] tentative approvals was induced by fraud, *as evidenced by the FDA's communications with Ranbaxy.*"  Mem. & Order, ECF No. 505, at 10 (emphasis added).  "Ranbaxy point[ed] to a 2012 consent decree between the defendants and the FDA that established new practices and offices to ensure Ranbaxy's regulatory compliance[.]"  *Id.*  After a round of new audits, "the FDA sent three letters to Ranbaxy . . . and, based upon those findings, the FDA resumed consideration of whether those ANDAs were eligible for final approval."  *Id.* at 10–11.  Plaintiffs' motion for partial summary judgment, too, was premised in part on whether the court in *Ranbaxy Laboratories, Ltd. v. Burwell*, 82 F. Supp. 3d 159, 181 (D.D.C. 2015), had already decided several facts, among them the FDA's reliance on information provided by Ranbaxy amd Ranbaxy's "malfeasance" in its communications with the agency.  Mem. & Order at 32–33.  Because Ranbaxy has failed to make the required showing to overcome the presumption of access, its communications with and about the FDA should be unsealed.

9

**D.      Expert reports and deposition testimony submitted to the Court at summary judgment should be unsealed.**

Both Ranbaxy and the Direct Purchasers seek to maintain expert reports and testimony under seal.  *See* Defs.' Opp'n at 14–15;[5] Purchasers' Opp'n at 3, 5 n.18, 7 nn.21, 23.[6]  Neither has met the required burden.

As with its communications with and about the FDA, Ranbaxy fails to substantiate, or even detail, why sealing is necessary.  Instead, Ranbaxy offers only that the reports "contain extensive discussions of confidential information . . . [that] would give competitors unearned insight into Defendants' strategies and methodologies . . . and could harm Defendants' competitive standing."  Defs.' Opp'n at 15.  But this "briefing does not explain *how* unsealing the three expert reports at issue here would harm their business competitiveness."  *Burnett v. CNO Fin. Grp., Inc.*, No. 1:18-CV-00200-JPH-KMB, 2024 WL 3161855, at *5 (S.D. Ind. June 24, 2024)

---

[5] For instance, Ranbaxy's opposition to the Motion seeks continued sealing of, *inter alia*, the February 10, 2021 report of Defendants' expert Daniel Troy (ECF No. 424-1), the February 10, 2021 report of Defendants' expert Mark Robbins (ECF No. 424-20), the November 2, 2020 report of David Engels (ECF No. 424-83), the November 2, 2020 report of Todd Clark (ECF No. 424-84), the November 2, 2020 report of Plaintiffs' expert Rena Conti (ECF No. 424-99), the May 11, 2021 deposition transcript of Plaintiffs' expert Steven Lynn (ECF No. 424-102), the March 22, 2021 report of Plaintiffs' expert Steven Lynn (ECF No. 424-108), and the March 22, 2021 rebuttal report of Plaintiffs' expert Rena Conti (ECF No. 424-112).

[6] Relevant to this subsection, Purchasers' opposition to the Motion seeks continued sealing of the initial report of Rena Conti (ECF No. 432-216), the End Payors' expert on class certification and damages, as well as her rebuttal report (ECF Nos. 432-217, 424-112) and excerpts from her deposition transcript (ECF No. 424-109).  It also seeks continued sealing of the report of Bruce Strombom, the defense expert (ECF No. 424-110), and the expert report and reply report of Meredith Rosenthal, which it represents were submitted at ECF Nos. 424-11, 432-17, and 432-18.

(emphasis added) (denying motion to seal expert reports).  Here, "Defendants failed to argue or otherwise demonstrate via affidavit or sworn declaration what legitimate interests they had in maintaining the designated information under seal, how unsealing this information would result in injury, or why sealing the exhibits in their entirety, rather than less-restrictive redactions, was necessary to prevent that injury." *Valve Corp. v. Rothschild*, No. 2:23-CV-01016-JNW, 2026 WL 232569, at *2 (W.D. Wash. Jan. 28, 2026) (denying motion to seal expert report).  Absent that showing, the Court should not permit the expert reports to remain under seal.

**E.    The purported non-party privacy interests asserted by the parties do not overcome the presumption of public access to summary judgment records.**

While courts may consider non-party interests in determining whether to unseal judicial records, it is of no moment whether non-parties produced information only because they lacked "fear that such information would be made public."  Defs.' Opp'n at 3; *see United States v. Kravetz*, 706 F.3d 47, 61–62 (1st Cir. 2013) (despite "promis[e]" by party counsel that non-party sentencing letters would remain private, "[i]t is self-evident that counsel may not make any such binding assurances").  Instead, the First Circuit has advised that "courts should 'consider the degree to which the subject matter is traditionally considered private rather than public.'" *Kravetz*, 706 F.3d at 62 (quoting *In re Bos. Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003)).  The type of information that qualifies is both "highly personal," and also "ha[s] no direct bearing upon the public's assessment" of the matter at issue.  *Id.*  For instance:

11

- "Personal financial information, such as one's income or bank account balance[.]" *In re Bos. Herald*, 321 F.3d at 190.

- "Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Kravetz*, 706 F.3d at 62 (citation omitted).

- "[T]he ill health of [family members], incidents of domestic violence, and other domestic relations matters." *Id.*

But "[t]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access." *Siedle*, 147 F.3d at 10. And even where the release of information may be harmful to some third party, courts must still consider "the nature and degree of the injury to the party in question." *United States v. O'Brien*, No. CRIM. 12-40026-FDS, 2014 WL 204695, at *2 (D. Mass. Jan. 17, 2014) (citing *Kravetz*, 706 F.3d at 62). For example, in *United States v. O'Brien*, the court found that unsealing non-party information that was "generally [] a matter of public record" would "create little, if any, marginal harm." *Id.* The court granted a motion to unseal a motion for severance with five exhibits, as well as a memorandum supporting an opposition to a motion to dismiss. *Id.* at *3.

The vague references to third-party privacy interests asserted by both parties, without more, are insufficient to overcome the presumption of access to the sealed summary judgment materials. Defs.' Opp'n at 3, 16–18 Purchasers' Opp'n at 2 & n.7. In an abundance of caution, ProPublica has requested a status conference so that the parties and ProPublica may discuss how and whether implicated non-parties receive notice of ProPublica's Motion and provide their positions to the Court. ECF No. 644. Because they are sealed, ProPublica cannot discern what non-party information,

12

including any "personal identifying information," Defs.' Opp'n at 17, was included in the parties' summary judgment materials. However, to the extent that request is denied, the Court should take notice that the events giving rise to that lawsuit were, as Defendants state in their opposition, highly publicized. *Id.* at 7. Any non-party conduct revealed by disclosing the requested records, even if embarrassing, likely would be either already "generally [] a matter of public record" or would have "public ramifications." *O'Brien*, 2014 WL 204695, at *2; *Kravetz*, 706 F.3d at 62 (citation omitted). And here, any non-party information that is not already a matter of public record would likely provide insight into offshore generic drug manufacturing processes. In short, the non-party information at issue likely is not "highly personal," and will likely cause "little, if any, marginal harm" to any non-parties, but its disclosure very well may "affect[] a substantial portion of the public," meaning that the information is traditionally considered public rather than private, weighing in favor of access. *O'Brien*, 2014 WL 204695, at *2; *Kravetz*, 706 F.3d at 62 (citation omitted).

IV.   **Any sealing should be achieved through narrowly tailored redactions.**

If a party (or non-party) does overcome the presumption of access as to some specific information submitted to the Court during summary judgment, redaction, rather than wholesale sealing, is the correct result. *See* Mem. at 19; *Kravetz*, 706 F.3d at 62 ("[W]here the public's right of access competes with privacy rights, 'it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document.'" (quoting *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995)); *In re Providence*

13

*J. Co.*, 293 F.3d 1, 15 (1st Cir. 2002) ("[T]he district court's refusal to consider redaction on a document-by-document basis is insupportable.").

The cases Defendants cite only reinforce this point. In *Ingenus Pharmaceuticals, LLC v. Nevakar Injectables, Inc.*, No. 3:22-CV-07603-MAS-JBD, 2023 WL 11852437, at *2 (D.N.J. July 13, 2023), the court relied upon a chart attached to a sworn affidavit detailing, line-by-line, the specific information proposed to be redacted, the "clearly defined and serious injury that would result" without redaction, and "why a less restrictive alternative to the relief sought is not available." *See* Ex. A, Decl. of Darren M. Geliebter in Supp. of Mot. to Seal, *Ingenus Pharms., LLC v. Nevakar Injectables, Inc.*, No. 3:22-CV-07603-MAS-JBD (D.N.J. May 1, 2023), ECF No. 34-2. The redactions proposed by Nevakar in that case—which were unopposed—contained modest redactions of materials related to a Paragraph IV certification submitted as part of a new drug application. *See generally id.*; *see also id.* at Exs. B–K, ECF Nos. 34-3–34-6. Similarly, in *Vifor (International) AG v. Mylan Laboratories Ltd.*, No. 19-CV-13955 (FLW) (DEA), 2021 WL 9827274, at *1 (D.N.J. July 12, 2021), the court granted a joint, unopposed motion for limited redactions to two discovery letters—*see* Ltr. from William P. Deni, Jr. to Hon. Douglas E. Arpert, *Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*, No. 19-CV-13955 (FLW) (DEA) (D.N.J. Jan. 13, 2021), ECF No. 139; Ltr. from Arnold B. Calmann to Hon. Douglas E. Arpert, *Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*, No. 19-CV-13955 (FLW) (DEA) (D.N.J. Jan. 22, 2021), ECF No. 144—based on a similarly line-by-line index filed by the parties of what information they jointly believed should be sealed, *see* Index in Supp. of Mot. to Seal,

*Vifor (Int'l) AG v. Mylan Lab'ys Ltd.*, No. 19-CV-13955 (FLW) (DEA) (D.N.J. Feb. 12, 2021), ECF No. 158-2.  Here, any interest in continued confidentiality can and should be addressed by line-by-line redaction.

ProPublica does not object to the redaction of information "reflecting the assignment agreement related to Meijer's drug purchases," Purchasers' Opp'n at 1, 4 (citing ECF Nos. 432-3 and 432-33), so long as that redaction is narrowly tailored.

*    *    *

For the reasons set forth above, ProPublica respectfully requests that the Court grant its Motion, permit it to intervene, and enter an order unsealing the docket entries specified in that Motion.

Date: April 24, 2026

/s/ *Robert A. Bertsche*
Robert A. Bertsche (BBO 554333)
KLARIS LAW PLLC
6 Liberty Square #2752
Boston, MA 02109
Telephone: 857-303-6938
rob.bertsche@klarislaw.com

Lin Weeks, *pro hac vice*
Annie Seminara, *pro hac vice*
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: 202-795-9300
lweeks@rcfp.org
aseminara@rcfp.org

*Counsel for Proposed Intervenor ProPublica*

15

## CERTIFICATE OF SERVICE

I, Robert A. Bertsche, hereby certify that on April 24, 2026, I served this document upon all registered parties via the ECF Notice of Electronic Filing (NEF) system.

*/s/ Robert A. Bertsche*
Robert A. Bertsche
KLARIS LAW PLLC

16